**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA  90010
(213) 252-9444; (213) 252-0091 facsimile
E-mail: manncook@earthlink.net

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ASTORGA, an individual, on behalf of herself and as class representative,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, a municipal corporation; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; SHERIFF ALEX VILLANUEVA, an individual; and Does 1 through 10, all sued in their individual capacities,<br><br>Defendants. | Case No. 2:20-cv-9805<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>**1.  Injunction Relief (Class Claim) / 42 U.S.C. § 1983**<br><br>**2.  Deprivation of Property / Fourth & Fourteenth Amendments / 42 U.S.C. § 1983**<br><br>**3.  Takings Claim / Fifth Amendment / 42 U.S.C. § 1983**<br><br>**4. Unreasonable Seizures / Fourth Amendment / 42 U.S.C. § 1983**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

00141167.WPD

## I.      JURISDICTION AND VENUE.

1. Plaintiff's claims arise under 42 U.S.C. §1983.Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

2. Plaintiff's claims arise out of, *inter alia*, acts of personnel employed by the County of Los Angeles, causing injury to Plaintiff in the County of Los Angeles. Accordingly, venue is proper within the Central District of California.

## II. PARTIES.

3. Plaintiff Christina Astorga, an individual, is and was at all times relevant hereto, a resident of the County of Los Angeles, City of Los Angeles. She is a military veteran (medically retired) and the founder of the Los Angeles Chapter of "Wall of Vets."

4. At all times material herein, defendant County of Los Angeles ("LA County") was and is a public entity duly organized and chartered under the laws of the State of California, and was responsible for the hiring, training, and supervising of the conduct of its employees and agents of the County and the Los Angeles County Sheriff's Department and all LASD deputies and members.

5. At all times material herein, defendant Los Angeles County Sheriff's Department ("LASD"), is a public entity subject to suit under 42 U.S.C. § 1983 (*Streit v. County of Los Angeles*, 236 F.3d 552, 565-66 (9th Cir. 2001)).

6. Plaintiff names the LASD as a separate defendant for two reasons. First, Plaintiff is informed and believes and based thereon alleges that LA County Sheriff Alex Villanueva may claim he is *not* a policymaker for defendant LA County. However, Plaintiff is further informed and believes and based thereon alleges that should Villanueva make that claim, he will nevertheless admit he *is* the policymaker with respect to his own department, defendant LASD. Thus, Villanueva's self-admitted status as a policymaker for defendant LASD will make that defendant subject to liability should it be determined that Villanueva is responsible for policies that violated the constitutional rights of Plaintiff and class members.

7. Second, there is disagreement between the Ninth Circuit and the California

00141167.WPD

Supreme Court on whether a California sheriff is a state or county policymaker for § 1983 purposes. In *Brewster v. Shasta County*, 275 F.2d 803 (9th Cir. 2001), and *Streit v. County of Los Angeles*, 236 F.3d 552, 559 (9th Cir. 2001), the Ninth Circuit held that California sheriffs are agents of their employing county for § 1983 purposes. The California Supreme Court, in *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 828-39 (2004), disagreed with the Ninth Circuit, holding instead that a California sheriff is not an agent of his employing county for purposes of § 1983 liability. Should it ultimately be determined that *Venegas* correctly states the law on this point, Plaintiff is informed and believes that Villanueva will nevertheless remain a policymaker for his own department, defendant LASD. Since defendant LASD is *not* an arm of the state for purposes of immunity under the Eleventh Amendment (see *Streit*, 236 F.3d at 556-57), Plaintiff can still prevail against Villanueva in his official capacity and defendant LASD notwithstanding *Venegas*.

8. Defendants LA County and LASD are "persons" subject to suit within the meaning of Title 42, U.S.C. § 1983 under *Monell v. New York Dept. of Social Serv.*, 436 U.S. 658, 691 (1978). Collectively, these two defendants are referred to as "Entity defendants."

9. Defendant Alex Villanueva ("Villanueva"), an individual, at all times material hereto was and is the LA County Sheriff. Plaintiff is informed and believes and based therein alleges that Villanueva is a policy maker for both defendants LA County *and* LASD. Plaintiff sues Villanueva in his individual and official capacities.

10. At all times material herein, Entity defendants were responsible for the employment, training, and supervision of the actions, conduct, policies, practices, and customs of the employees and agents of the LA County, including LASD and all of its deputies and members. At all times material herein, Entity defendants were responsible for assuring that the actions, conduct, policies, procedures, and customs of the LASD complied with the laws and the Constitutions of the United States and of the State of California.

00141167.WPD

11. The true names of defendants DOES 1 through 10, inclusive, are not now known to Plaintiff who therefore sues these Defendants by fictitious names. Upon ascertaining the true name of a DOE Defendant, Plaintiff will amend this complaint, or seek leave to do so, by substituting same for the fictitious name. Plaintiff is informed and believes, and based thereon alleges, that each DOE Defendant is in some manner responsible for the injuries and damages herein complained of.

12. At all times material herein, defendants were each acting as the employee, agent representative, and officer of every other defendant herein, and within the course and scope of such employment and agency. All defendants were acting under color of state law.

## III.    FACTS COMMON TO ALL CLAIMS.

*A. The September 8, 2020 Protest, Plaintiff's Arrest and Property Seizures.*

13. Plaintiff is informed and believes and based hereon alleges that on August 31, 2020, an LASD deputy shot and killed Los Angeles resident Dijon Kizzee after he was stopped for allegedly violating a vehicle code provision while riding his bicycle. That shooting, in turn, prompted numerous protests and demonstrations in the County of Los Angeles. One such protest occurred Tuesday evening, September 8, 2020, in South Los Angeles at and/or near Imperial Highway and Normandie Avenue. The protest was called "Justice for Dijon Kizzee."

14. Plaintiff attended the protest, both as an individual and as a representative for Wall of Vets, to support holding accountable those responsible for the death of Dijon Kizzee should it be determined that shooting him was unjustified. As she has done in other similar events, using her smartphone Plaintiff intended to record and livestream video. Plaintiff also intended to use her smartphone to update the social media profile she maintains for "Wall of Vets - Los Angeles" with information concerning the "Justice for Dijon Kizzee" protest.

15. Plaintiff is informed that at about 9:00 p.m., the LASD broke up the protest at the corner of Imperial Highway and Normandie Avenue. Plaintiff did not hear any

00141167.WPD

announcement that the LASD had or were ordering people to disperse. She concluded LASD had decided to stop the protest and disperse the crowd when she saw LASD deputies shooting what she believes were rubber bullets and pepper balls at Plaintiff and others. The LASD fired these rounds without warnings. As they did so, the deputies advanced on the crowd of people Plaintiff was in.

16. A nearby resident who saw what was happening opened the door to an apartment complex and allowed Plaintiff and others to enter. Along with others Plaintiff did so, seeking refuge. As Plaintiff ran into the complex, without any warnings one or more deputies fired projectiles at Plaintiff. Projectiles struck Plaintiff on her left rear and left arm, inflicting significant injuries. See **Exhibit B**, **C**, **D**, and **E**. When the deputy(ies) fired the rounds, Plaintiff had not committed any crime and was not threatening harm to anyone.

17. Deputies followed Plaintiff and the others into the complex. Plaintiff and a fellow protester hugged each other in an effort to protect one another. Using her smartphone, Plaintiff began to livestream as a female deputy approached her. Plaintiff pleaded with the deputy, saying "don't hurt us." The deputy took Plaintiff's smartphone and pushed Plaintiff against a wall. A male deputy put his hands on Plaintiff as the deputies handcuffed her. Plaintiff asked that they not bend her arm upwards because of a pre-existing injury, also telling the deputies she was a veteran. The male deputy said Plaintiff wasn't a veteran and added, sarcastically mocking Plaintiff, that "[She] like[s] to be arrested and like[s] to be handcuffed."

18. After Plaintiff was handcuffed, she saw that the female deputy was holding Plaintiff's smartphone. It appeared the deputy was trying to do something with it, perhaps turning it off (it was on and livestreaming when it was taken from Plaintiff's hand). That was the last time Plaintiff saw her smartphone.

19. Plaintiff was wearing a backpack when she was arrested. The deputies took the backpack off Plaintiff during the handcuffing. Later, Plaintiff is informed, the deputies took possession of the backpack.

00141167.WPD

20. Deputies took Plaintiff and other arrestees to a truck where they were forced inside. Plaintiff observed a woman whose hands were bleeding; she was very upset. Plaintiff and others pleaded with the deputies, asking them to provide care to the woman. The deputies did nothing. Instead, deputies laughed, and took photos of the arrestees with what appeared to be the deputies' personal cell phones.

21. Rather than issuing Plaintiff and the others citations and releasing them in the field as is ordinarily required under state law and LASD policy, deputies transported Plaintiff and the others to the LASD station on Imperial Highway. Deputies took Plaintiff inside the station and began processing her for booking. A deputy, Deputy Luna, refused Plaintiff's request for face mask, responding sarcastically "sure, you'll get a mask." Plaintiff was never provided a face mask.

22. During booking, Plaintiff was forced to remove her belt, shoes, and car keys that were in her pocket. Deputies put her property in a plastic bag and kept them. Plaintiff estimates she arrived at LASD Imperial station at about 9:30pm. Plaintiff estimates she was not released from the station until about 2 or 3 a.m the next morning on September 9, 2020.

23. When Plaintiff was being processed for release on September 9, she received the plastic bag with her belt, shoes, and car keys. She also received her backpack. Missing from Plaintiff's backpack, however, were her military grade goggles that were in the backpack when she was arrested. LASD personnel give Plaintiff a pink sheet of paper, "Los Angeles County Jail Booking and Property Record," that supposedly inventoried her property the deputies took. The copy Plaintiff received is unreadable (see **Exhibit F**). Plaintiff asked a deputy for her smartphone taken at the time of Plaintiff's arrest. The deputy stated Plaintiff would not get her smartphone until her court date.

24. Plaintiff's bail paperwork states the charge against her is a violation of Penal Code § 409 – failure to disperse. See **Exhibit G**. Plaintiff's court appearance date is January 6, 2021 even though, Plaintiff is informed, the district attorney will not be filing charges. See **Exhibit A**.

00141167.WPD

25. Defendants' refusal to return Plaintiff's smartphone to her is causing her great distress. Plaintiff used it for her everyday tasks, including staying in contact with family and friends while maintaining substantial personal, private and sensitive information on the smartphone. Plaintiff also used the smartphone to communicate with her organization, Wall of Vets, organizing events, contacting members and others, and as she was doing on September 8, 2020, recording the police as they confronted and arrested protesters.

26. Plaintiff's smartphone was not password protected. Consequently, the deputies or whoever has the phone, can access all of Plaintiff's sensitive information, change settings and the like. It appears that someone with the LASD did just that. After Plaintiff's release and when she was unable to retrieve her smartphone, she obtained a replacement. Upon logging onto her social media accounts, including the Instagram account she operates for "Wall of Vets – Los Angeles," Plaintiff saw that the profile description had been changed to "Blue Lives Matter #supportbluelives." Plaintiff is informed that LASD personnel made the change as they were the last ones in possession of Plaintiff's smartphone. A true and correct copy of a screenshot capturing this profile change before Plaintiff deactivated the account is attached hereto as **Exhibit H**.

27. On September 10, 2020, Plaintiff returned to the LASD Imperial Station to inquire about retrieving her smartphone. There was no one at the front desk so Plaintiff called the posted phone number. The phone number appeared to be for an "inventory" department. Plaintiff spoke with someone and, after providing her identifying information, was told, again, that her smartphone would not be returned, if ever, until her court date.

28. When Plaintiff was booked, she provided the LASD booking personnel a valid address at which she receives mail and other notices. Since Plaintiff's September 8, 2020 arrest, Plaintiff has not received any notice for anyone, including the LASD or the County, that her smartphone was being held or how or whom Plaintiff might contact to retrieve her smartphone.

///

*B. Plaintiff's Arrest and Seizures of Her Property, Were Condoned And/Or Ratified by Policy Makers for Defendants LA County and LASD.*

29. Plaintiff is informed and believes and based thereon alleges that on or before September 8, 2020, one or more policy makers for LA County and/or LASD, decided that LASD personnel could and should arrest individuals present at demonstrations that LASD had declared unlawful, without regard to evidence showing that the individuals had failed to disperse or had committed unlawful acts that justify arrest. In other words, the policy makers decided that mere presence at or near a demonstration declared unlawful, could and would justify an arrest.

30. Plaintiff is informed and believes and based thereon alleges that on or before September 8, 2020, one or more policy makers for LA County and/or LASD, also decided that for persons as described above, those persons could and should be subjected to serious injuring force like that directed against Plaintiff without any warning, even though (a) the person had not committed a crime, (b) was not fleeing, and (c) was not threatening harm to anyone.

31. Plaintiff is further informed and believes and based thereon alleges that on or before September 8, 2020, one or more policy makers for LA County and/or LASD, decided that for persons arrested as described above, the LASD should take and withhold the person's personal property -- particularly smartphones -- and *not* release or return the property to the owners upon their release from custody. Plaintiff is informed and believes that the pretextual reason LASD decided upon to refuse to return persons' property, was that the property would be held as "evidence."

32. In fact, Plaintiff is informed and believes that LASD personnel know or should know that the property the LASD is withholding is *not* evidence of crime. Instead, the true reason for LASD's refusal to return to persons their property the LASD seized -- in particular smartphones -- is to punish persons for having some connection to a protest that LASD had declared unlawful, and/or because the LASD was upset that the Los Angeles County District Attorney had announced her office would *not* file charges for failure to

00141167.WPD

disperse citations issued to persons like Plaintiff (see **Exhibit A**).

33. Plaintiff is informed and believes that the LASD's ongoing refusal to (a) return to persons their property the LASD seized -- in particular smartphones -- (b) seek judicial review for justification for continuing to withhold the property from the owners, and (c) provide notice and opportunity for the property owners to contest the continued withholding of their property, has been approved and/or ratified by one or more policy makers for LA County and/or LASD.

34. Plaintiff is informed and believes and based thereon alleges that one of the policy makers referenced above, is defendant Villanueva.

*C. Class Action Claim.*

35. Plaintiff bring this action on her own behalf, and on behalf of the class of all persons similarly situated, pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure. The class covers all persons arrested by LASD at protests like the one Plaintiff attended on September 8, 2020, and whose items of personal property the LASD seized without a warrant or other judicial review, and for whom the LASD refuses to return or release the property to its owners despite the absence of justification for continuing to seize and hold the property without judicial review, and without giving notice and opportunity to be heard by property owners who seek to reclaim their property. Plaintiff is the proposed class representative.

36. On information and belief, the class is comprised of many dozens of individuals, numbering perhaps over 100. The members of the classes are so numerous that joinder is impracticable.

37. Questions of law and fact common to each class include:

A. Whether the seizures and continued retention of class members' items of personal property without a warrant or any judicial review, violates the Fourth, Fifth and/or Fourteenth Amendment.

B. Whether defendants' refusal to provide any notice of any kind for the continuing seizure of Plaintiff's property, violates the Fourth and Fourteenth

Amendments.

C. Whether defendants' refusal to provide any hearing of any kind at which class members can contest the continuing seizure of Plaintiff's property, violates the Fourteenth Amendment.

D. Whether defendants' continuing seizure of class members' items of personal property is intended as punishment for having been associated with a protest.

38. Plaintiff's claims are typical of the claims of members of each class on whose behalf she acts as a class representative, in that as with each class member, Plaintiff's personal property items were seized without a warrant; the LASD is continuing to withhold the property without any judicial review; and without LASD providing any notice or review procedure at which Plaintiff could reclaim her property.

39. Plaintiff will fairly and adequately protect the interests of each class on whose behalf she is acting as a class representative. Plaintiff has no interest which is now or may be potentially antagonistic to the interests of each class member on whose behalf she is acting as a class representative. As with all class members, Plaintiff's personal property was seized following her arrest at a protest event, and is being withheld from her without any judicial review or review of any type for that matter.

40. In accordance with Fed.R.Civ.P. Rule 23(b)(1)(A), prosecutions of separate actions by individual members of each class would create a risk that is inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the parties opposing the class.

41. In accordance with Fed.R.Civ.P. Rule 23(b)(1)(B), prosecutions of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

///

00141167.WPD

*D. Appropriateness of Equitable Relief.*

42. Plaintiff and class members do not have an adequate remedy at law. The continuing seizure of the items of personal property without a warrant or any review, judicial or otherwise, constitutes ongoing violations Plaintiff's and class members' Fourth and Fourteenth Amendment rights guaranteeing that all property seizures must be reasonable and at some point (either pre- or post-seizure) subject to judicial or at least quasi-judicial review. The ongoing seizures are causing continuing, sweeping and irreparable harm to Plaintiff and class members by depriving Plaintiff and class members of property such as smartphones that are often essential for Plaintiff and class members' daily activities.

43. Plaintiff and class members are also entitled to declaratory relief with respect to the constitutionality of the continuing seizures without warrants or review of any type, judicial or otherwise, and an injunction commanding defendants to (a) release and return the property of Plaintiff and class members or, alternatively, (b) provide prompt judicial review in compliance with due process guarantees at which Plaintiff and class members can contest the ongoing seizures without warrants of Plaintiff and class members' items of personal property.

44. Injunctive relief does not raise any mootness issues because the harm alleged may be revisited on the class where it is capable of repetition, yet evading review due to the transitory nature of Plaintiffs' claims. *County of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991).

## COUNT ONE

(Injunctive Relief -- By Plaintiff and Class Members

As Against All Defendants)

(42 U.S.C. § 1983/ Fourth & Fourteenth Amendments)

45. By this reference, Plaintiff, on behalf of himself and members of the class she represents, re-alleges and incorporates all previous and following paragraphs as if fully set forth herein.

46.   The present ongoing seizures of items of personal property -- including smartphones -- without warrants or any review, judicial or otherwise, violates the Fourth Amendment proscription against unreasonable seizure, and the Fourteenth Amendment prohibition against the confiscation of property without due process of law.

47. The acts alleged herein were the product of a custom, practice and/or policy of the Entity defendants personally approved by defendant Villanueva, which custom, practice and/or policy caused the constitutional violations alleged herein.

## COUNT TWO

(Damages Claim -- By Plaintiff Only As Against All Defendants)

(42 U.S.C. §1983 / Fourth & Fourteenth Amendments)

48.   By this reference Plaintiff, on behalf of herself only, re-alleges and incorporates all previous and following paragraphs as if fully set forth herein.

49.   The continuing seizure of Plaintiff's items of personal property without a warrant or judicial review of any kind, is depriving him of property in violation of the Fourth and Fourteenth Amendments. Therefore, Plaintiff is entitled to recover compensatory damages proximately caused by the property seizures.

50. The acts alleged herein were the product of a policy or custom of the Entity defendants and personally approved by defendant Villanueva as alleged above, and entities Plaintiff to recover punitive damages as against individual defendants.

## COUNT THREE

(Damages Claim -- By Plaintiff Only As Against Entity Defendants Only)

(42 U.S.C. §1983 / Fifth Amendment)

51.   By this reference Plaintiff, on behalf of herself only, re-alleges and incorporates all previous and following paragraphs as if fully set forth herein.

52. By seizing Plaintiff's items of personal property and not returning them despite Plaintiff's repeated requests, the Entity defendants physically took possession of Plaintiff's property ostensibly for a public purpose of punishing Plaintiff for her mere presence at the September 8, 2020 protest. Defendants, however, have not compensated

Plaintiff but instead, effected a *de facto* forfeiture of Plaintiff's property. Consequently, the seizures without any judicial review constituted a "Taking" within the meaning of the Takings Clause of the Fifth Amendment to the United States Constitution.

53. Defendants' property seizures constituted a final decision. Per the policies described above, the Entity defendants have not provided any review process, judicial or otherwise, to challenge the property seizures.

54. Because the Entity defendants effected a Taking of personal property without payment of compensation, Plaintiff is entitled to recover the reasonable value of her property defendants seized.

**COUNT FOUR**

(Damages Claim -- By Plaintiff Only As Against All Defendants)

(42 U.S.C. §1983 / Fourth Amendment)

55.   By this reference Plaintiff, on behalf of herself only, re-alleges and incorporates all previous and following paragraphs as if fully set forth herein.

56. Plaintiff's seizure by unknown LASD deputies on September 8, 2020, violated his Fourth Amendment rights against unreasonable seizures by:

A. Subjecting Plaintiff to excessive force even though (a) Plaintiff had not committed a crime and was not threatening harm to anyone;

B. Arresting Plaintiff in the absence of probable cause that Plaintiff had committed any crime.

57. The acts alleged herein were the product of a policy or custom of the Entity defendants and personally approved by defendant Villanueva as alleged above, thereby entitling Plaintiff to recover punitive damages as against individual defendants.

**PRAYER**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

*On The First Cause of Action:*

58. That the Court certify this case pursuant to F. R. Civ. P. 23(b)(2) as a class

action on behalf of a class of Plaintiff composed of individuals whom the LASD arrested at protests in 2020 and whose personal property the LASD has seized, in the course of booking these individuals, and continues to maintain possession of the property despite no lawful justification for doing so;

59. That the Court issue a declaration that the ongoing seizures of class members' items of person property violates the Fourth and Fourteenth Amendments to the United States Constitution;

60. That the Court issue a preliminary and permanent injunction on behalf of Plaintiff and class members commanding defendants, and each of them, to release to Plaintiff and class members forthwith, their items of personal property seized without a warrant or judicial review, upon the request of Plaintiff and class members that they be given their property;

61. That this Court award attorneys fees and costs incurred in this action under 42 U.S.C. § 1988, and any other appropriate statute;

*On The Second, Third and Fourth Causes of Action:*

62. That this Court award Plaintiff compensatory damages, according to proof;

63. That as against any individual defendant, that Plaintiff be wanted punitive damages according to proof;

64. That this Court award attorneys' fees and costs under 42 U.S.C. § 1988, and any other appropriate statute;

*On All Causes of Action*:

65. That the Court award costs of suit; and

66. And such other relief as the Court deems appropriate.

DATED: October 26, 2020

**DONALD W. COOK**
Attorney for Plaintiff

By _____
　　　　　Donald W. Cook

-14-

1

**DEMAND FOR JURY TRIAL**

2

    Plaintiff hereby demands a jury trial.

3

DATED: October 26, 2020

4

               **DONALD W. COOK**

5

               Attorney for Plaintiff

6

7

By_____

8

               Donald W. Cook

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# *Jackie Lacey*
## District Attorney
http://da.lacounty.gov

### NEWS RELEASE

**Media Contact:**
Ricardo Santiago
Public Information Officer
213-257-2000
RSantiago@da.lacounty.gov
Twitter: @LADAOffice

June 8, 2020

## District Attorney Jackie Lacey Will Not File Charges for Curfew Violations, Failure to Disperse

Los Angeles County District Attorney Jackie Lacey announced today that she will not file charges against any protester for a curfew violation or failure to disperse.

She directed her legal staff to decline to prosecute these cases in the interest of justice.

"I believe whole-heartedly in free speech and support the right of protesters to demonstrate peacefully against historic racial injustice in our criminal justice system and throughout our nation," District Attorney Lacey said. "I want to encourage the exchange of ideas and work to establish dialogue between law enforcement and protesters so that we may implement enduring systemic change."

The District Attorney's Office prosecutes all felonies in Los Angeles County and misdemeanors that occur in the unincorporated areas of the county and in most cities.

These 10 cities prosecute misdemeanors that occur in their jurisdictions: Los Angeles, Long Beach, Santa Monica, Pasadena, Torrance, Burbank, Inglewood, Hawthorne, Hermosa Beach and Redondo Beach.

### About the Los Angeles County District Attorney's Office
Los Angeles County District Attorney Jackie Lacey leads the largest local prosecutorial office in the nation. Her staff of nearly 1,000 attorneys, 300 investigators and 800 support staff members is dedicated to protecting our community through the fair and ethical pursuit of justice and the safeguarding of crime victims' rights.



**Injury photo (backside, lower)**                    **EXHIBIT B**



**Injury Photo (lower left side / buttocks)**                    **EXHIBIT C**



**Injury Photo (left arm / elbow)**                    **EXHIBIT D**



**Injury Photo (left forearm)**                                      **EXHIBIT E**

## LOS ANGELES COUNTY JAIL

### BOOKING AND PROPERTY RECORD

| | YES | NO |
|---|---|---|
| HAVE VD | ☐ | ☐ |
| HAVE HEPATITIS | ☐ | ☐ |
| HAVE TB | ☐ | ☐ |
| EVER HAVE TB | ☐ | ☐ |

| BOOKING NO. | LOC BKD. | DR. LIC. NO. | STATE | **PRISONER'S RECEIPT** |
|---|---|---|---|---|

ARRESTEE'S NAME (LAST, FIRST, MIDDLE)

| AG'Y. OR DETAIL ARRESTING | DATE & TIME ARRESTED | TIME BKD. |
|---|---|---|

| LOCATION OF ARREST | | TOTAL BAIL |
|---|---|---|

| CHARGE | | WARR./COMM. NO. |
|---|---|---|

| JAIL LOC. | ARRAIGN. DATE | TIME | COURT | PRISONER'S SIGNATURE WHEN BOOKED |
|---|---|---|---|---|
| | | | | X |

LOCATION OR DISPOSITION OF VEHICLE

| CASH RETAINED | PROPERTY |
|---|---|

PRISONER'S SIG., FOR REC'T. OF FOREGOING CASH & PROPERTY

X

| CASH DEPOSITED | PROPERTY |
|---|---|

PRISONER'S SIG., FOR REC'T. OF REMAINING CASH & PROPERTY

X

SH-J-294  5/94

**LASD Property Receipt**

**EXHIBIT F**

LOS ANGELES COUNTY SHERIFF'S DEPARTMENT
**FELONY "OWN RECOGNIZANCE RELEASE" AND AGREEMENT TO APPEAR**

| | | | |
|---|---|---|---|
| ASTORGA | CHRISTINA | RODRIGUEZ | 6008199 |
| Last Name | First | Middle | Booking Number |

| | | | |
|---|---|---|---|
| Smith | | LOS ANGELES   CA | |
| Address | Street | City | Zip |

| | |
|---|---|
| 409 pc/m1 | 920-09755-0378-399 |
| Charge | File Number |

I AGREE TO APPEAR IN PERSON IN THE BELOW INDICATED COURT ON THE DATE AND TIME SPECIFIED BELOW, AND AT SUCH OTHER TIMES AS THE COURT SHALL THEREAFTER DIRECT, AND I WILL OBEY ALL OTHER LAWFUL ORDERS OF THE COURT. I ALSO AGREE THAT IF I FAIL TO APPEAR AT THE TIME AND PLACE AGREED, OR AS DIRECTED BY THE COURT, AND I AM APPREHENDED OUTSIDE THE STATE OF CALIFORNIA, I WILL, AND I DO, HEREBY WAIVE EXTRADITION PROCEEDINGS. I AM AWARE THAT THE COURT MAY AT ANY TIME, IN ITS DISCRETION, REVOKE THE ORDER FOR RELEASE; THAT WILLFUL FAILURE TO APPEAR ON THE BELOW DATE OR AT SUCH TIME OR TIMES AS DIRECTED BY THE COURT IS PUNISHABLE AS A SEPARATE FELONY OFFENSE.

PROMETO APARECER EN PERSONA EN LA CORTE INDICADA ABAJO Y EN LA FECHA Y TIEMPO ESPECIFICADO ABAJO Y EN TALES OTROS TIEMPOS COMO LA CORTE DESPUES ORDENE, YE OBEDECERE TODAS LAS OTRAS ORDENES LEGALES DE LA CORTE. TAMBIEN, PROMETO QUE SI DEJO DE APARECER EN EL TIEMPO Y LUGAR CONVENIDO Y ORDENADO POR LA CORTE, Y SOY ARRESTADO FUERA DEL ESTADO DE CALIFORNIA RENUNCIARE Y AQUI RENUNCION PROCESOS DE EXTRADICCIÓN. *RECONOZCO* QUE LA CORTE PUEDE EN CUALQUIER TIEMPO A SU DISCRECION REVOCAR LA ORDEN DE LIBERTAD; Y FALTA VOLUNTARIA DE APARECER EN LA FECHA ABAJO MENCIONADA O EN TAL TIEMPO O TIEMPOS SEGUN ORDENADO POR LA CORTE, ES CASTIGADO COMO UNA OFENSA APARTE DE FELONIA. AL FIRMAR ESTA FORMA Y SIN ADMITIR CULPA YO PROMETO PRESENTARME ANTE LA CORTE QUE SE INDICA ABAJO.

**WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR BEFORE THE COURT AT THE TIME, DATE, AND LOCATION INDICATED BELOW.**

8:30 ~~AM~~ PM on the 6th day of JANUARY, ~~19~~ 2021

⊗_____
SIGNATURE OF RELEASEE

| | | | |
|---|---|---|---|
| INGLEWOOD | ONE REGENT ST | INGLEWOOD CA 90301 | |
| Court | Address | Street | City |

| | | |
|---|---|---|
| | | |
| Judge/Commissioner authorizing release | | Teletype Number |

| | | |
|---|---|---|
| HERNANDEZ | 531111 | 09/07/20 |
| Executed in the presence of releasing officer | Employee Number | Date/Time |

SH-R-463 (10/97)     Original + 1 copy to court     Copy to arrestee     Copy to investigator
booking packet     Copy to Records Bureau

**Release / Agreement to Appear**     **EXHIBIT G**



**Screenshot "WallofVetsLA"**                                         **EXHIBIT H**