**COLLEEN FLYNN**, CSB 234281
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
E-mail: cflynnlaw@yahoo.com

**PEDRAM ESFANDIARY**, CSB 312569          **DONALD W. COOK**, CSB 116666
**MONIQUE ALARCON**, CSB 311560            ATTORNEY AT LAW
BAUM HEDLUND, ARISTEI, & GOLDMAN, P.C.     3435 Wilshire Blvd., Ste. 2910
10940 Wilshire Blvd., 17th Floor           Los Angeles, CA 90010
Los Angeles, CA 90024                      (213) 252-9444 / (213) 252-0091 facsimile
(310) 207-3233 / (310) 820-7444 facsimile  Email: manncook@earthlink.net
Email: pesfandiary@baumhedlundlaw.com
Email: malarcon@baumhedlundlaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ASTORGA, an individual, on behalf of herself and as class representative; HUGO PADILLA, an individual, on behalf of himself and class representative; RYAN MICHAEL DODSON, an individual, and KIYOKO DODSON, an individual, on behalf of themselves and as class representatives, | Case No. 2:20-cv-9805 CAS (AGRx) |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| vs. | **1. Injunctive Relief (Class Claim) / 42 U.S.C. § 1983** |
| COUNTY OF LOS ANGELES, a municipal corporation; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; SHERIFF ALEX VILLANUEVA, an individual; ALL CITY TOW GIRL LLC, a California corporation; and Does 1 through 10, all sued in their individual capacities, | **2. Deprivation of Property / Fourth & Fourteenth Amendments / 42 U.S.C. § 1983** |
| | **3. Takings Claim / Fifth Amendment / 42 U.S.C. § 1983** |
| | **4. Unreasonable Seizures / Fourth Amendment / 42 U.S.C. § 1983** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

-1-

00141309.WPD

# I. JURISDICTION AND VENUE.

1. Plaintiffs' claims arise under 42 U.S.C. §1983.Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

2. Plaintiffs' claims arise out of, *inter alia*, acts of personnel employed by the County of Los Angeles, causing injury to Plaintiff in the County of Los Angeles. Accordingly, venue is proper within the Central District of California.

# II. PARTIES.

3. Plaintiff Christina Astorga, an individual, is and was at all times relevant hereto, a resident of the County of Los Angeles, City of Los Angeles. She is a military veteran (medically retired) and the founder of the Los Angeles Chapter of "Wall of Vets."

4. Plaintiff Hugo Padilla, an individual, is and was at all times relevant hereto, a resident of the County of Los Angeles, City of Los Angeles.

5. Plaintiffs Ryan Michael Dodson ("Michael Dodson") and Kiyoko Dodson, individuals, were and are at all times relevant hereto, husband and wife. They are the owners of a white Chevrolet Silverado truck ("Truck"), although the sole registered owner is Ryan Dodson.

6. At all times material herein, defendant County of Los Angeles ("LA County") was and is a public entity duly organized and chartered under the laws of the State of California, and was responsible for the hiring, training, and supervising of the conduct of its employees and agents of the County and the Los Angeles County Sheriff's Department and all LASD deputies and members.

7. At all times material herein, defendant Los Angeles County Sheriff's Department ("LASD"), is a public entity subject to suit under 42 U.S.C. § 1983 (*Streit v. County of Los Angeles*, 236 F.3d 552, 565-66 (9th Cir. 2001)).

8. Plaintiffs name the LASD as a separate defendant for two reasons. First, Plaintiffs are informed and believe and based thereon allege that LA County Sheriff Alex Villanueva may claim he is *not* a policymaker for defendant LA County. However, Plaintiffs are further informed and believe and based thereon allege that should

Villanueva make that claim, he will nevertheless admit he *is* the policymaker with respect to his own department, defendant LASD. Thus, Villanueva's self-admitted status as a policymaker for defendant LASD will make that defendant subject to liability should it be determined that Villanueva is responsible for policies that violated the constitutional rights of Plaintiffs and class members.

9. Second, there is disagreement between the Ninth Circuit and the California Supreme Court on whether a California sheriff is a state or county policymaker for § 1983 purposes. In *Brewster v. Shasta County*, 275 F.2d 803 (9th Cir. 2001), and *Streit v. County of Los Angeles*, 236 F.3d 552, 559 (9th Cir. 2001), the Ninth Circuit held that California sheriffs are agents of their employing county for § 1983 purposes. The California Supreme Court, in *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 828-39 (2004), disagreed with the Ninth Circuit, holding instead that a California sheriff is not an agent of his employing county for purposes of § 1983 liability. Should it ultimately be determined that *Venegas* correctly states the law on this point, Plaintiffs are informed and believe that Villanueva will nevertheless remain a policymaker for his own department, defendant LASD. Since defendant LASD is *not* an arm of the state for purposes of immunity under the Eleventh Amendment (see *Streit*, 236 F.3d at 556-57), Plaintiffs can still prevail against Villanueva in his official capacity and defendant LASD notwithstanding *Venegas*.

10. Defendants LA County and LASD are "persons" subject to suit within the meaning of Title 42, U.S.C. § 1983 under *Monell v. New York Dept. of Social Serv.*, 436 U.S. 658, 691 (1978). Collectively, these two defendants are referred to as "Entity defendants."

11. Defendant Alex Villanueva ("Villanueva"), an individual, at all times material hereto was and is the LA County Sheriff. Plaintiffs are informed and believe and based therein allege that Villanueva is a policy maker for both defendants LA County *and* LASD. Plaintiffs sue Villanueva in his individual and official capacities.

12. At all times material herein, Entity defendants were responsible for the

00141309.WPD

employment, training, and supervision of the actions, conduct, policies, practices, and customs of the employees and agents of the LA County, including LASD and all of its deputies and members. At all times material herein, Entity defendants were responsible for assuring that the actions, conduct, policies, procedures, and customs of the LASD complied with the laws and the Constitutions of the United States and of the State of California.

13. Plaintiffs are informed and believe and based thereon allege that defendant All City Tow Girl LLC ("All City Tow") is a limited liability corporation, incorporated under the laws of the state of California. Plaintiffs are informed that pursuant to a contract with Entity defendants, All City Tow tows and stores vehicles at the direction of LASD deputies.

14. The true names of defendants DOES 1 through 10, inclusive, are not now known to Plaintiffs who therefore sue these Defendants by fictitious names. Upon ascertaining the true name of a DOE Defendant, Plaintiffs will amend this complaint, or seek leave to do so, by substituting same for the fictitious name. Plaintiffs are informed and believe, and based thereon allege, that each DOE Defendant is in some manner responsible for the injuries and damages herein complained of.

15. At all times material herein, defendants were each acting as the employee, agent representative, and officer of every other defendant herein, and within the course and scope of such employment and agency. All defendants were acting under color of state law.

## III. FACTS COMMON TO ALL CLAIMS.

16. Plaintiffs are informed and believe and based thereon allege that as a result of recent instances of police uses of force causing the deaths of individuals under circumstances demonstrating that officers may be guilty of unjustified homicides, incidents that have occurred locally (e.g., June 18, 2020 LASD shooting death of Andres Guardado; August 31, 2020 LASD shooting death of Dijon Kizzee) and across the nation (e.g., March 13, 2020 shooting death of Breonna Taylor by Louisville officers; May 25,

2020 death of George Floyd while restrained by Minneapolis police officers) there have been numerous protests and demonstrations in the County of Los Angeles. At issue here are the protests on Tuesday, September 8, 2020, near at and/or near Imperial Highway and Normandie Avenue, and the other Friday evening, September 25, 2020, in West Hollywood.

*A. The September 8, 2020 Protest, Arrests of Plaintiffs Christina Astorga and Hugo Padilla, and Seizures Of Their Property.*

17. Plaintiffs Christina Astorga and Hugo Padilla attended the September 8, 2020 protest, called "Justice for Dijon Kizzee." Christina Astorga attended both as an individual and as a representative for Wall of Vets, to support holding accountable those responsible for the death of Dijon Kizzee. As she has done in other similar events, using her smartphone Ms. Astorga intended to record and livestream video. Plaintiff Astorga also planned to use her smartphone to update the social media profile she maintains for "Wall of Vets - Los Angeles" with information concerning the "Justice for Dijon Kizzee" protest.

18. Hugo Padilla attended the protest to document and broadcast the protest. As he has done on other occasions at protests for racial justice and against police violence, Plaintiff was "livestreaming" a video with audio narration to viewers on Youtube.com so people not in attendance could observe what was happening in real time. Plaintiff was riding his bicycle as he livestreamed the protest. Plaintiff was wearing a hat which prominently displayed "PRESS."

19. Plaintiffs are informed that at about 9:00 p.m., the LASD broke up the protest at the corner of Imperial Highway and Normandie Avenue.

*Plaintiff Christina Astorga's Arrest and Booking*

20. Plaintiff Astorga did not hear any announcement that the LASD had or were ordering people to disperse; she concluded LASD had decided to stop the protest and disperse the crowd when she saw LASD deputies shooting what she believes were rubber bullets and pepper balls at Plaintiff and others. The LASD fired these rounds without

warnings. As they did so, the deputies advanced on the crowd of people Plaintiff Astorga was in.

21. A nearby resident who saw what was happening opened the door to an apartment complex which allowed Plaintiff and others to enter. Along with others Plaintiff Astorga entered, seeking refuge. As she ran into the complex, without any warnings one or more deputies fired projectiles at Plaintiff Astorga. Projectiles struck her on her left flank rear and left knee, inflicting significant injuries. See **Exhibit B**, **C**, **D**, and **E**. When the deputy(ies) fired the rounds, Plaintiff Astorga had not committed any crime and was not threatening harm to anyone.

22. Deputies followed Plaintiff Astorga and the others into the complex. Plaintiff and a fellow protester hugged each other in an effort to protect one another. Using her smartphone, Plaintiff Astorga began to livestream as a female deputy approached her. Plaintiff pleaded with the deputy, saying "don't hurt us." The deputy took Plaintiff's smartphone and pushed Plaintiff against a wall. A male deputy put his hands on Plaintiff Astorga as the deputies handcuffed her. Plaintiff asked that they not bend her arm upwards because of a pre-existing injury, also telling the deputies she was a veteran. The male deputy said Plaintiff wasn't a veteran and added, sarcastically mocking Plaintiff, that "[She] like[s] to be arrested and like[s] to be handcuffed."

23. After Plaintiff Astorga was handcuffed, she saw that the female deputy was holding Plaintiff's smartphone. It appeared the deputy was trying to do something with it, perhaps turning it off (it was on and livestreaming when it was taken from Plaintiff's hand). That was the last time Plaintiff saw her smartphone.

24. Plaintiff Astorga was wearing a backpack when she was arrested. The deputies took the backpack off Plaintiff during the handcuffing. Later, Plaintiff is informed, the deputies took possession of the backpack.

25. Deputies took Plaintiff Astorga and other arrestees to a truck where they were forced inside. Plaintiff Astorga saw a woman whose hands were bleeding; she was very upset. Plaintiff Astorga and others pleaded with the deputies, asking them to provide care

to the woman. The deputies did nothing. Instead, deputies laughed, and took photos of the arrestees with what appeared to be the deputies' personal cell phones.

26. Rather than issuing Plaintiff Astorga and the others citations and releasing them in the field as is ordinarily required under state law and LASD policy, deputies transported Plaintiff and the others to the LASD station on Imperial Highway. Deputies took Plaintiff inside the station and began processing her for booking (booking number 6008199). A deputy, Deputy Luna, refused Plaintiff's request for face mask, responding sarcastically "sure, you'll get a mask." Plaintiff Astorga was never provided a face mask.

27. During booking, Plaintiff Astorga was forced to remove her belt, shoes, and car keys that were in her pocket. Deputies put her property in a plastic bag and kept them. Plaintiff Astorga estimates she arrived at LASD Imperial station at about 9:30pm. Plaintiff estimates she was not released from the station until early afternoon the next day, September 9, 2020.

28. When Plaintiff Astorga was being processed for release on September 9, she received the plastic bag with her belt, shoes, and car keys. She also received her backpack. Missing from Plaintiff's backpack, however, were her military grade goggles that were in the backpack when she was arrested. LASD personnel give Plaintiff a pink sheet of paper, "Los Angeles County Jail Booking and Property Record," that supposedly inventoried her property the deputies took. The copy Plaintiff received is unreadable (see **Exhibit F**). Plaintiff asked a deputy for her smartphone taken at the time of Plaintiff Astorga's arrest. The deputy stated Plaintiff would not get her smartphone until her court date.

29. Plaintiff Astorga's paperwork states the charge against her is a violation of Penal Code § 409 – failure to disperse. See **Exhibit G**. Plaintiff Astorga's court appearance date is January 6, 2021 even though, Plaintiffs are informed, the district attorney will not be filing charges. See **Exhibit A**.

30. Defendants' refusal to return Plaintiff's smartphone to her is causing her great distress. Plaintiff used it for her everyday tasks, including staying in contact with family

and friends while maintaining substantial personal, private and sensitive information on the smartphone. Plaintiff also used the smartphone to communicate with her organization, Wall of Vets, organizing events, contacting members and others, and as she was doing on September 8, 2020, recording the police as they confronted and arrested protesters.

31. Plaintiff's smartphone was not password protected. Consequently, the deputies or whoever has the phone, can access all of Plaintiff's sensitive information, change settings and the like. It appears that someone with the LASD did just that. After Plaintiff's release and when she was unable to retrieve her smartphone, she obtained a replacement. Upon logging onto her social media accounts, including the Instagram account she operates for "Wall of Vets – Los Angeles," Plaintiff saw that the profile description had been changed to "Blue Lives Matter #supportbluelives." Plaintiff is informed that LASD personnel made the change as they were the last ones in possession of Plaintiff's smartphone. A true and correct copy of a screenshot capturing this profile change before Plaintiff deactivated the account is attached hereto as **Exhibit H**.

32. On September 10, 2020, Plaintiff returned to the LASD Imperial Station to inquire about retrieving her smartphone. There was no one at the front desk so Plaintiff called the posted phone number. The phone number appeared to be for an "inventory" department. Plaintiff spoke with someone and, after providing her identifying information, was told, again, that her smartphone would not be returned, if ever, until her court date.

33. When Plaintiff was booked, she provided the LASD booking personnel a valid address at which she receives mail and other notices. Since Plaintiff's September 8, 2020 arrest, Plaintiff has not received any notice for anyone, including the LASD or the County, that her smartphone was being held or how or whom Plaintiff might contact to retrieve her smartphone.

*Plaintiff Hugo Padilla's Arrest and Booking*

34. When the LASD broke up the protest at the corner of Imperial Highway and Normandie Avenue, LASD personnel shot hard projectiles, including pepper balls (small,

hard balls covered in a peppery substance similar to pepper spray) and flash bang grenades at the crowd. The crowd dispersed, mostly fleeing into the neighborhood northeast of Imperial and Normandie.

35. Plaintiff Padilla also left, riding his bicycle north on a street parallel to Normandie. Near Normandie and 110th Street as Plaintiff was riding his bicycle, livestreaming and providing a narrative on what he was observing, without any warning LASD personnel shot Plaintiff with a hard projectile. The projectile struck Plaintiff's knee, knocking him off his bicycle and onto the ground. (This was captured on video.) Deputies then jumped on Plaintiff, with one of them striking him in the face. The punch busted Plaintiff's lip open and it began to bleed. Deputies handcuffed Plaintiff while nearby, LASD personnel arrested other people. The deputies put handcuffs on Plaintiff far too tightly, causing Plaintiff pain and injury. For weeks after Plaintiff's arrest, there were still marks on his wrists from the handcuffs.

36. The deputies forced Plaintiff Padilla and other arrestees into the back of a large truck. Deputies forced Plaintiff Padilla to crawl into the truck, handcuffed and in great pain. Plaintiff observed that other persons arrested were injured. One young woman's wrist looked badly injured and she was crying hysterically.

37. In the back of the truck were loose pepper balls. The balls covered Plaintiff Padilla's clothing in a pepper-spray like substance, causing his eyes to water painfully. The loose pepper balls were even making the deputies riding on the truck cough and sneeze.

38. Deputies were laughing and making fun of Plaintiff Padilla and others in the truck. It also appeared to Plaintiff that the deputies, using their personal cell phones, were taking photos of those in the truck.

39. Before Plaintiff was knocked off his bicycle, the smartphone he was using to livestream was a Samsung S8. When Plaintiff was knocked off his bicycle, the phone fell from Plaintiff's hand and Plaintiff lost track of where the phone went. Once he was in the back of the truck, Plaintiff asked the deputies if they had not yet picked up his phone, to

retrieve it. They responded by laughing. Consequently, Plaintiff is unsure if they retrieved his phone but believes they did.

40. The deputies transported Plaintiff Padilla and others to the LASD South Los Angeles station on Imperial Highway. Upon their arrival at the station, Plaintiff saw that reporters from Fox 11 news were present, filming Plaintiff and other arrestees. Visible in the Fox news footage is a table where Plaintiff saw LASD personnel collecting everyone's property. It appeared to Plaintiff that LASD personnel were not making any attempt to separate the property by individual property owner. Plaintiff did not see his bicycle. After Plaintiff was knocked to the ground and handcuffed, Plaintiff never saw what the deputies did with his bicycle.

41. Outside the station, deputies searched Plaintiff Padilla and the others. Deputies took Plaintiff's backpack, bicycle helmet, keys, wallet and his second phone, then took off his handcuffs. (Plaintiff was carrying a second phone that had remained in his pocket. Plaintiff uses his second phone as a personal cell phone.) Plaintiff was taken inside the station and booked (booking number 6008192).

42. Plaintiff Padilla's clothing was so covered in the pepper-spray like substance that it was making the LASD booking personnel cough and uncomfortable. The booking personnel had Plaintiff remove his shirt and gave him an LA County Jail t-shirt to wear.

43. In the early morning of the next day (September 9) at about 3 or 4 a.m., LASD transferred Plaintiff Padilla to the county jail in downtown Los Angeles. LASD released Plaintiff from the jail at about 10 a.m. on September 9, 2020. LASD personnel would not allow Plaintiff to leave wearing the LA County Jail t-shirt. They made Plaintiff remove the shirt and put on a paper jumpsuit.

44. When Plaintiff Padilla was released, LASD personnel gave him a notice to appear for an alleged violation of PC § 409 (unlawful assembly), his wallet and headphones. They also gave Plaintiff a set of keys that were not his. On his own, Plaintiff was able to ascertain and retrieve his keys, while also determining the owner of the keys he was given.

00141309.WPD

45. LASD did not return to Plaintiff Padilla the rest of his property, or inform him how to retrieve the property. Plaintiff's property not returned was: iPhone X cell phone (the phone in Plaintiff's pocket); one Samsung S8 cell phone (the phone Plaintiff was using to livestream); one white Diamondback bicycle with basket; one bicycle helmet; and other miscellaneous items in Plaintiff's backpack.

46. The day of Plaintiff Padilla's release, September 9, he went to the South LA station to retrieve the rest of his property. The station appeared closed and was barricaded with yellow metal wire. Plaintiff flagged down a front desk employee who allowed Plaintiff to enter the station. Inside, front desk personnel told Plaintiff they didn't have any of his property. The personnel gave Plaintiff a number to call. Plaintiff called the number. A person, a female, told Plaintiff the property unit had a bicycle which the LASD was holding as evidence. To retrieve the bicycle, the female told Plaintiff to call a detective and given another number. Plaintiff called that number and the detective answered. He put Plaintiff on hold. Plaintiff waited on hold for about 40 minutes before hanging up and calling back. Plaintiff's call went straight to voice mail.

47. The notice to appear the LASD gave Plaintiff Padilla set an appearance date at the Inglewood Courthouse for September 11, 2020. When Plaintiff went to court that day, the court clerk told Plaintiff no charges had been filed. The clerk gave Plaintiff a proof of appearance slip. Plaintiff Padilla is informed and believes and based thereon allege that LASD officials issued him the citation even though officials knew, in fact, there was *not* probable cause for Plaintiff's arrest, as confirmed by the LASD notifying the California Department of Justice that Plaintiff's arrest was a "detention only" which is police-speak for no probable cause.

48. After court on September 11, the same day Plaintiff Padilla went back to the South LA station. Other arrestees from September 8 were with Plaintiff along with attorney Colleen Flynn. The station was still barricaded. None of the deputies who walked by would acknowledge Plaintiff or the others. Attorney Flynn tried to flag someone down to allow Plaintiff and other to enter the station, to no avail. Some tried

calling the station, but Plaintiff is informed, no one answered or responded. Ms. Flynn stated she too called the station but the woman who answered hung up on her.

49. Upon his arrest and booking, Plaintiff Padilla provided the LASD personnel a valid mailing address. To this day, Plaintiff has not received any notice for anyone, including the LASD or the County, that his property was being held or how Plaintiff might retrieve his property.

*B. The September 25, 2020 Protest, Plaintiff Michael Dodson's Arrest and Property Seizures.*

50. Plaintiffs Ryan Michael Dodson and Kiyoko Dodson participated in the West Hollywood September 25 protest. Plaintiff Michael Dodson was driving Plaintiffs' Truck, while Plaintiff Kiyoko Dodson was on foot, walking and marching with other demonstrators. Shortly before 10:00 p.m., Ryan Dodson was driving the Truck, leading a group of people walking behind as he drove slowly on Hammond Street before turning onto Sunset Boulevard, headed east. Mr. Dodson was driving the Truck in front so as to protect those on foot behind the Truck from LASD's retaliatory force, such as "rubber bullets" and pepper balls, that Plaintiffs are informed LASD deputies are known to fire indiscriminately at protesters. Plaintiffs are informed and believe and based thereon allege, LASD deputies use this retaliatory force without regard to any actual threat or safety hazard the protesters present.

51. On Sunset, Mr. Dodson stopped his Truck to permit those on foot behind the Truck, to catch up. An LASD armored transport then pulled up and stopped in front of Mr. Dodson's Truck. Deputies ordered Mr. Dodson out of his Truck; Mr. Dodson peacefully and promptly complied. The deputies rushed Mr. Dodson, seizing him as they roughly slammed him up against his Truck. Deputies searched and handcuffed him, before placing him in a patrol car.

52. LASD deputies transported Ryan Dodson to the West Hollywood station where he was booked and jailed (booking number 6019287). Deputies also directed that his Truck be seized. At the deputies' direction, defendant All City Tow, the LASD's contract

00141309.WPD

towing and vehicle storage agent, towed the Truck. Plaintiffs are informed and believe and based thereon allege that the Truck presently sits in the All City Tow's storage lot. According to a press release Plaintiffs are informed was based on information provided by the LASD, deputies had the Truck seized "in order to protect safety for protestors, community members, and the commercial area."

53. Mr. Dodson, who works as an electrician and construction worker, is his family's sole means of support. The Truck is Mr. Dodson's work vehicle. When LASD seized the Truck, it was carrying about $7,000 worth of Mr. Dodson's work tools. Consequently, without the Truck and tools, Mr. Dodson cannot work. Furthermore, inside the Truck when LASD deputies seized it, was Ms. Dodson's knapsack. The knapsack contained her personal items such as credit and debit cards, identification and about $500 in cash. Also inside the Truck was Ryan Dodson's smartphone.

54. Ryan Dodson was booked on two misdemeanor charges: Cal. Pen. Code § 407 (failure to disperse) and C.V.C. § 23103(a) (reckless driving). He was issued a citation and released from custody the day after his arrest, September 26, at about 3:00 p.m. The citation states Ryan Dodson must appear in court on or before January 27, 2021. A check of the Superior Court's website shows that as of today, no charges have been filed against him. According to District Attorney Jackie Lacey, her office will *not* be file any § 407 charge (failure to disperse) against Ryan Dodson (see **Exhibit A**).

55. Upon his release LASD did *not* return to Ryan Dodson any of his personal proper, including his smartphone, that was inside the Truck when LASD seized it the day before. Moreover, during his booking Ryan Dodson provided a valid mailing address. Yet at no time since his arrest has the LASD or anyone else provided notice to either Plaintiff of the property the LASD is holding (other than the Truck). Plaintiffs are informed and believes and based thereon alleges that the LASD has *not* sought any review, judicial or otherwise, for their continuing seizure and confiscation of Plaintiffs' property.

56. Beginning the day of Ryan Dodson's release from custody and continuing for days thereafter, Plaintiffs sought to obtain their Truck or, at least, their personal property

-13-

(the tools, Ryan Dodson's smartphone, Kiyoko Dodson's knapsack etc.) in the Truck. Personnel from All City Tow and the Entity defendants told Plaintiffs that neither the Truck nor the items of personal property would be released; that they are supposedly subject to an "evidence hold." For what crime or crime, defendants refuse to say.

57. Following the Dodson Plaintiffs' unsuccessful efforts, attorneys acting on their behalf contacted defendants, seeking the release of Plaintiffs' property. Defendants continued to refuse to do so, again claiming the property is "evidence." Even though the Dodson Plaintiffs' attorneys informed the Entity defendants and Villanueva that the continuing withholding of Plaintiffs' property without a warrant or an exception to the warrant requirement violates Plaintiffs' Fourth and Fourteenth Amendment rights, these defendants both refuse to return or release the property, refuse to seek any judicial review, and refuse to provide Plaintiffs any means at which they can contest defendants' refusal to release Plaintiffs' property.

58. Notwithstanding the supposed evidence hold (which is contrary to what was stated in a West Hollywood press release that Plaintiffs are informed was based on LASD-supplied information) defendant All City Tow states it intends to sell Plaintiffs' Truck at a lien sale on November 4, 2020. See **Exhibit I**. In response to this notice of intended lien sale, through their attorney the Dodson Plaintiffs have demanded that defendant All City Tow confirm in writing that it will *not* sell the Truck at a lien sale; as of the date this complaint has been filed, defendant All City Tow has refused to provide any written confirmation that the Truck will not be sold.

*B. Plaintiffs' Arrests and Seizures of Plaintiffs' Property, Were Condoned And/Or Ratified by Policy Makers for Defendants LA County and LASD.*

59. Plaintiffs are informed and believe and based thereon allege that on or before September 8, 2020, one or more policy makers for LA County and/or LASD, decided that LASD personnel could and should arrest individuals present at demonstrations that LASD had declared unlawful, without regard to evidence showing that the individuals had failed to disperse or had committed unlawful acts that justify arrest. In other words, the policy

00141309.WPD

makers decided that mere presence at or near a demonstration declared unlawful, could and would justify an arrest.

60. Plaintiffs are informed and believe and based thereon allege that on or before September 8, 2020, one or more policy makers for LA County and/or LASD, also decided that for persons as described above, those persons could and should be subjected to serious injuring force like that directed against the person without any warning, even though (a) the person had not committed a crime, (b) was not fleeing, and (c) was not threatening harm to anyone.

61. Plaintiffs are further informed and believe and based thereon allege that on or before September 8, 2020, one or more policy makers for LA County and/or LASD, decided that for persons arrested as described above, the LASD should take and withhold the person's personal property -- particularly smartphones -- and *not* release or return the property to the owners upon their release from custody. Plaintiffs are informed and believe that the pretextual reason LASD decided upon to refuse to return persons' property, was that the property would be held as "evidence."

62. In fact, Plaintiffs are informed and believes that LASD personnel know or should know that the property the LASD is withholding is *not* evidence of crime. Instead, the true reason for LASD's refusal to return to persons their property the LASD seized -- Plaintiffs Dodson's Truck and all Plaintiffs' smartphones -- is to punish persons for having some connection to a protest that LASD had declared unlawful, and/or because the LASD was upset that the Los Angeles County District Attorney had announced her office would *not* file charges for failure to disperse citations issued to persons like Plaintiffs (see **Exhibit A**).

63. Plaintiffs are informed and believe that the LASD's ongoing refusal to (a) return to persons their property the LASD seized -- in particular smartphones -- (b) seek judicial review for justification for continuing to withhold the property from the owners, and (c) provide notice and opportunity for the property owners to contest the continued withholding of their property, has been approved and/or ratified by one or more policy

makers for LA County and/or LASD.

64. Plaintiffs informed and believe and based thereon allege that one of the policy makers referenced above, is defendant Villanueva.

*C. Class Action Claim.*

65. Plaintiffs bring this action on her own behalf, and on behalf of the class of all persons similarly situated, pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure. The class covers all persons arrested by LASD at protests like the ones Plaintiffs attended on September 8 and 25, 2020, and whose items of personal property the LASD seized without a warrant or other judicial review, and for whom the LASD refuses to return or release the property to its owners despite the absence of justification for continuing to seize and hold the property without judicial review, and without giving notice and opportunity to be heard by property owners who seek to reclaim their property. Each named Plaintiff is a proposed class representative.

66.   On information and belief, the class is comprised of many dozens of individuals, numbering perhaps over 100. The members of the classes are so numerous that joinder is impracticable.

67. Questions of law and fact common to each class include:

A. Whether the seizures and continued retention of Plaintiffs and class members' items of personal property without a warrant or any judicial review, violates the Fourth, Fifth and/or Fourteenth Amendment.

B. Whether defendants' refusal to provide any notice of any kind for the continuing seizure of Plaintiffs' property, violates the Fourth and Fourteenth Amendments.

C. Whether defendants' refusal to provide any hearing of any kind at which class members can contest the continuing seizure of Plaintiffs' property, violates the Fourteenth Amendment.

D. Whether defendants' continuing seizure of Plaintiffs and class members' items of personal property is intended as punishment for having exercised their

associational and First Amendment rights?

68. Plaintiffs' claims are typical of the claims of members of each class on whose behalf they act as class representatives, in that as with each class member, Plaintiffs' personal property items were seized without a warrant; the LASD is continuing to withhold the property without any judicial review; and without LASD providing any notice or review procedure at which Plaintiffs could reclaim their property.

69. Plaintiffs will fairly and adequately protect the interests of each class on whose behalf they are acting as class representatives. Plaintiffs have no interest which is now or may be potentially antagonistic to the interests of each class member on whose behalf Plaintiffs are acting as class representatives. As with all class members, items of Plaintiffs' personal property were seized following arrests at a protest event, and are being withheld from them without any judicial review or review of any type for that matter.

70. In accordance with Fed.R.Civ.P. Rule 23(b)(1)(A), prosecutions of separate actions by individual members of each class would create a risk that is inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the parties opposing the class.

71. In accordance with Fed.R.Civ.P. Rule 23(b)(1)(B), prosecutions of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

*D. Appropriateness of Equitable Relief.*

72. Plaintiffs and class members do not have an adequate remedy at law. The continuing seizure of the items of personal property without a warrant or any review, judicial or otherwise, constitutes ongoing violations Plaintiffs' and class members' Fourth and Fourteenth Amendment rights guaranteeing that all property seizures must be reasonable and at some point (either pre- or post-seizure) subject to judicial or at least

00141309.WPD

quasi-judicial review. The ongoing seizures are causing continuing, sweeping and irreparable harm to Plaintiffs and class members by depriving Plaintiffs and class members of property such as smartphones and vehicles that are often essential for Plaintiffs and class members' daily activities.

73. Plaintiffs and class members are also entitled to declaratory relief with respect to the constitutionality of the continuing seizures without warrants or review of any type, judicial or otherwise, and an injunction commanding defendants to (a) release and return the property of Plaintiffs and class members or, alternatively, (b) provide prompt judicial review in compliance with due process guarantees at which Plaintiffs and class members can contest the ongoing seizures without warrants of Plaintiffs and class members' items of personal property.

74. Injunctive relief does not raise any mootness issues because the harm alleged may be revisited on the class where it is capable of repetition, yet evading review due to the transitory nature of Plaintiffs' claims. *County of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991).

**COUNT ONE**

(Injunctive Relief -- By Plaintiffs and Class Members

As Against All Defendants)

(42 U.S.C. § 1983/ Fourth & Fourteenth Amendments)

75.  By this reference, Plaintiffs, on behalf of themselves and members of the class they represent, re-allege and incorporate all previous and following paragraphs as if fully set forth herein.

76.   The present ongoing seizures of items of personal property -- including smartphones and the Dodson Plaintiffs' Truck -- without warrants or any review, judicial or otherwise, violates the Fourth Amendment proscription against unreasonable seizure, and the Fourteenth Amendment prohibition against the confiscation of property without due process of law.

77. The acts alleged herein were the product of a custom, practice and/or policy of

the Entity defendants personally approved by defendant Villanueva, which custom, practice and/or policy caused the constitutional violations alleged herein.

## COUNT TWO

(Damages Claim -- By Individual Plaintiffs Only As Against All Defendants *except* defendant All City Tow)

(42 U.S.C. §1983 / Fourth & Fourteenth Amendments)

78.   By this reference Plaintiffs, on behalf of themselves only, re-alleges and incorporates all previous and following paragraphs as if fully set forth herein.

79.   The continuing seizure of Plaintiffs' items of personal property without a warrant or judicial review of any kind, is depriving Plaintiffs of property in violation of the Fourth and Fourteenth Amendments. Therefore, Plaintiffs are entitled to recover compensatory damages proximately caused by the property seizures, as against all defendants *except* for defendant All City Tow.

80. The acts alleged herein were the product of a policy or custom of the Entity defendants and personally approved by defendant Villanueva as alleged above, and entities Plaintiffs to recover punitive damages as against individual defendants.

## COUNT THREE

(Damages Claim -- By Plaintiffs Only As Against Entity Defendants Only)

(42 U.S.C. §1983 / Fifth Amendment)

81.   By this reference Plaintiffs, on behalf of themselves only, re-allege and incorporate all previous and following paragraphs as if fully set forth herein.

82. By seizing Plaintiffs' items of personal property and not returning them despite Plaintiffs' repeated requests, the Entity defendants physically took possession of Plaintiffs' property ostensibly for a public purpose of punishing Plaintiffs for their mere presence at the September 8 and 25, 2020 protests. Defendants, however, have not compensated Plaintiffs but instead, effected a *de facto* forfeiture of Plaintiffs' property. Consequently, the seizures without any judicial review constituted a "Taking" within the meaning of the Takings Clause of the Fifth Amendment to the United States Constitution.

00141309.WPD

83. Defendants' property seizures constituted a final decision. Per the policies described above, the Entity defendants have not provided any review process, judicial or otherwise, to challenge the property seizures.

84. Because the Entity defendants effected a Taking of personal property without payment of compensation, Plaintiffs are entitled to recover the reasonable value of their property defendants seized.

### COUNT FOUR

(Damages Claim -- By Plaintiffs Astorga, Padilla and Ryan Dodson Only

As Against All Defendants *except* defendant All City Tow)

(42 U.S.C. §1983 / Fourth Amendment)

85.   By this reference Plaintiffs, on behalf of themselves only, re-allege and incorporate all previous and following paragraphs as if fully set forth herein.

86. The seizure of Plaintiffs Astorga and Padilla by unknown LASD deputies on September 8, 2020, and the seizure of Plaintiff Ryan Dodson by unknown LASD deputies on September 25, 2020, violated their Fourth Amendment rights against unreasonable seizures by:

A. Subjecting each Plaintiff to excessive force even though (a) Plaintiff had not committed a crime and was not threatening harm to anyone;

B. Arresting each Plaintiff in the absence of probable cause that the Plaintiff had committed any crime.

87. The acts alleged herein were the product of a policy or custom of the Entity defendants and personally approved by defendant Villanueva as alleged above, thereby entitling Plaintiffs to recover punitive damages as against individual defendants.

///

///

///

///

///

00141309.WPD

**PRAYER**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

*On The First Cause of Action:*

88. That the Court certify this case pursuant to F. R. Civ. P. 23(b)(2) as a class action on behalf of a class composed of individuals whom the LASD arrested at protests in 2020 and whose personal property the LASD seized, in the course of booking these individuals, and continues to maintain possession of the property despite no lawful justification for doing so;

89. That the Court issue a declaration that the ongoing seizures of items of personal property belonging to Plaintiffs and class members violate the Fourth and Fourteenth Amendments to the United States Constitution;

90. That the Court issue a temporary restraining order, preliminary and permanent injunction on behalf of Plaintiffs and class members commanding defendants, and each of them, to release to Plaintiffs and class members forthwith, their items of personal property seized without a warrant or judicial review, upon the request of Plaintiffs and class members that they be given their property;

91. That this Court award Plaintiffs attorneys fees and costs incurred in this action under 42 U.S.C. § 1988, and any other appropriate statute;

*On The Second, Third and Fourth Causes of Action:*

92. That this Court award Plaintiffs compensatory damages, according to proof;

93. That as against any individual defendant, that Plaintiffs be awarded punitive damages according to proof;

94. That this Court award attorneys' fees and costs under 42 U.S.C. § 1988, and any other appropriate statute;

///

///

///

00141309.WPD

*On All Causes of Action*:

95. That the Court award costs of suit; and

96. And such other relief as the Court deems appropriate.

DATED: October 29, 2020

**COLLEEN FLYNN**
**PEDRAM ESFANDIARY**
**MONIQUE ALARCON**
**DONALD W. COOK**
Attorneys for Plaintiffs

By_____
                Donald W. Cook

1

## DEMAND FOR JURY TRIAL

2      Plaintiffs hereby demand a jury trial.

3   DATED: October 29, 2020

4                              **COLLEEN FLYNN**
                              **PEDRAM ESFANDIARY**
5                              **MONIQUE ALARCON**
                              **DONALD W. COOK**
6                              Attorneys for Plaintiffs

7

8      By

9                                    Donald W. Cook

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-23-

# Jackie Lacey

### District Attorney
http://da.lacounty.gov

## NEWS RELEASE

**Media Contact:**
Ricardo Santiago
Public Information Officer
213-257-2000
RSantiago@da.lacounty.gov
Twitter: @LADAOffice

June 8, 2020

## District Attorney Jackie Lacey Will Not File Charges
## for Curfew Violations, Failure to Disperse

Los Angeles County District Attorney Jackie Lacey announced today that she will not file charges against any protester for a curfew violation or failure to disperse.

She directed her legal staff to decline to prosecute these cases in the interest of justice.

"I believe whole-heartedly in free speech and support the right of protesters to demonstrate peacefully against historic racial injustice in our criminal justice system and throughout our nation," District Attorney Lacey said. "I want to encourage the exchange of ideas and work to establish dialogue between law enforcement and protesters so that we may implement enduring systemic change."

The District Attorney's Office prosecutes all felonies in Los Angeles County and misdemeanors that occur in the unincorporated areas of the county and in most cities.

These 10 cities prosecute misdemeanors that occur in their jurisdictions: Los Angeles, Long Beach, Santa Monica, Pasadena, Torrance, Burbank, Inglewood, Hawthorne, Hermosa Beach and Redondo Beach.

### About the Los Angeles County District Attorney's Office
Los Angeles County District Attorney Jackie Lacey leads the largest local prosecutorial office in the nation. Her staff of nearly 1,000 attorneys, 300 investigators and 800 support staff members is dedicated to protecting our community through the fair and ethical pursuit of justice and the safeguarding of crime victims' rights.

**Lacey Press Release**                                    **EXHIBIT A**



**Injury photo (backside, lower)**                                    **EXHIBIT B**



**Injury Photo (lower left side / buttocks)**                    **EXHIBIT C**



**Injury Photo (left arm / elbow)**                                    **EXHIBIT D**



**Injury Photo (left forearm)**                                          **EXHIBIT E**

LOS ANGELES COUNTY JAIL

BOOKING AND PROPERTY RECORD

| | YES | NO |
|---|---|---|
| HAVE VD | ☐ | ☐ |
| HAVE HEPATITIS | ☐ | ☐ |
| HAVE TB | ☐ | ☐ |
| EVER HAVE TB | ☐ | ☐ |

| BOOKING NO. | LOC BKD. | DR. LIC. NO. | STATE |
|---|---|---|---|
| | | | CA |

**PRISONER'S RECEIPT**

ARRESTEE'S NAME (LAST, FIRST, MIDDLE)

| AG'Y. OR DETAIL ARRESTING | DATE & TIME ARRESTED | TIME BKD. |
|---|---|---|

| LOCATION OF ARREST | TOTAL BAIL |
|---|---|

| CHARGE | WARR./COMM. NO. |
|---|---|

| JAIL LOC. | ARRAIGN. DATE | TIME | COURT |
|---|---|---|---|

PRISONER'S SIGNATURE WHEN BOOKED

X

LOCATION OR DISPOSITION OF VEHICLE

| CASH RETAINED | PROPERTY |
|---|---|

PRISONER'S SIG., FOR REC'T. OF FOREGOING CASH & PROPERTY

X

| CASH DEPOSITED | PROPERTY |
|---|---|

PRISONER'S SIG., FOR REC'T. OF REMAINING CASH & PROPERTY

X

SH-J-294 5/94

**LASD Property Receipt**

**EXHIBIT F**

**LOS ANGELES COUNTY SHERIFF'S DEPARTMENT**
**FELONY "OWN RECOGNIZANCE" RELEASE AND AGREEMENT TO APPEAR**

| ASTORGA | CHRISTINA | RODRIGUEZ | 6008199 |
|---|---|---|---|
| Last Name | First | Middle | Booking Number |

| ~~Smith~~ | LOS ANGELES, CA | |
|---|---|---|
| Address | Street · City | Zip |

| 409 PC/M1 | 920-09755-0378-399 |
|---|---|
| Charge | File Number |

I AGREE TO APPEAR IN PERSON IN THE BELOW INDICATED COURT ON THE DATE AND TIME SPECIFIED BELOW, AND AT SUCH OTHER TIMES AS THE COURT SHALL THEREAFTER DIRECT, AND I WILL OBEY ALL OTHER LAWFUL ORDERS OF THE COURT. I ALSO AGREE THAT IF I FAIL TO APPEAR AT THE TIME AND PLACE AGREED, OR AS DIRECTED BY THE COURT, AND I AM APPREHENDED OUTSIDE THE STATE OF CALIFORNIA, I WILL, AND I DO, HEREBY WAIVE EXTRADITION PROCEEDINGS. I AM AWARE THAT THE COURT MAY AT ANY TIME, IN ITS DISCRETION, REVOKE THE ORDER FOR RELEASE; THAT WILLFUL FAILURE TO APPEAR ON THE BELOW DATE OR AT SUCH TIME OR TIMES AS DIRECTED BY THE COURT IS PUNISHABLE AS A SEPARATE FELONY OFFENSE.

PROMETO APARECER EN PERSONA EN LA CORTE INDICADA ABAJO Y EN LA FECHA Y TIEMPO ESPECIFICADO EN TALES OTROS TIEMPOS COMO LA CORTE DESPUES ORDENE, YE OBEDECERE TODAS LAS OTRAS ORDENES LEGALES DE LA CORTE. TAMBIEN, PROMETO QUE SI DEJO DE APARECER EN EL TIEMPO Y LUGAR CONVENIDO Y ORDENADO POR LA CORTE, Y SOY ARRESTADO FUERA DEL ESTADO DE CALIFORNIA RENUNCIARE Y AQUI RENUNCION PROCESOS DE EXTRADICCIÓN. *RECONOZCO* QUE LA CORTE PUEDE EN CUALQUIER TIEMPO A SU DISCRECION REVOCAR LA ORDEN DE LIBERTAD; Y FALTA VOLUNTARIA DE APARECER EN LA FECHA ABAJO MENCIONADA O EN TAL TIEMPO O TIEMPOS SEGUN ORDENADO POR LA CORTE, ES CASTIGADO COMO UNA OFENSA APARTE DE FELONIA. AL FIRMAR ESTA FORMA Y SIN ADMITIR CULPA YO PROMETO PRESENTARME ANTE LA CORTE QUE SE INDICA ABAJO.

**WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR BEFORE THE COURT AT THE TIME, DATE, AND LOCATION INDICATED BELOW.**

8:30 ~~AM~~ PM on the 6th day of JANUARY, 2021

⊗ _____
SIGNATURE OF RELEASEE

| INGLEWOOD | ONE REGENT ST | INGLEWOOD | CA 90301 |
|---|---|---|---|
| Court | Address | Street | City |

| A. HERNANDEZ | 53111 | 09/07/20 |
|---|---|---|
| Judge/Commissioner authorizing release | | Teletype Number |
| Executed in the presence of releasing officer | Employee Number | Date/Time |

SH-R-463  (10/97)

Original + 1 copy to court        Copy to arrestee        Copy to investigator
~~booking packet~~                Copy to Records Bureau

**Release / Agreement to Appear**      **EXHIBIT G**



**Screenshot "WallofVetsLA"**                                    **EXHIBIT H**

**BMW**
A Public Service Agency

## NOTICE OF PENDING LIEN SALE FOR VEHICLE VALUED $4000 OR LESS
(Civil Code §3072)

LIEN SALE UNIT
P.O. BOX 932317
SACRAMENTO, CA 94232-3170

**TO WHOM IT MAY CONCERN:**

This is to notify you that I intend to sell this vehicle at a Lien Sale (public sale) because my towing, storage, or repair bill has not been paid. You may wish to take one of the following actions.

1. Pay my bill and reclaim the vehicle before the sale date.
2. Stop the sale and dispute the lien in court. You may stop the sale by completing the Declaration of Opposition below and forwarding this notice to the DMV in the enclosed envelope within 10 days of the date this notice was mailed.
3. Disregard this notice if you no longer own or want this vehicle so I can proceed with the sale. However, if you are the last owner of record, you may be liable for removal and disposition costs and lien not satisfied by sale of the vehicle.

**NOTE TO THE LIENHOLDER:**

This notice is to be sent to the registered owner, legal owner, Department of Motor Vehicles and any other person interested in this vehicle, 31 to 41 days before the date of sale (do not count day notice mailed). Send notice certified mail, return receipt requested, or U.S. Postal Service Certificate of Mailing.

**EXCEPTION:** Notice to the department must be sent by certified mail, return receipt requested.

At least 10 days before the sale, a copy of this notice shall be posted in a conspicuous place on the premises of the business office of the lienholder, and if the sale occurs at a place other than the business office, a notice must be posted at the site of the forthcoming sale.

### VEHICLE DESCRIPTION

| LICENSE NUMBER | STATE REGISTERED | LICENSE EXPIRATION DATE | VEHICLE IDENTIFICATION NUMBER (VIN) |
|---|---|---|---|
| 7T77523 | CA | 02/28/2021 | 2GCEC13TX51249605 |

| MAKE | YEAR | MODEL | BODY TYPE | ENGINE NUMBER (MOTORCYCLES ONLY) |
|---|---|---|---|---|
| CHEV | 05 | P/U | PK | |

### INFORMATION ABOUT MY LIEN

| DATE VEHICLE CAME INTO MY POSSESSION | DATE OWNER BILLED SERVICES/STORAGE | DATE WORK OR SERVICES COMPLETED | MY TOWING AND STORAGE WAS AUTHORIZED BY A PUBLIC AGENCY |
|---|---|---|---|
| 09/25/2020 | 09/29/2020 | 09/25/2020 | X Yes ☐ No |

The amount and basis for my lien and outstanding parking violation bail is:

| STORAGE TO DATE | AT THE RATE OF | TOWING | REPAIRS | PARKING VIOLATIONS (CVC 22651.5) | COST TO CONDUCT LIEN SALE |
|---|---|---|---|---|---|
| $ 325.00 | $ 65.00 PER DAY | $ 417.50 | $0.00 | $ | $ 70.00 |

### INFORMATION ABOUT THE SALE

The vehicle will be available for inspection at least one hour prior to the sale

| DATE NOTICE OF SALE WAS MAILED | DATE OF SALE | HOUR OF SALE |
|---|---|---|
| 09/29/2020 | 11/04/2020 | 10AM am pm |

| LOCATION OF SALE (STREET ADDRESS) | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 5832 WEST ADAMS BLVD | CULVER CITY | CA | 90232 |

### CERTIFICATION

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct and I have no information or belief that there is a valid defense to the claim which gives rise to the lien. I further certify (or declare) under penalty of perjury that the lien sale was conducted in accordance with the requirements of California Military and Veterans Code §§407, 408, 409.1, and 409.3, and with the requirements of §§3952, 3953, and 3958 of Title 50 of the United States Code.

| DATE | SIGNATURE OF LIENHOLDER/AGENT ACTING FOR LIENHOLDER |
|---|---|
| 09/29/2020 | X ALL CITY TOW SERVICE By DW |

| LIENHOLDER (NAME) | TELEPHONE NUMBER | BUREAU OF AUTOMOTIVE REPAIR NUMBER |
|---|---|---|
| ALL CITY TOW SERVICE | ( 323 ) 934-0404 | |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 5832 WEST ADAMS BLVD | CULVER CITY | CA | 90232 |

| AGENT ACTING FOR LIENHOLDER (NAME) | TELEPHONE NUMBER | REGISTRATION SERVICE NUMBER |
|---|---|---|
| DENCO LIEN SALES, INC | ( 626 ) 914-0510 | 53873 |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| P.O. BOX 1921 | GLENDORA | CA | 91740 |

**REGISTERED OWNER**

DODSON RYAN M
5439 DIRK CIRCLE
LA PALMA, CA 90623

**LEGAL OWNER**

Department of Motor Vehicles
Lien Sales Unit
P.O. Box 932317
Sacramento, CA 94232-3170

Bundled with Cert#
70190140000098171268

**INTERESTED PARTIES**

### DECLARATION OF OPPOSITION
(Must be sent to DMV within 10 days of date notice of sale mailed)

**TO: DEPARTMENT OF MOTOR VEHICLES**

Please stop the lien sale of this vehicle because I wish to contest the claim of the lienholder. I understand the lienholder may file an action in court and if judgment is given in his/her favor, I may be liable for the court costs. The address at which I may be served or notified in person of any court action is:

| PRINT TRUE FULL NAME | TELEPHONE NUMBER |
|---|---|
| | ( ) |

| ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | | |

MAILING ADDRESS IF DIFFERENT FROM ABOVE

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | SIGNATURE |
|---|---|
| | X |

**ATTENTION:** This Declaration of Opposition will not be valid unless you have signed, provided your true full name, and a valid address. If the lienholder is unable to serve you with a court action, he/she will be allowed to continue with the lien sale (Civil Code 3072).

REG 668 (REV. 1/2019)

**Lien Sale Notice**

**EXHIBIT I**