**COLLEEN FLYNN**, CSB 234281
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
E-mail: cflynnlaw@yahoo.com

**PEDRAM ESFANDIARY**, CSB 312569
**MONIQUE ALARCON**, CSB 311560
BAUM HEDLUND, ARISTEI, & GOLDMAN, P.C.
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
(310) 207-3233 / (310) 820-7444 facsimile
Email: pesfandiary@baumhedlundlaw.com
Email: malarcon@baumhedlundlaw.com

**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
Email: manncook@earthlink.net

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CHRISTINA ASTORGA, an individual, on behalf of herself and as class representative; HUGO PADILLA, an individual, on behalf of himself and class representative; RYAN MICHAEL DODSON, an individual, and KIYOKO DODSON, an individual, on behalf of themselves and as class representatives,<br><br>        Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, a municipal corporation; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; SHERIFF ALEX VILLANUEVA, an individual; and Does 1 through 10, all sued in their individual capacities,<br><br>        Defendants. | Case No. 2:20-cv-9805 CAS (AGRx)<br><br>**PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND OSC RE ISSUANCE OF PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: Not set<br>Time: 10:00 a.m.<br>Ctrm: 8D (1st Street) |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Before the Hon. Christina A. Snyder, Plaintiffs hereby apply for a temporary restraining order commanding defendants, and each of them, as follows:

00141364.WPD

1. Release forthwith to Plaintiffs Ryan Michael Dodson and Kiyoko Dodson the 2005 Chevrolet Silverado Truck, license no. 7T77523, registered owner Ryan Dodson;

2. Release forthwith to Plaintiffs Ryan Michael Dodson and Kiyoko Dodson all items of their personal property LASD seized when it seized Plaintiffs' 2005 Chevrolet Silverado Truck and arrested Ryan Dodson;

3. Release forthwith to Plaintiff Christina Astorga her smartphone seized September 8, 2020 when she was arrested, along with any other items of her personal property seized September 8 but not returned to her upon her release; and

4. Release forthwith to Plaintiff Hugo Padilla his two smartphones and bicycle seized September 8, 2020 when he was arrested, along with any other items of his personal property seized September 8 but not returned to him upon his release.

Plaintiffs further request that the Court issue its Order to Show Cause directed to defendants as to why a preliminary injunction should not issue granting the relief set forth above.

This application is pursuant to Rule 65, Federal Rules of Civil Procedure, and will be based upon this notice, the accompanying memorandum of points and authorities, the separately filed "Declarations of Christina Astorga, Hugo Padilla, Ryan Michael Dodson, Kiyoko Dodson, Colleen Flynn and Donald W. Cook" (ECF doc. 11-1), the records in this case, and whatever other matter the Court deems relevant.

***Re Notice:***

By email delivered October 31, 2020 at about 3:00 p.m. and FedEx First Overnight (delivery by Monday, November 2, 2020, between 8:00 a.m. to 9:30 a.m.), Plaintiffs gave notice of the instant application and service of the supporting papers. See Declaration of Donald W. Cook, ¶¶7-8 (ECF doc. 11-1 filed October 31, 2020).

///

00141364.WPD

DATED: October 31, 2020

**COLLEEN FLYNN**
**PEDRAM ESFANDIARY**
**MONIQUE ALARCON**
**DONALD W. COOK**
Attorneys for Plaintiffs

By_____
                    Donald W. Cook

00141364.WPD

1

# TABLE OF CONTENTS

Page

2

3

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . 8

I.  Overview and Relief Requested. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.  Factual Summary.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   A. The September 8, 2020 Protest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      1. Plaintiff Christina Astorga. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      2. Plaintiff Hugo Padilla. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   B. The September 25, 2020 Protest - Plaintiffs Ryan and Kiyoko Dodson.  . . 13
   C. Defendants' ongoing refusal to release and return Plaintiffs' Property. . . . 15
      1. Christina Astorga. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      2. Hugo Padilla. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      3. Ryan & Kiyoko Dodson.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.    The Court Should Issue A Temporary Restraining Order
        And Preliminary Injunction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

   A. Standards For Issuance Of TRO / Preliminary Injunction.  . . . . . . . . . . . . 16
   B. Plaintiffs Are Likely To Prevail On The Merits. . . . . . . . . . . . . . . . . . . . . 16
      1. The Ongoing Seizures Violate the Fourth Amendment.  . . . . . . . . . 17
      2. The Ongoing Seizures Violate Due Process. . . . . . . . . . . . . . . . . . 18
   C. Plaintiffs Are Suffering Irreparable Harm.  . . . . . . . . . . . . . . . . . . . . . . . 21
   D.  The Balance of Hardships Strongly Favors Plaintiffs. . . . . . . . . . . . . . . . 21
   E.  The Public Interest Strongly Favors Plaintiffs. . . . . . . . . . . . . . . . . . . . . . 22

IV.  The Court Should Waive the Posting of a Bond. . . . . . . . . . . . . . . . . . . . . . . 22

V.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00141364.WPD

1

Table of Authorities

Page(s)

2

3

***Cases***

4

*Arcamuzi v. Continental Air Lines, Inc.*,
    819 F.2d 935 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5

6

*Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*,
    950 F.2d 1401 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

7

8

*Avila v. Dailey*,
    246 F.Supp.3d 347 (D.D.C. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

9

*Barahona-Gomez v. Reno*,
    167 F.3d 1228 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

10

11

*Brewster v. Beck*,
    859 F.3d 1194 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

12

13

*Brown Jordan Intern. v. Mind's Eye Interiors, Inc.*,
    236 F.Supp.2d 1152 (D. Hawaii 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

14

*Bryte v. City of La Mesa*,
    207 Cal.App.3d 687 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

15

16

*City of Los Angeles v. Patel*,
    576 U.S. 409 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

17

18

*Complete Angler, LLC v. City of Clearwater, Fla.*,
    607 F.Supp.2d 1326 (M.D. Fla. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

19

*Doctor's Assocs., Inc. v. Stuart*,
    85 F.3d 975 (2nd Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

20

21

*Fuentes v. Shevin*,
    407 U.S. 67 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

22

*Goldie's Bookstore v. Superior Ct.*,
    739 F.2d 466 (9th Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

23

24

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

25

26

*Justin v. City of Los Angeles*,
    2000 WL 1808426 (C.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

27

28

*Krimstock v. Kelly*,
    306 F.3d 40 (2nd Cir. 2002) ("*Krimstock I*") . . . . . . . . . . . . . . . . . . . . . . 20

00141364.WPD

*Krimstock v. Kelly*,
    464 F.3d 246 (2nd Cir. 2006) ("*Krimstock III*") . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Los Angeles Memorial Coliseum Comm'n v. National Football League*,
    634 F.2d 1197 (9th Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*McDonald v. United States*,
    335 U.S. 451 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Mitchell v. City of Los Angeles*,
    2016 WL 11519288 (C.D. Cal. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Monterey Mechanical Co. v. Wilson*,
    125 F.3d 702 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ross v. Duggan*,
    402 F.3d 575 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Sandoval v. County of Sonoma*,
    72 F.Supp.3d 997 (N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sandoval v. County of Sonoma*,
    912 F.3d 509 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Thalheimer v. City of San Diego*,
    645 F.3d 1109 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Trupiano v. United States*,
    334 U.S. 699 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Jacobsen*,
    466 U.S. 109 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. James Daniel Good Real Property*,
    510 U.S. 43 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*United States v. Navarro*,
    2019 WL 3877699 (D. Ariz. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Von Neumann*,
    474 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

00141364.WPD

*Constitutions / Statutes / Rules of Court*

Cal. Pen. Code § 407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Penal Code § 409 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Cal. Veh. Code § 23103  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Rules of Civil Procedure 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rules of Civil Procedure 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

U.S. Const., Amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 22

U.S. Const., Amend. XIV  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*Other Authorities*

Los Angeles County Sheriff's Department
        Manual of Policy and Procedures  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

00141364.WPD

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Overview and Relief Requested.

Plaintiffs are five individuals, four of whom Los Angeles Sheriff's Deputies arrested at recent protests arising from incidents of possible police misconduct resulting in deaths (May 25, 2020 George Floyd death [Minneapolis PD]; March 13, 2020 shooting death of Breonna Taylor [Louisville PD]; June 18, 2020 shooting death of Andres Guardado and August 31, 2020 shooting death of Dijon Kizzee [both LA Sheriff's Dept.]).

The First Amended Complaint ("FAC") alleges false arrests, excessive force, and wrongful seizures, including ongoing seizures, of Plaintiffs' property. The FAC seeks both damages and injunctive relief. On the latter claim, the FAC seeks injunctive relief on behalf of Plaintiffs and a F.R.Cv.P. 23(b)(2) class. The class consists of individuals whose property Sheriff's deputies seized but have not returned nor have defendants sought judicial review for the continuing seizure of property belonging to Plaintiffs and class members. FAC ¶¶65-71. Defendants are the County of Los Angeles ("County"), the Los Angeles County Sheriff's Department ("LASD") and Sheriff Alex Villanueva.[1]

The present motion concerns only defendants' ongoing refusal to return to Plaintiffs their property. Plaintiffs seek a preliminary injunction that commands defendants to:

● Release forthwith to Plaintiffs Ryan Michael Dodson (booking no. 6019287) and Kiyoko Dodson, their truck and all the personal property contained therein when the truck was seized (e.g., Ryan Dodson's tools and smartphone; Kiyoko Dodson's backpack and its contents [debit and credit cards, her California driver's license,

---

[1] The FAC also names as a defendant All City Tow Girl LLC, a private vehicle tow company working under contract with the LASD. The Dodsons' truck was towed and stored initially by All City Tow. After the FAC was filed, on October 30, 2020, Plaintiffs' counsel was informed that LASD now has custody of the truck and the truck sits in an LASD facility. Hence, Plaintiffs no longer pursue a claim against All City Tow based solely on it having custody of the truck or its contents.

00141364.WPD

cash, etc.]);

● Release forthwith the smartphones seized from Plaintiffs Christina Astorga and Hugo Padilla along with all other property belonging to these Plaintiffs (e.g., Padilla's bicycle) seized during the course of their September 8, 2020 arrests (Astorga - booking no. 6008199; Padilla booking no. 6008192).

As will be shown, the equities are in Plaintiffs' favor -- they are likely to prevail on the merits while suffering ongoing irreparable harm.

## II. Factual Summary.

### A. The September 8, 2020 Protest.

Plaintiffs Christina Astorga and Hugo Padilla attended the September 8, 2020 protest, called "Justice for Dijon Kizzee." Christina Astorga attended both as an individual and as a representative for Wall of Vets, to support holding accountable those responsible for the death of Dijon Kizzee. Using her smartphone Ms. Astorga intended to record and livestream video. Plaintiff Astorga also planned to use her smartphone to update the social media profile she maintains for "Wall of Vets - Los Angeles" with information concerning the "Justice for Dijon Kizzee" protest. Astorga declaration ("decl.") ¶¶3-4.[2]

Hugo Padilla attended the protest to document and broadcast the protest. As he has done on other occasions at protests for racial justice and against police violence, Plaintiff was "livestreaming" a video with audio narration to viewers on Youtube.com so those not in attendance could observe what was happening in real time. Plaintiff was riding his bicycle as he livestreamed the protest. Plaintiff was wearing a hat which prominently displayed "PRESS." Padilla decl. ¶¶2-3.

///

---

[2] All cited declarations and Exhibits are in doc. 11-1 filed October 31, 2020 and entitled "Declarations of Christina Astorga, Hugo Padilla, Ryan Michael Dodson, Kiyoko Dodson, Colleen Flynn and Donald W. Cook in Support of Plaintiffs' Application for TRO and Issuance of Preliminary Injunction."

00141364.WPD

*1. Plaintiff Christina Astorga.*

Ms. Astorga did not hear any announcement that the LASD had or were ordering people to disperse; she concluded LASD had decided to stop the protest and disperse the crowd when she saw LASD deputies shooting what she believes were rubber bullets and pepper balls at Plaintiff and others. The LASD fired these rounds without warnings. As they did so, the deputies advanced on the crowd of people Ms. Astorga was in. Astorga decl. ¶5.

Along with others Ms. Astorga fled. As she ran into an apartment complex, one or more deputies fired projectiles at Ms. Astorga. Projectiles struck her on her left side and rear and left knee, inflicting significant injuries. Astorga decl. ¶¶5-6 & **Exhibit B**, **C**, **D**, and **E** (all referenced exhibits are attached to doc. 11-1 filed October 31, 2020).

Using her smartphone, Ms. Astorga began to livestream as a female deputy approached her. The deputy took Plaintiff's smartphone and pushed Plaintiff against a wall. A male deputy put his hands on Ms. Astorga as the deputies handcuffed her. Plaintiff asked that they not bend her arm upwards because of a pre-existing injury, also telling the deputies she was a veteran. The male deputy said Ms. Astorga wasn't a veteran and added, sarcastically mocking her in a sexual tone, that "[she] like[s] to be arrested and like[s] to be handcuffed." Astorga decl. ¶¶9, 10, 13

Ms. Astorga saw that the female deputy was holding Plaintiff's smartphone. It appeared the deputy was trying to do something with it, perhaps turning it off (it was on and livestreaming when it was taken from Plaintiff's hand). That was the last time Ms. Astorga saw her smartphone. Astorga decl. ¶¶9-11.

Deputies transported Ms. Astorga to the LASD station on Imperial Highway where she was booked (booking number 6008199). During booking, Ms. Astorga was forced to remove her belt, shoes, and car keys that were in her pocket. Deputies put her property in a plastic bag and kept them. LASD did not release Ms. Astorga from custody until early afternoon the next day, September 9, 2020. Astorga decl. ¶¶18, 20 & **Exhibit F**.

When Ms. Astorga was being processed for release on September 9, she received

the plastic bag with her belt, shoes, and car keys. She also received her backpack. Missing, however, were her smartphone and military grade goggles (the goggles were in her backpack when she was arrested). LASD personnel give Plaintiff a pink sheet of paper, "Los Angeles County Jail Booking and Property Record," that supposedly inventoried her property the deputies took. The copy is unreadable (see **Exhibit F**). Ms. Astorga asked a deputy for her smartphone taken at the time of her arrest. The deputy told Ms. Astorga would not get her smartphone until her court date. Astorga decl. ¶20.

Ms. Astorga's paperwork states the charge against her is a violation of Penal Code § 409 – unlawful assembly. Astorga decl. ¶21 & **Exhibit G**. Her court appearance date is January 6, 2021 even though the district attorney states her office will not be filing charges. See **Exhibit A**. To-date, Ms. Astorga has not been charged with any crime arising from the September 8, 2020 event. Cook decl. ¶4.

LASD's refusal to return Ms. Astorga's smartphone is causing her great distress. She uses it for her everyday tasks, including staying in contact with family and friends while maintaining substantial personal, private and sensitive information on the smartphone. Ms. Astorga also used the smartphone to communicate with her organization, Wall of Vets, contacting members and others, and as she was doing on September 8, 2020, recording the police as they confront and arrest protesters. Astorga decl. ¶13.

Ms. Astorga's smartphone was not password protected. Consequently, the deputies or whoever has the phone, can access all of Ms. Astorga's sensitive information, change settings and the like. It appears that someone with the LASD has done just that. After Ms. Astorga's release and upon logging onto her social media accounts (using a replacement phone) she saw that someone, most likely LASD, had logged into her Instagram account "Wall of Vets – Los Angeles," and changed its profile description to "Blue Lives Matter #supportbluelives." See Astorga decl. ¶26 & **Exhibit H** thereto.

*2. Plaintiff Hugo Padilla.*

When the LASD broke up the protest at the corner of Imperial Highway and

00141364.WPD

Normandie Avenue, LASD personnel shot hard projectiles, including pepper balls (small, hard balls covered in a peppery substance similar to pepper spray) and flash bang grenades at the crowd. The crowd dispersed, mostly fleeing into the neighborhood northeast of Imperial and Normandie. Mr. Padilla also left, riding his bicycle north on a street parallel to Normandie. Padilla decl. ¶¶4-5.

Near Normandie and 110th Street as Plaintiff was riding his bicycle, livestreaming and providing a narrative on what he was observing, without warning LASD personnel shot Plaintiff with a hard projectile. The projectile struck Mr. Padilla's knee, knocking him off his bicycle and onto the ground. (This was captured on video.) Deputies then jumped on him, with one of them striking him in the face. The punch busted Mr. Padilla's lip open and it began to bleed. Deputies handcuffed Mr. Padilla while nearby, LASD personnel arrested other people. Padilla decl. ¶5.

Deputies took Mr. Padilla and other arrestees to a large truck, forcing Mr. Padilla into the truck while handcuffed and in great pain. He saw that other persons arrested were injured. One young woman's wrist looked badly injured and she was crying hysterically. Padilla decl. ¶5.

When he was riding his bicycle, Mr. Padilla was using his Samsung S8 smartphone to livestream video while simultaneously narrating what he was seeing. When he was knocked off his bicycle, the Samsung S8 fell from his hand and he lost track of where the phone went. Once he was in the back of the truck, Mr. Padilla asked the deputies if they had not yet picked up his phone, to retrieve it. He believes they did. Padilla decl. ¶8.

The deputies transported Mr. Padilla to the Sheriff's station on Imperial Highway where he was booked (booking number 6008192). There, he saw a collection of personal property items, apparently taken from other arrestees. LASD personnel appeared not to make any attempt to separate the property by individual property owner. Mr. Padilla did not see his bicycle and at that time did not know what the deputies had done with his bicycle. Padilla decl. ¶¶10, 11.

During booking, deputies took Mr. Padilla's backpack, bicycle helmet, keys, wallet

and his second phone, an iPhone X. Mr. Padilla carried the second smartphone in his jacket pocket to use as a personal cell phone. Padilla decl. ¶11.

After transfer the next day (September 9) to the county jail in downtown Los Angeles, the LASD released Mr. Padilla from custody at about 10 a.m. LASD issued him a notice to appear for a September 11, 2020 court date, for an alleged violation of Cal. Penal Code § 409 (unlawful assembly). Jail personnel gave him his wallet and headphones. They also gave Mr. Padilla a wrong set of keys but on his own, he ascertained to whom the keys actually belonged and retrieved his keys. Padilla decl. ¶¶13-14.

Other than the forgoing items, LASD did not return to Mr. Padilla the rest of his property, nor did they inform him how to retrieve his other property (the iPhone X cell phone that was in his pocket; the Samsung S8 cell phone he used to livestream; his white Diamondback bicycle and bicycle helmet; and other miscellaneous items in his backpack). Padilla decl. ¶15.

When Mr. Padilla went to court on his scheduled September 11 date, court personnel told him no charges had been filed. Padilla decl. ¶18. Official records from the California Department of Justice state that the LASD classified Mr. Padilla's September 8 arrest as a "detention only," meaning there was no probable cause for his arrest. Cook decl. ¶3 & **Exhibit L** thereto.

**B. The September 25, 2020 Protest - Plaintiffs Ryan and Kiyoko Dodson.**

Plaintiffs Ryan Michael Dodson and Kiyoko Dodson participated in the West Hollywood September 25 protest. Plaintiff Michael Dodson was driving Plaintiffs' 2005 Chevrolet Silverado truck, while Plaintiff Kiyoko Dodson was on foot, walking and marching with other demonstrators. Shortly before 10:00 p.m., deputies stopped Ryan as he driving the truck, ordered him out, arrested and handcuffed him. Deputies then had the Dodsons' truck seized and towed along with its contents. R. Dodson decl. ¶¶2-4; K. Dodson decl. ¶¶4. According to the City of West Hollywood, deputies seized the Dodsons' truck "in order to protect safety for protestors [sic], community members, and

the commercial area." Cook decl. ¶5 & **Exhibit M** thereto. Currently, the truck is supposedly in LASD custody although All City Tow gave the Dodsons written notice it intends to sell the truck at a lien sale as early as November 4, 2020. Cook decl. ¶6; R. Dodson decl. ¶12 & **Exhibit I** thereto.

When the deputies seized the Dodsons' truck, inside it were Ryan Dodson's work tools valued at about $7,000 and his wife's backpack she was using that day as a purse. Inside the backpack were Kiyoko Dodson's credit and debit cards, her valid California driver's license, about $500 in cash, a Gopro video camera, keys to their Lexus, and various other items. When they arrested Ryan Dodson, deputies also seized his smartphone. R. Dodson decl. ¶7; K. Dodson decl. ¶5.

LASD deputies transported Ryan Dodson to the West Hollywood station where he was booked and jailed (booking number 6019287). Ryan Dodson was booked on two misdemeanor charges: Cal. Pen. Code § 407 (failure to disperse) and Cal. Veh. Code § 23103(a) (reckless driving). He was issued a citation and released from custody the day after his arrest, September 26, at about 3:00 p.m. R. Dodson decl. ¶¶7-8, Upon his release LASD did not return to Ryan Dodson any of his personal property that was in his truck, or his smartphone he was forced to leave on top of the truck's tool box. Deputies later claimed not to know what happened to his phone even though in fact, they had the phone. R. Dodson decl. ¶7; K. Dodson decl. ¶7.

Per the citation, Ryan Dodson must appear in court on or before January 27, 2021. A check of the Superior Court's website shows that as of October 30, 2020, no charges have been filed against him. As with Ms. Astorga, it appears the district attorney will *not* file any § 407 charge (failure to disperse) against Ryan Dodson. See **Exhibit A**).

Mr. Dodson works as an electrician and construction worker. He is his family's sole means of support and the truck is Mr. Dodson's work vehicle. When LASD seized the truck, it was carrying about $7,000 worth of Mr. Dodson's work tools. Consequently, without the truck and tools, Mr. Dodson cannot work and cannot support his family. R. Dodson decl. ¶¶6, 9; K. Dodson decl. ¶9.

00141364.WPD

**C. Defendants' ongoing refusal to release and return Plaintiffs' Property.**

*1. Christina Astorga.*

Ms. Astorga returned to the LASD Imperial Station twice to reclaim her property. The first time on September 21, 2020. No one was at the station's front desk, and LASD personnel would not answer calls. Astorga decl. ¶¶23-24.

The next time was September 22, 2020. She was given her backpack but not the military grade goggles that were inside the backpack when LASD seized it. Regarding her smartphone, LASD told her she would not get her phone until her court date (January 6, 2021). Astorga decl. ¶25.

When Ms. Astorga was booked, she provided the LASD booking personnel a valid address at which she receives mail and other notices. Since her September 8, 2020 arrest, she has not received any notice for anyone, including the LASD or the County, that her smartphone was being held or how or whom she might contact to retrieve her smartphone. Astorga decl. ¶28.

*2. Hugo Padilla.*

The Samsung S8 smartphone Mr. Padilla was using to livestream fell from his hand when LASD shot Mr. Padilla with the "less lethal" projectile. Although unsure if deputies retrieved his smartphone, he believes they did. Padilla decl. ¶8.

The day of Plaintiff Padilla's release, September 9, he went to the South LA station to retrieve his remaining property. LASD personnel told Plaintiff they didn't have his property. In a follow-up phone call, another LAPD representative told Mr. Padilla the property unit had a bicycle the LASD was holding as evidence. Upon given another number which he called to speak to a handling detective, Mr. Padilla was put on hold; after waiting about 40 minutes, he hung up and called back; his call went straight to voice mail. Padilla decl. ¶¶16-17.

Upon his arrest and booking, Plaintiff Padilla provided the LASD personnel a valid mailing address. To this day, Plaintiff has not received any notice for anyone, including the LASD or the County, that his property was being held or how Plaintiff might retrieve

00141364.WPD

his property, including his two smartphones. Padilla decl. ¶21.

Like Mr. Padilla, for all arrestees who had a September 11 court date and learned no charges were filed, the LASD refuses to return their property. Flynn decl. ¶¶5-7.

### 3. Ryan & Kiyoko Dodson.

Beginning the day of Ryan Dodson's release from custody and continuing for days thereafter, the Dodsons sought to retrieve their truck or, at least, their personal property (the tools, Ryan Dodson's smartphone, Kiyoko Dodson's backpack etc.) that were seized with the truck. All City Tow and Sheriff's officials have repeatedly told the Dodsons that neither their truck nor their items of personal property would be released; that they are supposedly subject to an "evidence hold." For what crime or crime, defendants had not said. R. Dodson decl. ¶¶9-10; K. Dodson ¶¶6-8. Meanwhile, All City Tow states it intends to sell the truck at a lien sale. R. Dodson decl. ¶12 & **Exhibit I** thereto.

## III.   The Court Should Issue A Temporary Restraining Order And Preliminary Injunction.

### A. Standards For Issuance Of TRO / Preliminary Injunction.

The standard for granting a temporary restraining order "is identical to the standard for issuing a preliminary injunction." *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987); *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1201 (9th Cir.1980); *accord Brown Jordan Intern. v. Mind's Eye Interiors, Inc.*, 236 F.Supp.2d 1152, 1154 (D. Hawaii 2002).

To issue a preliminary injunction, the Court considers four factors: (1) the likelihood of success on the merits; (2) the likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of hardships between the two parties; and (4) the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). All four cut heavily in favor of granting the motion.

### B. Plaintiffs Are Likely To Prevail On The Merits.

For purposes of this argument, Plaintiffs do not contest defendants' justification for *initially* seizing their property without warrants. On this application the critical issue

00141364.WPD

is defendants' refusal to return to Plaintiffs their property, given that defendants hold the property without any judicial review. Under these circumstances, defendants' refusal to release the property violates Plaintiffs' Fourth Amendment rights and due process guarantees.

### 1. The Ongoing Seizures Violate the Fourth Amendment.

By maintaining physical possession of Plaintiffs' property, defendants are effecting Fourth Amendment seizures. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (Fourth Amendment "seizure" occurs when "there is some meaningful interference with an individual's possessory interests in that property."). That is, Plaintiffs' Fourth Amendment protection against unreasonable seizures was not limited to September 8 and 25 when defendants' *initially* took Plaintiffs' property; the protection applies throughout the entirety of time defendants hold Plaintiffs' property. *Brewster v. Beck*, 859 F.3d 1194, 1196-97 (9th Cir. 2017) (There must be Fourth Amendment justification for the entire time the government holds the property; hence, if the justification lapses, the police's continued retention of the property violates the Fourth Amendment).

As *Brewster* states, "[t]he Fourth Amendment 'is implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual.' " 859 F.3d at 1197 (*quoting with approval* District Judge Thelton Henderson's opinion in *Sandoval v. County of Sonoma*, 72 F.Supp.3d 997, 1004 (N.D. Cal. 2014), *aff'd*, 912 F.3d 509 (9th Cir. 2018)).

Here, there is a patently unconstitutional delay by defendants' refusal to return to Plaintiffs their property. Defendants hold every item of property without a warrant or other judicial review; consequently, every seizure is unconstitutional unless and until defendants justify the ongoing seizures. *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015). Defendants cannot establish justification.

Defendants cannot establish community caretaking because every Plaintiff is willing and able to lawfully reclaim their property. *Brewster*, 859 F.3d at 1196-97 (Since community caretaking justification could not justify continuing to hold the vehicle upon

00141364.WPD

the owner's lawful demand to reclaim it, the city violated the plaintiff's Fourth Amendment rights); *accord Sandoval v. County of Sonoma*, 912 F.3d 509, 516-17 (9th Cir. 2018).

Should defendants argue they are holding Plaintiffs' property as potential evidence of crime, that too fails. See *infra* next section. Additionally, an exigency that justifies a warrantless seizure exists *only* if there is no time to obtain a warrant; if the police have time to secure a warrant or other judicial review, *there is no exigency excusing the need to obtain a warrant. Trupiano v. United States*, 334 U.S. 699, 705 (1948) (When it is "reasonably practicable" to obtain a warrant, failure to do so violates the Fourth Amendment); *McDonald v. United States*, 335 U.S. 451, 454 (1948) ( Warrantless search held unlawful because the "officers [were] not responding to an emergency" and thus "there [were no] compelling reasons to justify the absence of a search warrant.").

Defendants' ongoing seizures of Plaintiffs' property without judicial review is violating the Fourth Amendment.

### 2. The Ongoing Seizures Violate Due Process.

Few propositions are more basic than that when the government seizes one's property, it *must* provide notice and opportunity for the property's owner to contest that seizure, if not pre-seizure then post-seizure. *E.g., United States v. James Daniel Good Real Property*, 510 U.S. 43, 49-55 (1993); *Ross v. Duggan*, 402 F.3d 575, 584 (6th Cir. 2004) (due process requires "persons receive notice and [at least] timely post-seizure opportunity to be heard . . .") (*citing United States v. Von Neumann*, 474 U.S. 242, 249-50 (1986)); *Bryte v. City of La Mesa*, 207 Cal.App.3d 687, 689 (1989) ("A person's property may not be confiscated by the state without 'some kind of notice and opportunity to be heard.' " [*quoting Fuentes v. Shevin*, 407 U.S. 67, 79-80 (1972)]). Moreover, whatever review is provided, the review must be at least quasi-judicial, *i.e.*, a neutral arbiter. 510 U.S. at 55-56.

Defendants' continuing seizures of Plaintiffs' property is violating due process. Defendants have *never* provided any Plaintiff *any* opportunity to contest the property'

00141364.WPD

seizures, or to seek their return. Astorga decl. ¶28; Padilla decl. ¶11; R. Dodson decl. ¶¶10-11. But as the Fourteenth Amendment states, "No State shall . . . deprive any person of property, without due process law." U.S. Const., Amend. XIV. Here, that meant providing each Plaintiff "notice and an opportunity to" contest the continuing seizure of their property by a neutral fact-finder. *United States v. James Daniel Good Real Property*, 510 U.S. at 49-50; *Krimstock v. Kelly*, 464 F.3d 246, 248 (2nd Cir. 2006) ("*Krimstock III*").

The Second Circuit's *Krimstock III* is both instructive and on point. There, the lower court ruled that a prosecutor "could unilaterally decide that a vehicle [was] needed as evidence and [thus] forestall any hearing on the legitimacy of the [vehicle's] . . . continued retention." 464 F.3d at 250. *Krimstock III* reversed, holding that the continued retention of the vehicles as possible evidence of crime, violated due process. Applying the three-factor balancing test first articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), *Krimstock III* concluded vehicle owners' compelling interest in their property, the risk of erroneous deprivation and absence of burden to the government in providing review, mandated "some *immediate* judicial review." 464 F.3d at 255 (emphasis added).

Unquestionably, Plaintiffs' private interests in reclaiming their property is compelling. The Dodsons' truck and Ryan Dodson's work tools are essential for the Dodsons' livelihood. R. Dodson decl. ¶¶6, 9; K. Ryan decl. ¶9; *Avila v. Dailey*, 246 F.Supp.3d 347, 366 (D.D.C. 2017) (In case involving continuing seizure of the plaintiff's vehicle, court concludes that the "[p]laintiff's interest in his van was particularly strong, since it was vital to his livelihood as a contractor, and contained his work tools.").

Equally important is Plaintiff Kiyoko Dodson's backpack defendants are withholding, a backpack that contains her credit and debit cards, driver's license and cash. K. Dodson decl. ¶5, 11. And for all Plaintiffs, their smartphones are indispensable. For in this age, smartphones are often the only personal computer one has, and is used to manage most every aspect of modern life. Be it for communication (phone call, text message, email, livestreaming), online electronic shopping (particularly important in this

COVID era), transportation (Uber, Lyft), navigation (GPS), personal management (calendar, record-keeping), and entertainment (gaming, videos). *E.g.,* Astorga decl. ¶22. No wonder that nearly one-half of adults in this country say they could not last a day without their smartphone.[3] *See also United States v. Navarro*, 2019 WL 3877699 at *14 (D. Ariz. 2019) (July 12, 2019) ("The Court also recognizes that the defendant has a strong possessory interest in the cell phone, which in today's world is much more than just a phone – it is akin to a computer that can contain vast amounts of information.").

Furthermore, apart from the importance of particular items of property defendants are withholding, a purported "evidence" hold is spurious. District Attorney Lacey states she will not press charges against any Plaintiff for failure to disperse. See **Exhibit A**. That makes *Krimstock III's* holding even more compelling. And defendants do not need the Dodsons' truck to prove a traffic violation for as LASD's policy states, property (and/or evidence) should not be stored when suitable alternatives, such as photographs, are available:

> Suitable alternatives may include: Photographs of evidence for court presentation … [o]nly evidence essential to proving an offense shall be seized … [t]he need to hold money as evidence shall be closely reviewed by the watch commander and approved only if the money is unique or has evidentiary value due to its markings….

LOS ANGELES COUNTY SHERIFF'S DEPARTMENT MANUAL OF POLICY AND PROCEDURES, VOLUME 5, CHAPTER 4, SECTION 000.10[4]; *see also Krimstock v. Kelly*, 306 F.3d 40, 69 n.32 (2nd Cir. 2002) ("*Krimstock I*") ("In any event, it is hard to imagine how an arrestee's vehicle could serve as evidence in the ordinary DWI case.") (Opinion by then

---

[3] See https://www.forbes.com/sites/amitchowdhry/2014/06/30/nearly-half-of-u-s-adults-wouldnt-last-a-day-without-a-smartphone-says-survey/?sh=2cab31825786 (accessed October 30, 2020).

[4] Available at http://pars.lasd.org/Viewer/Manuals/11871/Content/11873?showHistorical=True.

Judge Sotomayor).

Finally, in the case of Plaintiff Hugo Padilla, defendants admit they lack probable cause that he had committed *any* crime, let alone a crime justifying the continuing seizure of his bicycle, smartphone and other property. Cook decl. ¶3 & **Exhibit L** thereto.

### C. Plaintiffs Are Suffering Irreparable Harm.

Defendants' ongoing violations of Plaintiffs' Fourth and Fourteenth Amendments rights mean each Plaintiff has suffered, and continues to suffer, irreparable harm. " '[A]n alleged constitutional infringement will often alone constitute irreparable harm.' " *Associated Gen. Contractors of California, Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991) (*quoting Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir.1984)).

Additionally, for the Dodsons their sole means of support is Mr. Dodson's work in construction and as an electrician; their truck and his tools (valued at about $7,000) are essential to his work and thus to the Dodsons' livelihood. See R. Dodson decl. ¶¶7, 9; K. Ryan decl. ¶9. And then there are Ms. Dodson's personal items in the truck when it was seized -- her backpack containing her credit cards, identification, and $500 in cash, items she ordinarily never leaves home without. K. Dodson decl. ¶5. The continuing seizure of the Dodsons' truck with the valuable items inside the truck, runs the very real danger the truck will be broken into and vandalized -- vehicle storage lots are notorious for burglaries. This compounds the risk of irreparable harm to the Dodson Plaintiffs.

Consequently, the likely unconstitutionality of defendants' ongoing refusal to return to Plaintiffs their property strongly favors a finding of irreparable harm. *Monterey Mechanical Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (Defendants' actions are likely unconstitutional; Ninth Circuit vacated trial court's denial of injunctive relief because of the likelihood of irreparable harm).

### D.  The Balance of Hardships Strongly Favors Plaintiffs.

Before granting injunctive relief, the Court considers the possible harm the relief may cause a defendant versus the harm to the plaintiff if relief is not granted. *Thalheimer*

00141364.WPD

*v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011). This is a "balancing test," "similar to the analysis of the three prongs of *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976)]." *Mitchell v. City of Los Angeles*, 2016 WL 11519288, at *7 (C.D. Cal. 2016) (Hon. S. James Otero).

Here, there are significant, constitutionally-protected property interests at stake for all Plaintiffs, particularly for the Dodsons' vehicle and items contained therein, and all Plaintiffs' smartphones. The continuing seizure of Plaintiffs' property adds to the ongoing irreparable harm each Plaintiff has and continues to endure, while threatening additional harm in the loss or destruction of property, not to mention further malicious interference with a plaintiff's First Amendment rights as happened with Ms. Astorga. See Astorga decl. ¶26 & **Exhibit H** thereto (LASD personnel improperly used Ms. Astorga's smartphone to access and deface her "WallofVets-LA" Instagram account).

Meanwhile, granting the requested TRO and injunction imposes no hardship on defendants. For Plaintiff Padilla, defendants concede there is no criminal case against him while for the other Plaintiffs, the district attorney disclaims any interest in prosecuting failure to disperse charges. Cook decl. ¶¶2-4 & **Exhibits A** and **L**. As to other possible charges, (e.g., the reckless driving charge alleged against Ryan Dodson) none require that defendants maintain custody of Plaintiffs' property.

**E. The Public Interest Strongly Favors Plaintiffs.**

No public interest is being served by denying Plaintiffs, the lawful owners of the property defendants seized, the return of their property. Just the opposite. By ordering defendants to return the property, the public interest is served by (a) upholding a person's right to own and possess property and (b) restoring to Plaintiffs property rights defendants are violating in contravention of the Fourth and Fourteenth Amendments.

**IV. The Court Should Waive the Posting of a Bond.**

Although F.R.Cv.P. 65(c) ordinarily requires that the moving party post a bond as a condition of a preliminary injunction, the Court has the discretion to waive a bond. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). Waiving the bond

-22-

requirement is proper when, like here, "there is no realistic likelihood of harm to the defendant from enjoining [its] conduct." *Id.* Additionally, the strong public interest in upholding constitutional rights, coupled with Plaintiffs' limited financial means, also supports waiver of a bond. Astorga decl. ¶29; R. Dodson decl. ¶¶6, 9; K. Ryan decl. ¶9; *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (finding the district court did not abuse its discretion in requiring only a nominal bond given "the public interest underlying the litigation and the unremarkable financial means of the class as a whole."); *Complete Angler, LLC v. City of Clearwater, Fla.*, 607 F.Supp.2d 1326, 1335 (M.D. Fla. 2009) ("Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right."); *Justin v. City of Los Angeles*, 2000 WL 1808426 at *2, *13 (C.D. Cal. 2000) (Hon. Lourdes Baird) (*citing Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2nd Cir. 1996), court waives bond because there was "no proof of likelihood of harm to the party enjoined.").

**V.   Conclusion.**

For the foregoing reasons, the Court should issue the preliminary injunction as requested.

DATED: October 31, 2020

**COLLEEN FLYNN**
**PEDRAM ESFANDIARY**
**MONIQUE ALARCON**
**DONALD W. COOK**
Attorneys for Plaintiffs

By _____
          Donald W. Cook