**COLLEEN FLYNN**, CSB 234281
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
E-mail: cflynnlaw@yahoo.com

**PEDRAM ESFANDIARY**, CSB 312569
**MONIQUE ALARCON**, CSB 311560
BAUM HEDLUND, ARISTEL, & GOLDMAN, P.C.
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
(310) 207-3233 / (310) 820-7444 facsimile
Email: pesfandiary@baumhedlundlaw.com
Email: malarcon@baumhedlundlaw.com

**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
Email: manncook@earthlink.net

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

CHRISTINA ASTORGA, an individual, on behalf of herself and as class representative; HUGO PADILLA, an individual, on behalf of himself and class representative; RYAN MICHAEL DODSON, an individual, and KIYOKO DODSON, an individual, on behalf of themselves and as class representatives,

Plaintiffs,

vs.

COUNTY OF LOS ANGELES, a municipal corporation; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; SHERIFF ALEX VILLANUEVA, an individual; and Does 1 through 10, all sued in their individual capacities,

Defendants.

Case No. 2:20-cv-9805 AB (AGRx)

**PLAINTIFFS' SUPPLEMENTAL BRIEF PURSUANT TO COURT'S 11/12/20 ORDER**

Date: Not set
Time: 10:00 a.m.
Ctrm: 8D (1st Street)

TO THE COURT:

Pursuant to the Court's November 12, 2020 Order (doc. 20), Plaintiffs submit this brief addressing the issues the Court raised.

DATED: November 20, 2020

**COLLEEN FLYNN**
**PEDRAM ESFANDIARY**
**MONIQUE ALARCON**
**DONALD W. COOK**
Attorneys for Plaintiffs

By______________________________
Donald W. Cook

# TABLE OF CONTENTS

Page

I. Must Plaintiffs Show That the Ongoing Seizures of Their Property Is Pursuant to a LASD Custom, Policy or Practice? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. Evidence Establishes that the Ongoing Seizures Of Plaintiffs' Property Is Pursuant to an LASD Policy, Practice or Custom. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. *Zepeda v. INS* Does Not Preclude The Relief Plaintiffs Seek. . . . . . . . . . . . . . . 8

IV. Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**I. Must Plaintiffs Show That the Ongoing Seizures of Their Property Is Pursuant to a LASD Custom, Policy or Practice?**

Short answer: for injunctive relief under 42 U.S.C. § 1983, *yes*. *Los Angeles County v. Humphries*, 562 U.S. 29, 37-39 (2010). However, as explained in the next section, the evidence is undisputed that the ongoing seizures of Plaintiffs' property *is* pursuant to a Los Angeles County Sheriff's Department ("LASD") policy or practice that has also been ratified if not expressly approved by County policymakers.

**II. Evidence Establishes that the Ongoing Seizures Of Plaintiffs' Property Is Pursuant to an LASD Policy, Practice or Custom.**

For § 1983 injunctive relief under *Humphries*, "evidence of an informal practice or custom will suffice." *S.R. Nehad v. Browder*, 929 F.3d 1125, 1141 (9th Cir. 2019) (*citing County of Los Angeles v. Humphries*). And a plaintiff may claim *Monell* liability where an "official with final policy-making authority ratifie[s] a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir.1992). Ratification "and thus the existence of a *de facto* policy or custom, can be shown by a [policy-maker's] post-event conduct, including its conduct in an investigation of the incident." *Dorger v. City of Napa*, No. 12–440, 2012 WL 3791447, *5 (N.D. Cal. 2012) (*citing Henry v. County of Shasta*, 132 F.3d 512, 518 (9th Cir. 1997)).

Here, substantial and *undisputed* evidence shows that the ongoing seizures are *not* aberrational or one-off action by a rogue deputy or two; rather, these ongoing seizures appear pursuant to an LASD informal practice or custom, a practice or custom ratified by *two* LASD policymakers—(a) defendant Sheriff Villanueva and (b) Los Angeles County Counsel Mary Wickham:

- Defendants are withholding property seized at three separate protest events

(September 6, 2020[1]; September 8, 2020[2]; September 25, 2020[3]);

● The LASD's refusal to return property being held without any judicial review, applies across-the-board to any property seized from any person arrested at one of the protests[4];

● Concurrent with the ongoing seizures without judicial review for property belonging to the four Plaintiffs (Christina Astorga, Hugo Padilla, Ryan and Kiyoko Dodson) Plaintiffs have identified, by name and booking number, six other individuals whose property the LASD holds pursuant to ongoing seizures without judicial review.[5]

● All seizures arise from the three protest events (September 6, 8 and 25) and involve numerous LASD personnel from two different LASD stations (South Los Angeles and West Hollywood), thereby strongly indicating the ongoing seizures have at least tacit department approval;

● Sheriff Villanueva has publicly exploited the LASD's ongoing property seizures without judicial review[6];

● Over a month ago, Sheriff Villanueva and County Counsel Wickham were informed that withholding persons' property without judicial review and without giving

---

[1] Devermont decl. ¶¶4, 7, 9-10 & Dombayci decl. ¶¶4-8 (doc. 21-1).

[2] Astorga decl. ¶¶18-20 & Padilla decl. ¶¶10-15 (doc. 11-1); Marsella decl. ¶¶7-16, McQueen decl. ¶¶3-11 & Unzueta decl. ¶¶3-12 (doc. 21-1).

[3] Dodson (Ryan) decl. ¶¶4-10 (doc. 11-1); Moore decl. ¶¶5-9 (doc. 21-1).

[4] Astorga decl. ¶¶20, 23-25 (doc. 11-1); Padilla decl. ¶¶16-17, 19 (doc. 11-1); Dodson (Kiyoko) ¶¶7-8 (doc. 11-1); Flynn decl. ¶¶5-7 (doc. 11-1); Devermont decl. ¶¶4-10; Dombayci decl. ¶¶5-9; Marsella decl. ¶17; Moore decl. ¶10; McQueen decl. ¶11; Unzueta decl. ¶¶7-13, 17. (See doc. 21-1 for the Devermont, Dombayci, Marsella, Moore, McQueen and Unzueta declarations.)

[5] Dombayci decl. ¶¶4-8; Devermont decl. ¶¶4-7; McQueen decl. ¶¶4-11; Moore decl. ¶¶3-10; Marsella decl. ¶¶7-17; Unzueta decl. ¶¶6-9, 12-13, 17. See doc. 21-1 for these declarations.

[6] Cook Supplemental decl. ¶¶5-6 (doc. 21-1).

the property owner notice and meaningful opportunity to contest the ongoing seizures, violate both statutory and constitutional law. Despite this notice to these LASD policymakers, the LASD has *not* (a) sought judicial review to justify the ongoing seizures and (b) continue to withhold property in violation of such decisions as *United States v. James Daniel Good Real Property*, 510 U.S. 43, 49-55 (1993) and *Brewster v. Beck*, 859 F.3d 1194, 1196-97 (9th Cir. 2017).[7] It is also noteworthy that the LASD's refusal to release the property and instead continue to hold the property without any judicial review, is apparently based on advice from its counsel. Flynn Supplemental decl. ¶5 (doc. 21-1);

● In response to Plaintiffs' TRO application, in its opposition (doc. 18 filed 11/4/20) the County did *not* dispute the evidence showing that the LASD was effecting ongoing property seizures without judicial review; made *no* claim that these ongoing seizures were in contravention of County policy; and made *no* claim that LASD personnel responsible for the property seizures were acting on their own without County or LASD authorization;

● Since the Court's November 12, 2020 statement that it "is disturbed by the allegations of Defendants' seizure and non-return of Plaintiff's personal items despite no pending criminal charges" (doc. 20 @ 2), numerous LASD personnel have told Plaintiffs or their counsel that their property (primarily smartphones) will *not* be returned,[8] thus re-affirming the LASD's ongoing property seizures without judicial review.

The above evidence shows that the ongoing seizures effected without any judicial review or other meaningful opportunity for Plaintiffs to challenge the seizures, are

---

[7] Cook Supplemental decl. ¶2 (doc. 21-1) & Cook 10/31/20 decl. ¶6 & Exhibit N thereto (doc. 11-1). After Plaintiffs served their TRO Application (doc. 11) the LASD released to the Dodsons their truck and *some* of the personal property items in the truck. However, the LASD continues to refuse to return to any Plaintiff their smartphones and various other items the LASD still holds (e.g., Mr. Padilla's bicycle). See Cook Supplemental decl. ¶¶3-4; Flynn Supplemental decl. ¶¶3-5 & Exhibit O thereto (doc. 21-1).

[8] Cook Supplemental decl. ¶¶3-4 & Flynn Supplemental decl. ¶¶3-5 (doc. 21-1).

pursuant to an LASD *de facto* custom or practice that has also been ratified by County policymakers. That is more than sufficient for *Monell* liability. In *Henry v. County of Shasta*, 132 F.3d 512 (9th Cir. 1997), the plaintiff claimed he was mistreated in the county jail, and that he was repeatedly threatened by different jail personnel. To support his claim that his abusive treatment reflected a *de facto* county practice, he relied on declarations from two other individuals who described undergoing treatment at the jail "virtually identical" to plaintiff's treatment. *Held*: the treatment of the other two prisoners, along with plaintiff's testimony on how he was treated, sufficed to establish the county's *Monell* liability:

> May's and Burns' declarations are sufficient to show for purposes of summary judgment that such abuse of people who commit minor infractions is "the way things are done and have been done" in Shasta County, and thus would allow a jury to make a finding as to the existence of a policy or custom.
>
> . . .
>
> The continuing threats [the plaintiff] Henry received from various sheriff's deputies, both before and after he complied with their demands, provide substantial evidence that the jail personnel were acting in accordance with a county policy encouraging or at least condoning flagrantly unconstitutional treatment of persons stopped for non-jailable offenses who refuse to sign notices to appear or demand to be taken before a magistrate. In short, the evidence of the officials' conduct strongly suggests that Henry's treatment resulted from a widespread pattern of abuse by numerous individuals rather than a single instance of mistreatment by a solitary officer.

132 F.3d at 520, 521.

As in *Henry*, it wasn't just one or two LASD personnel who have refused to return Plaintiffs' property; there are probably a dozen or more involved LASD personnel, from

two different LASD stations (South Los Angeles and West Hollywood). They all give the same or similar refusal -- the property owner has to wait until his court date. And even if charges are not filed, e.g., Hugo Padilla (the state criminal court specifically informed him no charges were filed), the LASD still refuses to return the property.[9] *See also Estate of Osuna v. County of Stanislaus*, 392 F.Supp. 3d1162, 1175 (E.D. Cal. 2019) (denying motion to dismiss *Monell* claim because the complaint "identified multiple prior instances of alleged misconduct.").

Additionally, Plaintiffs' evidence is far stronger than in *Henry*. There, it was just the testimony of two other arrestees who suffered a similar fate as did the plaintiff, for three total. Here, there are *ten* individuals describing virtually identical misconduct by numerous LASD personnel from two separate LASD stations. Then there are the policymakers Sheriff Villanueva and County Counsel Wickham -- they were on notice that LASD personnel were and are seizing and withholding property without any judicial review, yet they have taken no action to halt these patently unconstitutional ongoing seizures. To the contrary, Sheriff Villanueva is on record as publicly extolling and exploiting some of the very items of property at issue in this lawsuit! *S.R. Nehad*, 929 F.3d at 1142 (In reversing the district court's dismissal of plaintiff's *Monell* claim, Ninth Circuit cites, *inter alia*, the police chief "explicitly affirm[ing]" that the officer's conduct " 'was the right thing to do' "); *Larez v. City of Los Angeles*, 946 F.2d 640, 647 (9th Cir. 1991) ("[LAPD Chief of Police] Gates's statements, coming from a final policymaker on police matters, also properly could have been considered to represent the LAPD's policy or custom of condonation of, and acquiescence in, [police misconduct].").

## III. *Zepeda v. INS* Does Not Preclude The Relief Plaintiffs Seek.

Per the Court's November 12, 2020 Order, Plaintiffs now address whether the requested injunctive relief should inure only to the benefits of the named Plaintiffs and not putative class members, see *Zepeda v. INS*, 753 F.2d 719, 729 n.1 (9th Cir. 1985).

---

[9] Flynn decl. ¶¶5-7 (doc. 11-1).

While *Zepeda* expressed a general rule against the issuance of class-wide relief in the absence of class certification, later rulings have clarified that holding, particularly in the civil rights context when broad relief is necessary to inure complete relief to the named plaintiffs. "Indeed, this circuit has upheld injunctions against pervasive violations of the Fourth Amendment." *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501 (9th Cir. 1996). "While injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification . . . an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit - even if it is not a class action - *if such breadth is necessary to give prevailing parties the relief to which they are entitled*." *Id.* at 1501-02 (q*uoting Bresgal v. Brock*, 843 F.2d 1163, 1170-71 (9th Cir. 1987) (emphasis in original).

Moreover, "*Zepeda* only stands for the proposition that after a motion to certify a class was expressly denied, the court was limited to entering an injunction only as to the individual plaintiffs." *Nak Kim Chhoeun v. Marin*, 306 F.Supp.3d 1147, 1164 (C.D. Cal. 2018) (Hon. Cormac J. Carney) (*citing Bresgal*, 843 F.2d at 1170). "*Zepeda* does not apply where, as here, an injunction is necessary to forestall harm to putative class members that is likely to transpire before the parties can litigate a motion for class certification." *Id.*; *see also Just Film, Inc. v. Merch. Servs., Inc.*, 474 F. App'x 493, 495 (9th Cir. 2012) ("We do not read *Zepeda* to preclude our result because in *Zepeda* the trial court had denied class certification and here the trial court has not yet decided the class certification issue.").

The Ninth Circuit has further distinguished *Zepeda* on the grounds that "[t]he import of the rule underlying *Zepeda* is that an injunction cannot issue against an entity that is not a party to the suit." *Bregsal*, 843 F.2d at 1170 (granting an injunction because "the injunction here was issued only against the Secretary, who is a party.").

Because this Court has not yet ruled on class certification while the harm is ongoing and is likely to continue before the parties can litigate the class certification motion, *Zepeda* has no application here. The Court should issue an interim injunction

barring the LASD from continuing to withhold arrestees' property without judicial review, and without notice and meaningful opportunity for property owners to contest the ongoing seizures.

That the requested injunction – one which would only issue against the named defendants – will incidentally extend to members of the putative class is not fatal. In *Easyriders*, fourteen individual plaintiffs, motorcyclists, sued the CHP to enjoin its enforcement policy on motorcycle helmets. The Ninth Circuit upheld an injunction enjoining the policy's enforcement against *all* motorcyclists and not just the fourteen plaintiffs. 92 F.3d at 1501-02. *Easyriders* reasoned that since the policy is set on a statewide level, in practical terms it is unlikely to expect officers would inquire whether an individual was one of the prevailing plaintiffs in the lawsuit before issuing a citation. *Id.* Therefore, the broad relief was necessary to give the prevailing parties the relief to which they were entitled. *Id.*

The same logic applies here. Pursuant to a *de facto* LASD practice, without *any* judicial review the LASD is withholding property that LASD personnel seized from the named Plaintiffs and similarly situated arrestees on the same basis. Therefore, Plaintiffs (and others) are being subjected to ongoing irreparable harm for the same reasons pursuant to the same practice, thus justifying injunctive relief that incidentally benefits persons beyond the named Plaintiffs. See *Lavan v. City of Los Angeles*, 797 F. Supp.2d 1005, 1019 (C.D. Cal. 2011) ("City is seizing and destroying property that has been temporarily left in public places by its owner, but not abandoned. Thus, it would likely be impossible for the City to determine whose property is being confiscated.").

Accordingly, to ensure that Plaintiffs are not subject to LASD's continuing unconstitutional conduct, this Court has authority to issue an injunction enjoining the LASD practice to seize and hold arrestees property in violation of the Fourth Amendment and due process guarantees. *Mitchell v. City of Los Angeles*, No. CV16-1750 SJO (GJSx), 2016 WL 11519288, *7 (C.D. Cal. 2016) (Hon. S. James Otero) (granting four homeless individuals' and two organizational plaintiffs' broad preliminary relief by enjoining the

City of Los Angeles' unconstitutional policy and practice of seizing and destroying homeless individuals' personal property without adequate pre- and post- deprivation notice); *Justin v. City of Los Angeles*, No. CV00-12352 LGB (AIJx), 2000 WL 1808426, *12 (C.D. Cal. 2000) (Hon. Lourdes G. Baird) (granting broad class-wide relief before class certification to enjoin police from harassing homeless population).

**IV. Conclusion.**

For the foregoing reasons, the Court should issue the preliminary injunction as requested.

DATED: November 20, 2020

**COLLEEN FLYNN**
**PEDRAM ESFANDIARY**
**MONIQUE ALARCON**
**DONALD W. COOK**
Attorneys for Plaintiffs

By_______________________
Donald W. Cook