UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ASTORGA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF LOS ANGELES, et al., <br><br> Defendants. | Case No. CV 20-9805-AB (AGRx) <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

On October 29, 2020, Plaintiffs Christina Astorga, Hugo Padilla, Ryan Michael Dodson, and Kiyoko Dodson (collectively, "Plaintiffs") filed a First Amended Class Action Complaint requesting injunctive relief and alleging Fourth, Fifth, and Fourteenth Amendment violations by Defendants County of Los Angeles, Los Angeles Sheriff's Department, Sheriff Alex Villanueva, and All City Tow Girl, LLC (collectively, "Defendants"). (Dkt. No. 9, ("FAC").)

On December 9, 2020, Plaintiffs filed a Motion for Class Certification ("Motion"). (Dkt. No. 34.) Defendants filed an opposition brief on January 6, 2021 (Dkt. No. 46), and Plaintiffs filed a reply brief on January 15, 2021. (Dkt. No. 53.) The Court held oral arguments on February 26, 2021 and took the matter under submission. Having considered the materials and oral argument submitted by the

1.

parties, and for the reasons indicated below, the Court **DENIES** Plaintiffs' Motion.

## I. BACKGROUND

On September 8, 2020, Plaintiffs Christina Astorga and Hugo Padilla attended a protest in South Los Angeles called "Justice for Dijon Kizzee." (Mot. at 3-4.) Plaintiff Padilla rode his bicycle and livestreamed the event from a Samsung S8 phone. (*Id.*) Both were subsequently arrested and cited for failure to disperse (Astorga) and unlawful assembly (Padilla). Plaintiffs Kiyoko Dodson and Ryan Michael Dodson attended the September 25, 2020 "Justice for Breonna Taylor" protest in West Hollywood. (*Id.* at 4-5.) Plaintiff Ryan Michael Dodson, who was driving his vehicle alongside protestors, was arrested and cited for failure to disperse and reckless driving. (*Id.*) Plaintiff Kiyoko Dodson was not arrested. (*Id.*)

All named Plaintiffs allege seizure and retention of personal property. Plaintiff Christina Astorga's cell phone was confiscated at the protest, and when she was booked at the police station, her belt, shoes, car keys, backpack, and military grade googles were seized. (Astorga Decl. ¶ 18.) On September 22, 2020, Astorga's backpack was returned but she is still missing her military grade goggles and her cell phone. (*Id.* at ¶ 20.) Plaintiff Hugo Padilla alleges that he was knocked from his bicycle and dropped the Samsung S8 phone that he used to livestream the protest. (Padilla Decl. ¶ 8.) At the South Los Angeles police station, he turned over his backpack, bicycle helmet, bicycle, keys, wallet, and iPhone X. (*Id.* ¶¶ 11, 15.) Upon his release, Padilla received his wallet, headphones, and keys; on December 8, 2020, his bicycle was released, but to date, he is still missing two phones, his backpack, and the items contained therein. (*Id.* ¶¶ 13-15.)

After arresting Plaintiff Ryan Michael Dodson, LASD impounded his truck, his work tools, his smart phone, and his wife's Kiyoko Dodson's knapsack. (Ryan Michael Dodson Decl. at ¶¶ 4, 6.) On September 26, 2020, Ryan Michael Dodson was released and given a criminal court appearance date of January 27, 2020. (*Id.* ¶ 8.) On October 30, 2020, the truck and tools were released from LASD custody.

(Dkt. No. 21-1, Supplemental Declaration of Colleen Flynn, Exh. O at 22.) Plaintiff Kiyoko Dodson was not arrested. (Kiyoko Dodson Decl. ¶ 3.) No personal property was seized from her person during the protest, but her property was seized and held by virtue of the items being in her husband's impounded truck. These items included a wallet, car keys, two credit cards, two debit cards, cash, lottery tickets, coins, a Go Pro, and a Canon camera. (*Id.* at ¶¶ 3.A, 6.) On December 3, 2020, LASD informed Kiyoko Dodson that her items had been cleared for release, but she alleges that $500 in cash, the lotto tickets, and coins have not been returned. (*Id.* at ¶ 6.)

This lawsuit, alleging violations of Fourth, Fifth, and Fourteenth Amendment rights, ensued, and Plaintiffs now seek certification of a class of individuals defined as:

> All persons arrested by LASD at protests in Los Angeles County whose items of personal property were seized by LASD, without a warrant or other judicial review, and for whom the LASD refuses to return or release the property to, without justification for continuing to seize and hold the property without judicial review, and without giving notice and opportunity to be heard by the putative class members who seek to reclaim their property.

(Mot. at 9.)

**II. LEGAL STANDARD**

To obtain class certification, Plaintiffs bear the burden of showing they meet each of the four requirements of Federal Rule of Civil Procedure ("Rule") 23(a), together with at least one of the requirements of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011). Rule 23(a) requires that:

1. the class is so large that joinder of all members is impracticable (numerosity);
2. there are one or more questions of law or fact common to the class (commonality);
3. the named parties' claims are typical of the class (typicality); and

3.

        4. the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation).

Fed. R. Civ. P. 23(a)(1-4); *Ellis*, 657 F.3d at 980.

        The party seeking to certify a class bears the burden of demonstrating that each element of Rule 23 is satisfied and must "affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original). The district court then must engage in a "rigorous analysis" to ensure that the prerequisites of Rule 23(a) have been satisfied. *Id.* Evaluating whether the plaintiff has satisfied the Rule 23 requirements "is intimately involved with the merits of the claims." *Ellis*, 657 F.3d at 980. "Frequently th[e] 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 564 U.S. at 351.

        As for Rule 23(b), Plaintiffs seek to certify the proposed class under the third prong, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### III. DISCUSSION

        Defendants oppose class certification, arguing that Plaintiffs lack standing to seek injunctive relief[1] and that they have also failed to satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation.

### A. Numerosity

        The first Rule 23(a) prerequisite is numerosity. Fed. R. Civ. P. 23(a)(1). The class must be "so numerous that joinder of all members is impracticable." *Id.*

---

[1] The Court declines to address the standing issue here and instead denies certifications on the bases of numerosity, commonality, and typicality.

4.

The numerosity requirement does not impose a precise numerical threshold. *Gen. Tel. Co. of the Nw. v. Equal Employ. Opp. Comm'n*, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980). "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *E.E.O.C. v. Kovacevich "5" Farms*, No. 06-165, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007); *see also Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing cases finding classes with fewer than 100 putative members have satisfied numerosity).

Here, Plaintiffs allege there are approximately "dozens of individuals, likely in excess of 100," who qualify as putative class members. (Mot. at 9.) Specifically, Plaintiffs state that at least thirty-seven (37) individuals were arrested on September 6 and 8, 2020 pursuant to information provided in Sheriff Villanueva's press conference about the protests. (Mot. at 6.) Defendants argue that this number is "wholly speculative" and Plaintiffs have not met their burden of showing sufficient numerosity. (Opp. at 19.) Plaintiffs state that there are "*probably* 50 or 60 arrestees who have had their property seized and held by the LASD without any judicial review," (Mot. at 12 (emphasis added)), but Defendants state that seventeen (17) individuals were arrested on September 8, 2020, (Opp. at 17), and only seven (7) individuals were arrested on September 25, 2020, the dates that named Plaintiffs protested. (*Id.* at 18.) The Court finds that even assuming that—at minimum—thirty-seven (37) individuals were arrested in the September protests, Plaintiffs have not provided evidence rising above "mere speculation" that these arrestees similarly had personal property items seized and have yet to receive it back. *Foster v. City of Oakland,* 2007 WL 219765, at *5 (N.D. Cal. Jan. 29, 2007) (noting that "mere speculation as to the number of parties involve is not sufficient to satisfy the numerosity requirement"). As such, Plaintiffs have not met their burden of proof regarding numerosity. *See Miller v. RP On-Site LLC,* 2020 WL 6940936, at *4 (N.D. Cal. Nov. 25, 2020) ("mere conclusory allegations as to the estimated class size are

5.

insufficient for plaintiff's burden of proof").

**B. Commonality**

"[C]ommonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 588 (9th Cir. 2012) (internal brackets and quotation marks omitted). "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Id.* (internal quotation marks omitted). Succinctly, Plaintiff must identify a common question with a common answer that can be proved with common evidence.

Plaintiffs' commonality is premised upon "the constitutional sufficiency of LASD's policy and practice of seizing personal property of protestors without warrants or other form of judicial review; withholding property absent a Fourth Amendment justification to do so; and failing to provide constitutionally-required notice and opportunity to contest the continued retention of that property." (Mot. at 14; *see also* Mot. at 15 (listing common questions).) In other words, the common legal questions here involves a *Monell* theory of liability. In opposition, Defendants argue that the distinctions between the named Plaintiffs destroy all commonality. The Court agrees with Defendants.

Plaintiffs Astorga and Padilla were arrested at the "Justice for Dijon Kizzee" protest on September 8, 2020 near the intersection of Imperial Highway and Normandie Avenue. (Mot. at 3-4.) Approximately fifteen miles away and two weeks later, Plaintiffs Kiyoko Dodson and Ryan Michael Dodson attended the September 25, 2020 "Justice for Breonna Taylor" protest in West Hollywood. (*Id*. at 4-5.) Plaintiffs Astorga, Padilla, and Ryan Michael Dodson were arrested; Plaintiff Kiyoko Dodson was not. (*Id.*) Presumably, the officers involved in these arrests were from the local LASD offices, and Plaintiff has not shown the commonality between the two separate

6.

locations and protests, other than generalized statements about arrests. Plaintiff Ryan Michael Dodson drove a vehicle during the protest, Plaintiff Kiyoko Dodson walked, Plaintiff Padilla rode a bicycle and filmed the protest, and Plaintiff Astorga's status is unclear, but presumably she was on foot. (*Id*. at 3-4.) Plaintiff Ryan Michael Dodson was cited for failure to disperse and reckless driving, Plaintiff Astorga was cited for failure to disperse, Plaintiff Kiyoko Dodson was not cited at all, and Plaintiff Padilla was provided a notice to appear for unlawful assembly. (*Id.*) And each of these individuals also had items seized, some of which have been returned, some of which have not.

The Court finds that lack of commonality between the factual circumstances of class members will likely impact the commonality and resolution of all legal questions thus undermining the "common contention" and common evidence that "must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). Amongst the proposed class, Plaintiffs include: (1) individuals who have been arrested, (2) individuals who have not been arrested, (3) individuals who biked during the protest, (4) individuals who walked during the protest, (5) individuals who drove during the protest, and (5) individuals who were cited and/or received notices to appear for varying types of violations, including failure to disperse, reckless driving, and unlawful assembly, (6) individuals who have had *some* items returned, *no* items returned, or *all* items returned.

These individualized inquiries into the circumstances surrounding the seizure of property will have dozens if not hundreds of potential distinctions. For instance, an individual who drove during a protest could be cited for different violations than an individual who was riding a bicycle and filming during a protest. The citations will likely arise from a unique set of factual circumstances that are wholly uncommon and distinct from another individual's circumstances. Similarly, the constitutionality of

7.

personal property seizure and retention must be assessed in relation to the individual's actions at the time of the seizure, whether lawful or unlawful, the relevance and evidentiary of value the items seized, and, if any, judicial review obtained for these items. These "[d]issimilarities within the proposed class are what have the potential to impeded the generation of common answers." *Id.* at 350 (internal quotations omitted). As such, the Court finds that Plaintiffs have failed to establish commonality for the purposes of class certification.

**C. Typicality**

Typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1019 (9th Cir. 2011) (internal quotation marks omitted), *abrogated on other grounds by Comcast Corp. v. Behrend,* 133 S. Ct. 1426 (2013).

The typicality requirement "looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claims arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id. at* 1019 (internal citation and quotation marks omitted). Thus, the Rule 23(a)(3) typicality inquiry overlaps with the Rule 23(a)(4) adequacy requirement because "both look to the potential for conflicts in the class." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 611 (1997) (internal citations omitted). "The requirement of typical claims, while somewhat ill defined, seems intended to reinforce the adequacy requirement by ensuring that the named plaintiffs' interests are sufficiently aligned with those of class members to assure that they not only can but will press each such claim to a full and equal extent." *Wofford v. Safeway Stores, Inc.*, 78 F.R.D. 460, 475 (N.D. Cal. 1978).

Defendants assert that Plaintiff Kiyoko Dodson is an improper class representative because "she was never arrested or booked, and no personal property in

her possession was ever taken into custody." (Opp. at 22.) Defendants also argue that Plaintiffs and proposed class members were not subject to a "common set of conditions" because Plaintiffs assert that the property was seized and retained "absent a justification to continue doing so." (*Id.* (citing Mot. at 18:15-16).) Plaintiffs counter by arguing that the Plaintiffs satisfy typicality because they suffered the same injury because of Defendants' conduct—namely, they lost possession of their personal property items without judicial review. The Court begins by reviewing each of the named Plaintiffs actions involving the protests and the status of any outstanding personal property items.

### i. Christina Astorga

Christina Astorga attended the September 8, 2020 protest and was arrested for failure to disperse. (Dkt. No. 9, FAC ¶ 9.) She alleges that during the arrest, her phone was confiscated, and that when she was booked, she turned in her belt, shoes, car keys, backpack, and military grade googles. (Astorga Decl. ¶ 18.) On September 22, 2020, her backpack was returned but she is still missing her military grade goggles and her cell phone. (*Id.* at ¶ 20.)

### ii. Hugo Padilla

While attending the September 8, 2020 protest, Hugo Padilla filmed the events while riding on his bicycle and was ultimately arrested for failure to disperse. (FAC ¶ 17.) Padilla alleges that when he was knocked from his bicycle, he dropped the Samsung S8 phone that he used to livestream the protest. (Padilla Decl. ¶ 8.) He was subsequently searched at the South Los Angeles Station and his backpack, bicycle helmet, keys, wallet, and iPhone X were taken. (*Id.* ¶¶ 11, 15.) Upon his release, Padilla received his wallet, headphones, and keys; on December 8, 2020, his bicycle was released, but to date, he is still missing two phones, his backpack, and the items contained therein. (*Id.* ¶¶ 13-15.)

///

///

### iii. Ryan Michael Dodson

Ryan Michael Dodson attended the September 25, 2020 protest in West Hollywood where he drove his truck alongside other protestors. (Ryan Michael Dodson Decl. ¶ 2.) He was arrested and booked at the LASD's West Hollywood station for unlawful assembly and reckless driving. (*Id.* ¶¶ 7, 8.) LASD impounded Ryan Michael Dodson's truck along with his work tools, his wife's knapsack, and his smart phone. (*Id.* at ¶¶ 4, 6.) On September 26, 2020, Ryan Michael Dodson was released and given a criminal court appearance date of January 27, 2020. (*Id.* ¶ 8.) On October 30, 2020, the truck and the lock box was released from LASD custody. (Dkt. No. 21-1, Supplemental Declaration of Colleen Flynn, Exh. O at 22.)

### iv. Kiyoko Dodson

Kiyoko Dodson attended the September 25, 2020 protest with her husband, Ryan Michael Dodson. She walked alongside other protestors and was not arrested. (Kiyoko Dodson Decl. ¶ 3.) No personal property was seized from her person during the protest, but her items were seized and held by virtue of the items being in her husband's truck which was seized. These items include a wallet, car keys, two credit cards, two debit cards, cash, lottery tickets, coins, a Go Pro, and a Canon camera. (*Id.* at ¶¶ 3.A, 6.) On December 3, 2020, LASD informed Kiyoko Dodson that her items had been cleared for release but she alleges that $500 in cash, the lottery tickets, and coins have not been returned. (*Id.* at ¶ 6.)

As the Supreme Court has recognized, commonality and typicality requirements occasionally merge. *See Wal-Mart,* 564 U.S. at 349, n.5. And, as discussed previously, Plaintiffs have not demonstrated commonality. As to typicality, although the named plaintiffs' injuries need not be "identical with those of other class members" but class members must have "injuries similar to those of the named plaintiffs and that those injuries result from the same, injurious course of conduct." *Armstrong v. Davis,* 275 F.3d 849, 868-69 (9th Cir. 2001). Here, as discussed *supra* Section III.B, all alleged injuries arise from factually distinct conduct. This can be

seen in the modes of transportation, the actions of the plaintiffs immediately preceding and subsequent to arrest, the cited to legal violations (or lack thereof), the circumstances surrounding each protest, and the manner in which property was or was not seized and returned. Because the injuries here have not resulted from the "same injurious course of conduct," the Court finds that Plaintiffs have failed to show typicality.

### D. Adequacy of Representation

In order to satisfy Rule 23(a), the representative parties must demonstrate that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Defendants assert that Plaintiff Kiyoko Dodson cannot adequately represent the class because she was never arrested or "subjected to the challenged procedures upon which the class-wide injunctive relief is sought." (Opp. at 23.) However, Defendants do not provide any authority nor otherwise explain how Plaintiff Kiyoko Dodson has "conflicts of interest with other class members" or that she will not act vigorously on behalf of the class. Indeed, Plaintiff Kiyoko Dodson still lacks personal property that was seized by LASD during the protest which would make her "subject[] to the challenged procedures." (*See* Kiyoko Decl., ¶ 6, cited to by Defendants in Opp. at 5.) Because Plaintiffs and their counsel have explained there are no conflicts of interests and that they will prosecute this action vigorously, the Court finds that adequacy of representation has sufficiently been demonstrated.

### IV. CONCLUSION

The Court finds that class certification is inappropriate because Plaintiffs have not established the degree of numerosity and commonality and typicality required by Rule 23(a). The Court therefore **DENIES** Plaintiffs' Motion for Class Certification

11.

without Prejudice.  Plaintiffs may file an amended Motion for Class Certification within thirty (30) days from the date of this Order.

**IT IS SO ORDERED.**

Dated: March 17, 2021

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE