**COLLEEN FLYNN**, CSB 234281
Attorney at Law
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
E-mail: cflynnlaw@yahoo.com

**PEDRAM ESFANDIARY**, CSB 312569        **DONALD W. COOK**, CSB 116666
**MONIQUE ALARCON**, CSB 311560            Attorney at Law
Baum Hedlund, Aristel, & Goldman, P.C.    3435 Wilshire Blvd., Ste. 2910
10940 Wilshire Blvd., 17th Floor          Los Angeles, CA 90010
Los Angeles, CA 90024                     (213) 252-9444 / (213) 252-0091 facsimile
(310) 207-3233 / (310) 820-7444 facsimile  Email: manncooklaw@gmail.com
Email: pesfandiary@baumhedlundlaw.com
Email: malarcon@baumhedlundlaw.com

Attorneys for Plaintiffs

# United States District Court

# Central District of California

| | |
|---|---|
| CHRISTINA ASTORGA, an individual, on behalf of herself and as class representative; HUGO PADILLA, an individual, on behalf of himself and class representative; RYAN MICHAEL DODSON, an individual, and KIYOKO DODSON, an individual, on behalf of themselves and as class representatives,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, a municipal corporation; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; SHERIFF ALEX VILLANUEVA, an individual; and Does 1 through 10, all sued in their individual capacities,<br><br>Defendants. | Case No. 2:20-cv-9805 AB (AGRx)<br><br>**PLAINTIFFS' *AMENDED* MOTION FOR CLASS CERTIFICATION PURSUANT TO FRCvP 23(b)(2); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DONALD W. COOK AND COLLEEN FLYNN**<br><br>Date: 7/23/21<br>Time: 10:00 A.M.<br>Ctrm: 7B (1st St.) |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Friday, July 23, 2021, at 10:00 a.m. or as soon thereafter as counsel may be heard, in the Courtroom of the Hon. André Birotte Jr.,

00145403.WPD

located at 350 West First Street, Los Angeles, California, Plaintiffs will move the Court to certify this case as a class action pursuant to F.R.Civ.P. 23(b)(2), with the class defined as follows:

> All persons arrested in 2020 by LASD at protests on misdemeanor charges of Cal. Pen. Code §§ 407, 408, 409 [unlawful assembly and participation therein; failure to disperse] and whose items of personal property the LASD seized without a warrant or other judicial review, property the LASD continues to withhold from its owners even though (a) no owner has been criminally charged, (b) the owner the owner is not in LASD custody, (c) the LASD has *not* obtained judicial review or authorization to justify the ongoing seizures, and (d) the LASD has *not* provided any notice and opportunity to be heard by the putative class members who seek to reclaim their property.

This motion will be pursuant to F.R.Cv.P. 23(c) and the Court's Orders filed 3/17/21 (ECF 73) and 5/17/21 (ECF 102). The motion will be based on the supporting memorandum of points and authorities, the attached Declarations of Donald W. Cook and Colleen Flynn, the motion for class certification filed 12/9/20 (ECF 34), the declarations filed 12/9/20 (ECF 34-1 through 34-6), the Declaration of Colleen Flynn filed 1/15/21 (ECF 54), Fourth Supplemental Declaration of Colleen Flynn filed 1/27/21 (ECF 60), and the records and files of this case.

DATED: June 1, 2021

**COLLEEN FLYNN**
**PEDRAM ESFANDIARY**
**MONIQUE ALARCON**
**DONALD W. COOK**
Attorneys for Plaintiffs

By_____
Donald W. Cook

00145403.WPD

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  Overview.

As the Court permitted (ECF 73 @ 12:1-2), this is Plaintiffs' amended motion for class certification. As such, this amended motion focuses on the three issues the Court found in its March 17, 2021 Order that warranted denial of the earlier motion (ECF 34): numerosity, commonality and typicality. ECF 73 @ 11:26-28. Hence, except as necessary Plaintiffs will not repeat the other elements for class certification and already addressed in the earlier motion.

### II.  Case Background.

Since the Court is familiar with the facts giving rise to this lawsuit and the procedural history, this summary is brief.

Plaintiffs are four individuals involved in recent protests (all in 2020) with three arrested on failure to disperse / unlawful assembly misdemeanor charges. Two (Christina Astorga and Hugo Padilla) were arrested at a September 8, 2020 protest in South Los Angeles; Ryan Dodson was arrested at a September 25, 2020 protest in West Hollywood. (Although a participant in the September 25 protest, Plaintiff Kiyoko Dodson was never arrested; defendants though seized numerous property items belonging to Ms. Dodson, items the LASD seized when Sheriff's deputies arrested her husband Ryan and impounded their truck.) The arresting agency for the arrested Plaintiffs and all putative class members was the Los Angeles Sheriff's Department ("LASD"). Furthermore, all arrests and property seizures occurred at protests demonstrating against unjustified police violence and in particular, recent LASD shootings that killed unarmed civilians under circumstances suggesting unjustified homicides. Declaration of Colleen Flynn, attached hereto; Second Amended Complaint filed 5/24/21 (ECF 105) ¶¶15-61.

Plaintiffs sue under 42 U.S.C. § 1983, seeking injunctive relief for themselves and the F.R.Cv.P. 23(b)(2) class which commands defendants return to Plaintiffs and class members, their personal property items defendants seized without a warrant and which defendants continue to withhold without seeking judicial review of any type. Second

Amended Complaint ¶¶72-84. (Plaintiffs Astorga, Padilla and Ryan Dodson also brings individual damages claims based on false arrest and excessive force. None of those claims are germane to the present motion.)

On December 9, 2020, Plaintiffs filed their original motion for certification of a Rule 23(b)(2) class. The Court denied that motion but without prejudice to an amended motion. ECF 73 (filed 3/17/21). The Court found the earlier motion lacking on three grounds:

1. Plaintiffs had not shown a sufficient number of putative class members who actually had their property seized and not returned. ECF 73 @ 5:20-27;

2. Plaintiffs had "not shown the commonality between the two separate locations and protests, other than generalized statements about arrests." ECF 73 @ 6:27-7:1; and

3. Similar to the discussion on lack of commonality, Plaintiffs had not shown that the ongoing property deprivations suffered by putative class members were " 'similar to those of the named plaintiffs and that those injuries result[ed] from the same, injurious course of conduct.' " ECF 73 @ 10:23-26 (*quoting Armstrong v. Davis*, 275 F.3d 849, 868-69 (9th Cir. 2001)).

As explained below, the present motion makes the requisite showings.

**III.  Numerosity.**

There were 42 persons LASD arrested in demonstrations occurring in 2020 in which participants were protesting unjustified homicides by law enforcement officers. The arrest charges were Cal. Pen. Code § 407, 408 and/or 409. From those arrestees, LASD seized 38 cell phones and have returned three; hence, the present putative class size is about 35 (assuming one cell phone per arrestee). Declaration of Donald W. Cook attached hereto, ¶2 and **Exhibit A** thereto. Furthermore, even if limited to just the September 8, 2020 South LA protest, LASD arrested 17 persons on Cal. Pen. Code § 407, 408 and/or 409 charges and seized at least 16 cell phones. Cook decl., ¶3. These numbers suffice to establish numerosity. ECF 73 @ 4:24-5:8; *e.g., International Molders' & Allied Workers' Local 164 v. Nelson*, 102 F.R.D. 457, 461 (N.D. Cal. 1983) (Forty or fewer class members

have regularly been found sufficient.).

## IV. Commonality.

To address the Court's commonality concerns, Plaintiffs have revised their class definition as follows:

> All persons arrested in 2020 by LASD at protests on misdemeanor charges of Cal. Pen. Code §§ 407, 408, 409 [unlawful assembly and participation therein; failure to disperse] and whose items of personal property the LASD seized without a warrant or other judicial review, property the LASD continues to withhold from its owners even though (a) no owner has been criminally charged, (b) the owner is not in LASD custody, (c) the LASD has *not* obtained judicial review or authorization to justify the ongoing seizures, and (d) the LASD has *not* provided any notice and opportunity to be heard by the putative class members who seek to reclaim their property.

In other words, all members of the Rule 23(b)(2) class had their property seized at mass arrest events wherein class members were arrested on the same or similar misdemeanor charges (Cal. Pen. Code §§ 407, 408, 409); were released within a day or so; are not in LASD custody; yet the LASD continues to withhold class members' property without ever having obtained a warrant or other judicial review *and* without providing any class member notice and opportunity to recover their property.

As redefined, the proposed class requires the *same* answers to the *same* questions, answers that resolve the claims of both Plaintiffs and class members:

1. Have defendants violated the Fourth Amendment by continuing to withhold the properties the LASD seized without warrants and the properties' owners have not been charged with any crime?

2. Have defendants violated due process by refusing to provide *any* notice and opportunity to class members to enable them to reclaim their properties?

3. Does defendants' claim of an "ongoing criminal investigation," even if factually true (it probably is not, Cook decl. ¶5) excuse compliance with Fourth Amendment

00145403.WPD

and due process guarantees?

Plaintiffs submit it is unnecessary that all class members be arrested on the exact same charges, and/or were arrested at the same event. Indeed, it is not even necessary that a class member be arrested (though virtually all were). Because for this class the central defining element is the ongoing seizures of property without warrant or judicial review, along with the absence of any notice and opportunity for class members to reclaim their properties even though no class member has been charged. Thus, though LASD arrested class members at different events and on different dates, all class members have the same issues requiring the same answers:

**Fourth Amendment**: *Sandoval v. County of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018); *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017); *Krimstock v. Kelly*, 306 F.3d 40, 68-69 (2nd Cir. 2002);

**Due Process**: *United States v. James Daniel Good Real Property*, 510 U.S. 43, 49-55 (1993); *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1342 (9th Cir. 1977); *Krimstock v. Kelly*, 464 F.3d 246 (2nd Cir. 2006).

Like the Plaintiffs, all class members had their property seized when LASD made mass arrests at demonstrations protesting unjustified police violence and killings. Flynn decl. Defendants also now *admit* they have *not* obtained warrant or other judicial review to justify the ongoing property seizures of properties belonging to Plaintiffs *and* class members (Cook decl. ¶4), thereby further insuring the same answers to the same questions.

## V.  Plaintiffs Have Shown Typicality.

Like the class members, Plaintiffs had their property seized by the LASD without warrants during the course of mass arrests at events in which the participants were protesting unjustified police violence. That is, "the same . . . practice[] or course of conduct" that resulted in the ongoing seizures of Plaintiffs' property, also "forms the basis of the class claims, and is based upon the same legal theory." Therefore, whatever

"varying factual differences between the claims or defenses of the class and the class representative[s]" exists, those differences do "not render the named the name representative[s]' claim[s] atypical." *Jordan v. County of Los Angeles*, 669 F.2d 1311, 321 (9th Cir.), *vacated on oth. grds.*, 459 U.S. 810 (1982).

## VI.  Conclusion.

The Court should grant this amended motion and certify a Rule 23(b)(2) class for injunctive relief.

DATED: June 1, 2021

**COLLEEN FLYNN**
**PEDRAM ESFANDIARY**
**MONIQUE ALARCON**
**DONALD W. COOK**
Attorneys for Plaintiffs

By _____
Donald W. Cook

00145403.WPD

## DECLARATION OF DONALD W. COOK

I, DONALD W. COOK, declare:

1.  I am one of the attorneys representing Plaintiffs.

2.  Following the Court's March 17, 2021 Order denying class certification, pursuant to a discovery order (ECF 82) defendants served interrogatory responses in which they stated the numbers of persons arrested at the 2020 demonstrations protesting police violence and possibly unjustified homicides by LASD deputies. The interrogatory responses are **Exhibit A**. The responses state that of the 42 persons arrested at the May 30, June 3 and 21, and September 5, 6, 7, 8, 9 and 11 protests on charges of Cal. Pen. Code §§ 407, 408 and/or 409, (a) *none* were ever charged and (b) 38 cell phones were seized of which only three have been returned to their owners. *See* **Exhibit A**, Responses to Interrogatories 1 through 4.

3.  Regarding just one of these protest events, the September 8, 2020 South LA protest at which Plaintiffs Christina Astorga and Hugo Padilla were arrested, I am informed that at least 17 persons were arrested, and 16 cell phones were seized from those arrestees.

4.  On February 4, 2021, Plaintiffs served a Rule 34 request for production requesting "All DOCUMENTS that any Defendant contends fall within the scope of F.R.Cv.Pro. 26(a)(1)(A)(ii) [Request no. 21]." In response, defendants did *not* produce *or* identity *any* document that would support a claim that defendants have ever sought judicial review of any type to justify the ongoing seizures of arrestees' property items. Additionally, on March 26, 2021, Plaintiffs deposed LASD Det. Joshua Short regarding the property items LASD seized at the September 8, 2020 South LA protest. Det. Short testified he was unaware of any warrant or other judicial authorization for the ongoing seizures of the property the LASD seized. 3/26/21 Short depo. 48:15-25, 49:25-50:15,

50:22-24, 84:18-25 (**Exhibit B**).

     5.   Defendants' claim there is an ongoing criminal investigation is untrue (and probably has never been true). In previously claiming that there was an ongoing criminal investigation concerning the South LA protests, defendants relied on a November 20, 2020 declaration from LASD Det. Joshua Short in which Det. Short made that assertion. See ECF 26 filed 11/27/20, at page 12 lines 18-20. At his March 26, 2021 deposition (about four months after his 11/20/20 declaration) Det. Short testified he had no knowledge of an ongoing investigation:

Q: Have you learned from any of your fellow deputies  whether any ongoing criminal investigations have resulted from the September 8, 2020, protests?

A: No.

Q: Do you know if Major Crime opened an investigation after you submitted your report to them?

A: I do not.

Q: Do you know whether Major Crime is actually doing an investigation about the September 8, 2020, protest?

A: I do not.

            *   *   *   *

Q: What did you mean here when you said the property was being retained as part of an ongoing investigation?

MR. SAKAI: Objection. To the extent it calls for attorney-client communications, I'll instruct him not to respond.

THE WITNESS: Just from what my attorney told me.

BY MS. ALARCON:

Q: I'm going to direct you up to Line 7 and 8 [of Det. Short's 11/20/20

declaration]. It says you were personally aware of the facts set forth in the declaration and competent -- personally aware of the facts set forth below and competent to give this declaration. I don't want to ask you about what your attorney told you, but in Lines 18 to 25 do you have -- absent what your attorneys told you, do you have any independent knowledge of what you testified to here regarding ongoing criminal investigation?

MR. SAKAI: You're asking whether he has information other than what's covered by the attorney-client privilege that covers the cited sections of the declaration?

MS. ALARCON: Correct.

THE WITNESS: Other than what my attorney has told me, I have no knowledge of any investigation going on by Major Crimes.

3/26/21 Short depo. @ 30:23-31:7, 32:23-33:19 (**Exhibit B** hereto).

I declare under penalty of perjury that the foregoing is true and correct. Executed June 1, 2021, at Los Angeles, California.

_____
Donald W. Cook

00145403.WPD

1

## DECLARATION OF COLLEEN FLYNN

2

I, COLLEEN FLYNN, declare:

3

1.  I am one of the attorneys representing Plaintiffs. I also have knowledge about

4

the anti-police violence protests that occurred on June 3, 2020 (Grand Park); June 21,

5

2020 (Gardena / Compton); September 5, 6, 7, 8, 9 and 11 (South Los Angeles); and

6

September 25, 2020 (West Hollywood). I acquired that knowledge by representing many

7

persons arrested at the protests; interviewing others who attended the protests; appearing

8

at court on arrestees' arraignment dates; and contacting LASD station personnel on

9

various dates to assist persons who sought to reclaim their property items seized when

10

they were arrested.

11

12

2.  At these protests all persons arrested were arrested by LASD deputies. Virtually

13

all were arrested on misdemeanor charges, a few on Cal. Pen. Code § 148 and most on

14

Cal. Pen. Code §§ 407, 408 or 409 charges. I am informed that no charges were filed

15

against any. When people sought to reclaim their cell phones (sometimes before and

16

sometimes after their arraignment dates) with a few exceptions LASD personnel were

17

either unavailable or if available, refused to return the phones.

18

19

I declare under penalty of perjury that the foregoing is true and correct. Executed

20

June 1, 2021, at Los Angeles, California.

21

22

_Colleen Flynn_

23

Colleen Flynn

24

25

26

27

28

-11-

PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JIN S. CHOI, State Bar No. 180270
jchoi@lbaclaw.com
RAYMOND W. SAKAI, State Bar No. 193507
rsakai@lbaclaw.com
DAISY SANCHEZ, State Bar No. 334090
dsanchez@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California  91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendants
County of Los Angeles, Los Angeles County Sheriff's Department and
Sheriff Alex Villanueva

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ASTORGA, etc., et al., | Case No. 2:20-cv-09805-AB-AGR |
| Plaintiffs, | Honorable André Birotte Jr. |
| vs. | **DEFENDANT LOS ANGELES COUNTY SHERIFF'S DEPARTMENT'S RESPONSES TO SPECIAL INTERROGATORIES PROPOUNDED BY PLAINTIFF CHRISTINA ASTORGA, SET ONE** |
| COUNTY OF LOS ANGELES, etc., et al., | |
| Defendants. | |

PROPOUNDING PARTY:      Plaintiff Christina Astorga

RESPONDING PARTY:        Defendant Los Angeles County Sheriff's

Department

SET NO.:                          ONE

///

**Interrogaory Responses**

1

**EXHIBIT A**

1    Pursuant to Federal Rules of Civil Procedure Rule 33, Defendant County of

2  Los Angeles ("Defendant" or "the County") hereby provides responses to

3  Plaintiff Christina Astorga's ("Plaintiff") Special Interrogatories, Set One.

4

5                        **<u>INTRODUCTORY STATEMENT</u>**

6         It should be noted that Defendant has not completed its investigation of the

7  facts relating to the case, has not fully completed discovery, and has not

8  completed preparation for trial.  All of the responses contained herein are based

9  only upon such information and documents as are presently available as

10  specifically known to this Defendant, and to disclose only those contentions

11  which presently occur to this Defendant.  It is anticipated that further discovery,

12  independent investigation, legal research and analysis will supply additional facts,

13  add meaning to known facts, as well as to establish entirely new factual

14  conclusions and legal conclusions, all of which may lead to substantial additions

15  to, changes in, and variations from the contentions set forth herein.

16         In responding to these interrogatories, you have been furnished such

17  information as is presently available.  This may include hearsay and other forms of

18  evidence which are neither reliable nor admissible in evidence.  Each answer is

19  subject to all appropriate objections (including, but not limited to, objections

20  concerning competency, relevancy, materiality, propriety, privilege and

21  admissibility) which would require the exclusion of any statement contained herein

22  if the interrogatory were asked of, or any statement contained herein were made by,

23  a witness present and testifying in court.  All such objections and grounds are

24  preserved and may be interposed at the time of trial.

25         Except for explicit facts admitted herein, no admissions of any nature

26  whatsoever are implied or should be inferred.  The fact that any interrogatory herein

27  has been answered, should not be taken as an admission or acceptance of the

28  existence of any facts set forth or assumed by such an interrogatory, or that such

**Interrogaory Responses**                    2
**EXHIBIT A**

answer constitutes admissible or reliable evidence.

The following responses are given without any prejudice to Defendant's rights to produce any subsequently discovered fact or facts which this Defendant may later recall.  Defendant, accordingly, reserves the right to change any and all responses herein as additional facts are ascertained, analysis is made, legal research is completed and contentions are made.

The responses contained herein are made in a good faith effort to supply as much factual information and as much specification of legal contentions as is presently known and in no way should be to the prejudice of said Defendant in relation to further discovery, research or analysis.

## SPECIAL INTERROGATORIES AND RESPONSES

**SPECIAL INTERROGATORY NO. 1:**

The number of persons the Los Angeles Sheriff's Department ("LASD") arrested on May 30, 2020 (Pan Pacific Park); June 3, 2020 (Grand Park); June 21, 2020 (Gardena / Compton); September 5, 6, 7, 8, 9 and 11 (South Los Angeles); and September 25, 2020 (West Hollywood), between the hours of 6 p.m. and 12 midnight, wherein an arrest charge included at least one of the following: Cal. Penal Code §§ 407, 408, 409.

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

Defendant objects to this interrogatory as compound, overbroad and containing improper subparts. This interrogatory further seeks irrelevant and immaterial information which is not proportional to the needs of the case nor likely to lead to the discovery of admissible evidence.  Defendant objects to this interrogatory as vague and ambiguous as to geographic location and therefore calls for speculation.  To the extent it seeks information outside of the scope of this litigation, Defendant objects as overbroad and unduly burdensome. Without waiving said objections, and subject thereto, Defendant responds as

follows:  42.

**SPECIAL INTERROGATORY NO. 2:**

Of the persons arrested and referenced in interrogatory one above, the number against whom a criminal complaint was filed by the Los Angeles County District Attorney's office charging one or more violations of Cal. Penal Code §§ 148, 407, 408, 409.

**RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

Defendant objects to this interrogatory as overbroad to the extent it seeks to extend the scope of this request to include information that is not in the LASD's possession, custody or control.  Defendant further objects to this interrogatory as it seeks public records that are equally available to the propounding party. Defendant objects to this interrogatory as compound, overbroad and containing improper subparts. This interrogatory further seeks irrelevant and immaterial information which is not proportional to the needs of the case nor likely to lead to the discovery of admissible evidence.

As this interrogatory refers to No. 1, Defendant objects to this interrogatory as vague and ambiguous as to geographic location and therefore calls for speculation.  To the extent it seeks information outside of the scope of this litigation, Defendant objects as overbroad and unduly burdensome.

Without waiving said objections, and subject thereto, Defendant responds as follows:  Defendant does not file criminal complaints.  It is informed and believes that the Los Angeles County District Attorney's office filed no criminal complaints.

**SPECIAL INTERROGATORY NO. 3:**

Of the persons arrested and referenced in interrogatory one above, the number from whom LASD seized cell or smart phones, and the number of persons to whom the LASD has returned or released their cell or smart phones.

**RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

Defendant objects to this interrogatory as compound, overbroad and containing improper subparts. This interrogatory further seeks irrelevant and immaterial information which is not proportional to the needs of the case nor likely to lead to the discovery of admissible evidence. Defendant objects to this request to the extent it seeks disclosure of information covered by the attorney-client, attorney work product, official information and deliberative process privileges.

As this interrogatory refers to No. 1, Defendant objects to this interrogatory as vague and ambiguous as to geographic location and therefore calls for speculation.  To the extent it seeks information outside of the scope of this litigation, Defendant objects as overbroad and unduly burdensome.

Further, Defendant objects to this interrogatory to the extent it improperly seeks confidential and privileged information related to an ongoing criminal investigation, which is also subject to the official information privilege.  Plaintiffs have ignored the District Court's Order denying their request for this information and made subsequent numerous attempts to improperly access this information in an attempt to interfere with the ongoing criminal investigation.  Disclosure of the information sought is barred by the Court's Orders: (1) the Court's December 30, 2020 Order requiring Defendants to file "an in-camera submission regarding the continued seizure of Plaintiffs' items as detailed in the most recent briefing—including the status of any relevant investigations and any efforts by law enforcement to obtain further information from the remaining items seized" (Dkt No. 45); and (2) the Court's February 18, 2021 Order denying Plaintiffs' *ex parte* application for an order compelling Defendants to produce to Plaintiffs this same *in camera* submission, wherein the Court rejected Plaintiffs' assertion that the *in camera* submission must be made a "public record" and held, "Information pertaining to ongoing criminal investigations and materials related to criminal proceedings has 'traditionally been kept secret for important policy reasons.'"

(Dkt No. 65 at p. 1(quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).)  The District Court further explained that it had "determined that an in camera submission was necessary to protect the confidentiality of ongoing investigations. . . . ***The Court did not order in camera production of any information that would otherwise be subject to disclosure.***" (Dkt No. 65 at p. 2 (emphasis added)).

Without waiving the foregoing objections, and subject thereto, Defendant responds as follows: Approximately 38 cellphones were retrieved from arrestees. Three cellphones were returned.

**SPECIAL INTERROGATORY NO. 4:**

On May 30, 2020 (Pan Pacific Park); June 3, 2020 (Grand Park); June 21, 2020 (Gardena / Compton); September 5, 6, 7, 8, 9 and 11 (South Los Angeles); and September 25, 2020 (West Hollywood), between the hours of 6 p.m. and 12 midnight, the number of cell or smart phones LASD seized in connection with the arrests of persons on those dates and those locations on least one of the following charges: Cal. Penal Code §§ 407, 408, 409, including cell or smart phones not identified as belonging to a particular person or arrestee.

**RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

This interrogatory in unintelligible.  Defendant objects to this interrogatory as compound, vague and ambiguous, overbroad and containing improper subparts. This interrogatory seeks irrelevant and immaterial information which is not likely to lead to the discovery of admissible evidence.  For example, any cellphone not identified as belonging to a particular person or arrestee is not related to the subject matter of this litigation nor proportional to the needs of the case.

As this interrogatory refers to No. 1, Defendant objects to this interrogatory as vague and ambiguous as to geographic location and therefore calls for speculation.  To the extent it seeks information outside of the scope of this

litigation, Defendant objects as overbroad and unduly burdensome.

Further Defendant objects to this interrogatory to the extent it seeks information covered by the attorney-client and attorney work product privileges, the official information and deliberative process privileges.

This interrogatory improperly seeks confidential and privileged information related to an ongoing criminal investigation, which is also subject to the official information privilege.  Plaintiffs have ignored the District Court's Order denying their request for this information and made subsequent numerous attempts to improperly access this information in an attempt to interfere with the ongoing criminal investigation.  Disclosure of the information sought is barred by the Court's Orders: (1) the Court's December 30, 2020 Order requiring Defendants to file "an in-camera submission regarding the continued seizure of Plaintiffs' items as detailed in the most recent briefing—including the status of any relevant investigations and any efforts by law enforcement to obtain further information from the remaining items seized" (Dkt No. 45); and (2) the Court's February 18, 2021 Order denying Plaintiffs' *ex parte* application for an order compelling Defendants to produce to Plaintiffs this same *in camera* submission, wherein the Court rejected Plaintiffs' assertion that the *in camera* submission must be made a "public record" and held, "Information pertaining to ongoing criminal investigations and materials related to criminal proceedings has 'traditionally been kept secret for important policy reasons.'" (Dkt No. 65 at p. 1(quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).)  The District Court further explained that it had "determined that an in camera submission was necessary to protect the confidentiality of ongoing investigations. . . . ***The Court did not order in camera production of any information that would otherwise be subject to disclosure.***" (Dkt No. 65 at p. 2 (emphasis added)).

Without waiving the foregoing objections, and subject thereto, Defendant

1 | responds as follows: approximately 38 cellphones.

2

3

4 | Dated:  April 9, 2021          LAWRENCE BEACH ALLEN & CHOI, PC

5

6

7 |                               By _____ /s/ Raymond W. Sakai_____

8 |                                       Raymond W. Sakai
                                          Attorneys for Defendants

9 |                                       County of Los Angeles, Los Angeles
                                          County Sheriff's Department and

10 |                                      Sheriff Alex Villanueva

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Interrogaory Responses**                                          **EXHIBIT A**

**<u>VERIFICATION</u>**

1
2   STATE OF CALIFORNIA, COUNTY OF LOS ANGELES.

3       I have read **DEFENDANT LOS ANGELES COUNTY SHERIFF'S DEPARTMENT RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE,** and know its contents.

4

5  ___       I am a party to this action.  The matters stated therein are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

6

7  _X_       I am an agent of the <u>Los Angeles County Sheriff's Department</u>, a party to this action, and am authorized to make this verification for that reason. I have read the foregoing document and know its contents.  The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true.

8

9

10

11  ____      I am one of the attorneys for _____, a party to this action.  Such party is absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of this party for that reason.  I have read the foregoing document and know its contents.  I am informed and believe and on that ground allege that the matters stated in it are true.

12

13

14

15     Executed on 04/09/21____, at Los Angeles, California.

16

17     I declare under penalty of perjury under the laws of the State of California, United States of America, that the foregoing is true and correct.

18

19                                              _____

20                               Deputy B. Perez-Argueta

21

22

23

24

25

26

27

28

9

**Interrogaory Responses**                        **EXHIBIT A**

Document Ref: 3N5GJ-MJACR-UWBA8-LJR7C                                           

Detective Joshua Short

```
 1               IN THE UNITED STATES DISTRICT COURT

 2          IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3                        WESTERN DIVISION

 4                             -o0o-

 5   CHRISTINA ASTORGA an        )

     individual, on behalf of   )

 6   herself and as class        )

     representative, et al.,     )

 7                               )

          Plaintiffs,            )

 8                               )

          vs.                    )No.: 2:20-cv-09805-AB-AGR

 9                               )

     COUNTY OF LOS ANGELES, a    )

10   municipal corporation; LOS  )

     ANGELES COUNTY SHERIFF'S    )

11   DEPARTMENT, a public entity,)

     et al.,                     )

12                               )

          Defendants.            )

13   _____)

14

15        REMOTE DEPOSITION OF DETECTIVE JOSHUA SHORT

16               Taken via ZOOM MEETING

17

18        Friday, March 26, 2021 at 9:04 a.m.

19

20                    REPORTED BY:

21   JENNIFER W. MILLAN, CSR *** CERTIFICATE NO. 11770

22

23

24

25
```

```
 1    APPEARANCES OF COUNSEL:

 2    FOR THE PLAINTIFFS:

 3        BAUM, HEDLUND, ARISTEL & GOLDMAN, P.C.
          BY:  MONIQUE ALARCON, ESQ.
 4        and
          PEDRAM ESFANDIARY, ESQ.
 5        10940 Wilshire Boulevard, 17th Floor
          Los Angeles, California 90024
 6        (310) 207-3233/(310) 820-7444
          malarcon@baumhedlundlaw.com

 7
          LAW OFFICE OF COLLEEN FLYNN
 8        BY:  COLLEEN FLYNN, ESQ.
          3435 Wilshire Boulevard, Suite 2910
 9        Los Angeles, California 90010
          (213) 252-9444/(213) 252-0091
10        cflynnlaw@yahoo.com

11        LAW OFFICE OF DONALD W. COOK
          BY:  DONALD W. COOK, ESQ.
12        3435 Wilshire Boulevard, Suite 2910
          Los Angeles, California 90010
13        (213) 252-9444/(213) 252-0091
          manncooklaw@gmail.com

14

15    FOR THE DEFENDANT COUNTY OF LOS ANGELES:

16        LAWRENCE, BEACH, ALLEN & CHOI, PC
          BY:  RAYMOND W. SAKAI, ESQ.
17        100 West Broadway, Suite 1200
          Glendale, California 91210
18        (818) 545-1925/(818) 545-1937
          rsakai@lbaclaw.com

19

20

21

22

23

24

25
```

```
 1                     I N D E X

 2    EXAMINATION                                    PAGE

 3    BY MS. ALARCON                                 4, 109

 4    BY MR. SAKAI                                   109

 5

 6

 7                     EXHIBITS

 8    Exhibit 1      Declaration of J. Short          32

 9    Exhibit 2      E-mail from C. Flynn to J. Short,
                     dated November 8, 2020           39
10
      Exhibit 3      Declaration of C. Flynn          45
11
      Exhibit 4      Photograph                       80
12
      Exhibit 5      Photograph                       83
13
      Exhibit 6      Photograph                       86
14
      Exhibit 7      Photograph                       88
15

16

17

18

19

20

21

22

23

24

25
```

Detective Joshua Short

```
 1         The following proceedings occurred at the hour of

 2    9:04 a.m. and testimony taken, to wit:

 3                         -o0o-

 4    DETECTIVE JOSHUA SHORT,

 5                    Being first duly sworn by the

 6                    Certified Shorthand Reporter,

 7                     testified as follows:

 8                         -o0o-

 9                    EXAMINATION

10    BY MS. ALARCON:

11         Q.   Good morning, Detective Short.  My name is Monique

12    Alarcon.  I represent the plaintiffs in this case.  I will

13    be taking your deposition.  If you can please first start by

14    stating and spelling your full name for the record.

15         A.   Joshua Short.  J-o-s-h-u-a, S-h-o-r-t.

16         Q.   Thank you.  Detective Short -- and I should note

17    for the record, your title, detective, shows up; is that

18    correct, are you a detective?

19         A.   Yes, ma'am.

20         Q.   Who are you employed by?

21         A.   The Los Angeles County Sheriff's Department.

22         Q.   Where are you currently stationed within the

23    sheriff's department?

24         A.   The station detective at South Los Angeles

25    station.
```

Detective Joshua Short

```
 1        Q.    Going back to this September 6, 2020, protest in

 2   South L.A., have you had any role in investigating that

 3   incident after the fact?

 4        A.    For the September 6 protest?

 5        Q.    Right.

 6        A.    Just the protest that occurred on the 8th.

 7        Q.    Is that a no, you had no role in investigating the

 8   September 6, 2020, protest?

 9        A.    That is correct.

10        Q.    Tell me about your role in investigating the

11   September 8, 2020, protest.  At what point did you get

12   involved in the investigation?

13        A.    When I got to work on September 9th I had 17

14   people that were taken into custody for unlawful assembly in

15   front of the station.  I prepared the packets, 85 packets,

16   for each person that was arrested and then submitted it to

17   the D.A.'s office for filing considerations.

18        Q.    What were your hours on September 8, 2020?

19        A.    5:00 in the morning until 3:00 in the afternoon.

20        Q.    I take it you didn't work overtime that day?

21        A.    No.

22        Q.    You mentioned that on September 9, 2020, there

23   were 17 -- you prepared reports for 17 people who were taken

24   into custody for unlawful assembly, right?

25        A.    Yes.
```

Detective Joshua Short

1    Q.   You also mentioned you prepared 85 packets for

2    each person arrested?

3    A.   No, it was 85 packets in total.  Due to all the

4    different -- you have to make four separate packets.

5         MS. ALARCON:  Donald, I think your phone is muted.

6    We're getting a little background feedback.

7              (Discussion held off the record.)

8    BY MS. ALARCON:

9    Q.   Backing up, you mentioned you were starting to say

10   that you do four separate packets for each person that's

11   arrested, right?

12   A.   Yes.

13   Q.   What do those packets consist of?

14   A.   They consist of the report, the booking packet and

15   the supplemental report that I wrote.

16   Q.   The report you mentioned, is that also known as a

17   First Report?

18   A.   Yes.

19   Q.   Who typically writes the First Report?

20   A.   The deputies at the station.

21   Q.   Putting it into the context of September 8th,

22   2020, protest, would that have been the officer who -- the

23   deputy who arrested an individual or is that the deputy at

24   the station who processes the individual?

25   A.   For the deputy who wrote the report?

Detective Joshua Short

```
 1        A.   The deputies at the station.

 2        Q.   Are you aware of any ongoing criminal

 3   investigation related to the September 8 arrestees?

 4             MR. SAKAI:  Objection.  Lack of foundation.  Calls

 5   for speculation.  To the extent it asks for attorney-client

 6   communications, I would instruct the deponent not to

 7   respond.

 8             MS. ALARCON:  I'm a little bit confused by that

 9   objection.

10             MR. SAKAI:  I will let him respond to anything he

11   knows that he didn't learn from me or any of his attorneys.

12             MS. ALARCON:  Sure.

13   BY MS. ALARCON:

14        Q.   I definitely don't want to know what you discussed

15   with your attorneys, but I am entitled to know what you know

16   as far as your work within the sheriff's department.

17        A.   Any other investigations you said?

18        Q.   Any other criminal investigations?

19             MR. SAKAI:  Same objections.

20             THE WITNESS:  Just from what my attorney has told

21   me.

22   BY MS. ALARCON:

23        Q.   Have you learned from any of your fellow deputies

24   whether any ongoing criminal investigations have resulted

25   from the September 8, 2020, protests?
```

Detective Joshua Shost

```
 1        A.   No.

 2        Q.   Do you know if Major Crime opened an investigation

 3   after you submitted your report to them?

 4        A.   I do not.

 5        Q.   Do you know whether Major Crime is actually doing

 6   an investigation about the September 8, 2020, protest?

 7        A.   I do not.

 8        Q.   Is Major Crime, as you're describing here, is that

 9   related to any specific station or is that just a division

10   within the department?

11        A.   It's a division within the department.

12        Q.   When your Sergeant Rojas informed you that Major

13   Crimes wanted the report, did you forward that report to

14   anyone?

15        A.   No, I just changed my supplemental report stating

16   that this case is going to be switched over to Major

17   Crimes.

18        Q.   What did you do with the report after that?

19        A.   Filed it back in the file.

20        Q.   Is that a paper file or a computer file?

21        A.   Paper file.

22        Q.   Did you do anything else with the report after

23   that?

24        A.   No.

25        Q.   I'm going to share my screen here.  One second.
```

1          Detective Short, are you able to see my screen?

2      A.   Yeah.

3      Q.   I have it zoomed in a bit.  I will scroll up and

4    down.  Have you seen this document before?

5      A.   Yes.

6          MS. ALARCON:  I'll mark this as Exhibit 1 for the

7    record.  This is the declaration you executed for this

8    lawsuit.

9               (Whereupon, Exhibit 1 was

10               marked for identification.)

11   BY MS. ALARCON:

12     Q.   Earlier you testified that you had reviewed your

13   declaration prior to coming here.  Is this the declaration

14   you reviewed?

15     A.   Yes.

16     Q.   I'm going to scroll down to Line 23 of the first

17   page of the declaration.  If you can just take a second to

18   read this paragraph from Lines 23 to 25.  You don't have to

19   read it out loud, just read it to yourself.  Actually, I'll

20   just ask you to look also from Lines 18 to 23.

21          Have you had a chance to look at that?

22     A.   Yes.

23     Q.   What did you mean here when you said the property

24   was being retained as part of an ongoing investigation?

25          MR. SAKAI:  Objection.  To the extent it calls for

Detective Joshua Short

```
 1   attorney-client communications, I'll instruct him not to

 2   respond.

 3           THE WITNESS:  Just from what my attorney told me.

 4   BY MS. ALARCON:

 5      Q.   I'm going to direct you up to Line 7 and 8.  It

 6   says you were personally aware of the facts set forth in the

 7   declaration and competent -- personally aware of the facts

 8   set forth below and competent to give this declaration.  I

 9   don't want to ask you about what your attorney told you, but

10   in Lines 18 to 25 do you have -- absent what your attorneys

11   told you, do you have any independent knowledge of what you

12   testified to here regarding ongoing criminal investigation?

13           MR. SAKAI:  You're asking whether he has

14   information other than what's covered by the attorney-client

15   privilege that covers the cited sections of the declaration?

16           MS. ALARCON:  Correct.

17           THE WITNESS:  Other than what my attorney has told

18   me, I have no knowledge of any investigation going on by

19   Major Crimes.

20   BY MS. ALARCON:

21      Q.   What I'm trying to understand, you wrote this

22   declaration -- presumably you wrote this declaration based

23   on your personal knowledge and you would be able to testify

24   to this information.  Now, it sounds like Mr. Sakai is

25   instructing you not to answer.
```

Detective Joshua Sheet

```
 1    Lack of foundation.  It's improper hypothetical to a lay

 2    witness.

 3              THE WITNESS:  Can you repeat that?

 4    BY MS. ALARCON:

 5       Q.   Why wouldn't an individual be allowed to go in and

 6    identify their own cell phones?

 7              MR. SAKAI:  Same objections.

 8              THE WITNESS:  I'm not sure.

 9    BY MS. ALARCON:

10       Q.   Do you know if there's a detective overseeing

11    these 17 cell phones and the investigation related to

12    them?

13       A.   If there is, it would probably be a detective from

14    Major Crimes Bureau.

15       Q.   Are you aware of whether the sheriff's department

16    has obtained a warrant to search these cell phones?

17              MR. SAKAI:  Objection.  To the extent it calls for

18    attorney-client communications, I'll instruct not to answer.

19    If you can answer based on information you didn't learn from

20    an attorney source, you can proceed.

21              THE WITNESS:  Can you repeat the question?

22              MS. ALARCON:  Can you read the question back,

23    please?

24              (Requested question read back.)

25              THE WITNESS:  To my knowledge, no.
```

Detective Joshua Short

```
 1    BY MS. ALARCON:

 2         Q.   Are you aware of whether the sheriff's department

 3    is taking any measures to return the cell phones back to the

 4    individuals who they belong to?

 5              MR. SAKAI:  Objection.  Lack of foundation.  Calls

 6    for speculation.  Detective Short is here in his individual

 7    capacity.  He is not speaking on behalf of the sheriff's

 8    department.  Based on your individual knowledge and

 9    understanding, you can respond.

10              THE WITNESS:  I do not know how they're handling

11    the cell phones.

12    BY MS. ALARCON:

13         Q.   Detective Short, other than the Zoom application,

14    do you have anything else on your screen?

15         A.   No, I'm just looking at you and the rest of the

16    names.  I'm turning my volume down so there's no feedback.

17         Q.   Is there anyone else in the room with you?

18         A.   Yes, my attorney.

19         Q.   Is he -- where is he sitting relative to you?

20         A.   Across from me.

21              MR. SAKAI:  What he's doing is when I'm speaking

22    we're getting feedback, so what he's doing is he's pressing

23    the mute button, if that answers your question.

24    BY MS. ALARCON:

25         Q.   Detective Short, to your knowledge, has the
```

     1   sheriff's department sought a warrant to search the cell

     2   phones?

     3           MR. SAKAI:  Objection.  Lack of foundation.  Calls

     4   for speculation, and it's been asked and answered numerous

     5   times.

     6           MS. ALARCON:  It's a different question.

     7           THE WITNESS:  I'm not sure.

     8   BY MS. ALARCON:

     9       Q.   To your knowledge, has the sheriff's department

    10   sought any sort of judicial review to maintain possession of

    11   the cell phones?

    12           MR. SAKAI:  Objection.  Lack of foundation.  Calls

    13   for speculation.  Asked and answered.

    14           MS. ALARCON:  That's a different question.

    15           THE WITNESS:  I am unsure.

    16   BY MS. ALARCON:

    17       Q.   Other than the declaration that you provided in

    18   this case -- for this case that we just looked at earlier,

    19   have you executed any other declarations otherwise known as

    20   affidavits related to this incident?

    21       A.   No.

    22       Q.   Have you, yourself, submitted any application for

    23   warrants related to the September 8, 2020, incident?

    24       A.   No.

    25       Q.   Are you familiar with an individual named

1    spread out like that.  It was in bags.

2        Q.   What types of bags was it in?

3        A.   Big clear like trash bags.

4        Q.   Were the trash bags tagged or identified in any

5    way?

6        A.   Yes, they were tagged.

7        Q.   Do you know what the tags described?

8        A.   That, I would have to go back and see what the

9    tags looked like to describe that.

10       Q.   Do you recall if it had booking numbers?

11       A.   It had the report number.

12       Q.   Was that the URN number?

13       A.   Yeah, the URN number.

14       Q.   There were multiple bags?

15       A.   Yes.

16       Q.   Can you estimate how many?

17       A.   If I had to guess, six, seven.

18       Q.   Do you know if anyone at the sheriff's department

19   has sought judicial review to continue holding the property

20   in this photo?

21            MR. SAKAI:  Objection to the extent it calls for

22   attorney-client communications.  If not, the deponent can

23   respond.

24            THE WITNESS:  Other than from what my attorney has

25   told me, I don't know.

```
 1                    REPORTER'S CERTIFICATION

 2

 3            I, Jennifer W. Millan, a Certified Shorthand

 4    Reporter in and for the State of California, holding

 5    Certificate No. 11770, do hereby certify:

 6

 7            That the foregoing witness was by me duly sworn;

 8    that the examination under oath was then taken before me at

 9    the time and place herein set forth; that the testimony and

10    proceedings were reported stenographically by me and later

11    transcribed into typewritten form under my direction; that

12    the foregoing is a true record of the testimony and

13    proceedings taken at that time.

14

15            IN WITNESS WHEREOF,  I have subscribed my name

16    on April 7, 2021.

17

18            J millan

19    _____

20                    JENNIFER W. MILLAN, CSR No. 11770

21

22

23

24

25
```