PAUL B. BEACH, State Bar No. 166265
JIN S. CHOI, State Bar No. 180270
jchoi@lbaclaw.com
RAYMOND W. SAKAI, State Bar No. 193507
rsakai@lbaclaw.com
DAISY SANCHEZ, State Bar No. 334090
dsanchez@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California 91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendants
County of Los Angeles, Los Angeles County
Sheriff's Department, and Sheriff Alex Villanueva

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ASTORGA, etc., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, etc., et al.,<br><br>Defendants. | Case No. 2:20-cv-09805-AB-AGR<br><br>Honorable André Birotte Jr.<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT RE SEIZURE OF DODSON PROPERTY; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS AND EXHIBITS**<br><br>*[Defendants' Statement of Genuine Issues and Additional Material Facts filed concurrently herewith]*<br><br>Date:      October 29, 2021<br>Time:      10:00 a.m.<br>Crtm:     7B |

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR

ATTORNEYS OF RECORD:

Defendants County of Los Angeles, Los Angeles County Sheriff's Department, and Sheriff Alex Villanueva (collectively, "Defendants") hereby submit the following Memorandum of Points and Authorities, the Declarations of Captain Eduardo Hernandez and Jin S. Choi, and Exhibits in opposition to Plaintiffs' motion for partial summary judgment.  Filed concurrently herewith is Defendants' Statement of Genuine Issues and Additional Material Facts.

Dated: October 8, 2021          LAWRENCE BEACH ALLEN & CHOI, PC


                                By _____/s/  Jin S. Choi_____
                                     Jin S. Choi
                                     Attorneys for Defendants
                                     County of Los Angeles, Los Angeles County
                                     Sheriff's Department and
                                     Sheriff Alex Villanueva

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I. INTRODUCTION ............................................................................................ 1

II. THERE IS NO *PER SE* OR BRIGHT-LINE RULE AS TO HOW SOON LAW ENFORCEMENT AGENCIES MUST OBTAIN A WARRANT FOR PROPERTY DESIGNATED AS EVIDENCE RELATED TO AN ONGOING CRIMINAL INVESTIGATION ..................................................................... 3

   A. Plaintiffs Completely Ignore Case Law Which Directly Refute Their Contention That Their Fourth Amendment Claim Is Subject To A Bright-Line Rule ................................................................................................ 4

   B. Plaintiffs' Own Factual Account And Evidence Demonstrate Ample Justification For The Retention Of Their Property Until The Warrant Was Obtained On October 13, 2020 ..................................................................... 7

III. PLAINTIFFS RELY ON READILY DISTINGUISHABLE AND ENTIRELY INAPPOSITE FOURTH AMENDMENT CASES THAT ALSO DO NOT ANNOUNCE ANY OF THE PURPORTED BRIGHT-LINE RULES UPON WHICH THEIR ARGUMENTS ARE BASED ......................................... 10

IV. PLAINTIFFS' FOURTH AMENDMENT CLAIM FAILS BECAUSE IT IS NOT SUPPORTED BY ANY ALLEGATION OR PROOF THAT THEY SUBMITTED VERIFIABLE PROOF OF OWNERSHIP AS TO THE PROPERTY WHICH THEY CLAIM SHOULD HAVE BEEN IMMEDIATELY RELEASED TO THEM ................................................. 14

V. CONCLUSION ............................................................................................. 15

DECLARATION OF JIN S. CHOI .................................................................. 16

i

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Albino v. Baca*,
   747 F.3d (9th Cir. 2014)...........................................................................3

*Brewster v. Beck*,
   859 F.3d (9th Cir. 2017)............................................................ 10, 12, 13

*Case v. Eslinger*,
   555 F.3d (11th Cir. 2009).......................................................................14

*City of Los Angeles v. Patel*,
   576 U.S. 409 (2015) ...............................................................................7

*Cool Fuel, Inc. v. Connett*,
   685 F.2d (9th Cir. 1982).........................................................................3

*Cranford v. Crawford*,
   2015 WL 4662421 (E.D. Cal. Aug. 5, 2015) .........................................1

*Fox v. Van Oosterum*,
   176 F.3d (6th Cir. 1999)........................................................................14

*Gospel Missions of Am. v. City of Los Angeles*,
   328 F.3d (9th Cir.2003).........................................................................3

*Hadnot v. Riverside County Sheriff's Department*,
   2019 WL 7134460 (C.D. Cal. Sept. 30, 2019)......................................1

*Lacy v. City of San Francisco*,
   2020 WL 5893407 (N.D. Cal. Oct. 5, 2020)..........................................4

*Lewis v. City of Culver City*,
   2018 WL 1406609 (C.D. Cal. March 19, 2018) ...........................14, 15

*Medley v. Baca*,
   2008 (C.D. Cal. Dec. 3, 2008).............................................................1

*Riley v. California*,
   573 U.S. (2014) ....................................................................................5

ii

*Soremekun v. Thrifty Payless, Inc.*,

   509 F.3d 978 (9th Cir. 2008)....................................................................1

*United States v. Blanchard,*

   __ F.Supp.3d __, 2021 (D. Mass. June 16, 2021)....................................6

*United States v. Dass*,

   849 F.2d (9th Cir. 1988)..................................................... 10, 11, 12

*United States v. Gabelman*,

   2020 WL 2739616 (D. Nev. May 5, 2020) ......................................4, 5, 6

*United States v. Hawkins*,

   249 F.3d (9th Cir. 2001)....................................................................7

*United States v. Hernandez*,

   313 F.3d (9th Cir. 2002)....................................................................4

*United States v. Place*,

   462 U.S. 696 (1983) .................................................................10, 11

*United States v. Sulllivan*,

   797 F.3d (9th Cir. 2015)....................................................................4

*United States v. Van Leeuwen*,

   397 U.S. 240 (1970) ........................................................................11

*United States v. Wilkins*,

   __ F.Supp.3d __ (D.D.C. May 11, 2021)..............................................6

**Statutes**

California Vehicle Code § 14602.6(a)(1) .................................................12

iii

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    <u>INTRODUCTION.</u>

Plaintiffs moving for summary judgment cannot prevail unless they satisfy a significantly higher burden than their defendant counterparts.  Plaintiffs "must ***affirmatively demonstrate that no reasonable trier of fact could find other than for [the plaintiffs]***."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2008) (emphasis added); *Medley v. Baca*, 2008 WL 5103228, at *3 (C.D. Cal. Dec. 3, 2008) (plaintiffs moving for summary judgment must meet this heightened standard of proof because they "bear[] the burden of proof of [their] claims at trial."); *Hadnot v. Riverside County Sheriff's Department*, 2019 WL 7134460, at *5 (C.D. Cal. Sept. 30, 2019) ("When the party moving for summary judgment will bear the burden of proof at trial, as when a plaintiff moves for summary judgment, it must come forward with evidence that would entitle it to a directed verdict if the evidence was uncontroverted."), *report and recommendation adopted*, 2019 WL 7050224 (C.D. Cal. Dec. 20, 2019); *see also Cranford v. Crawford*, 2015 WL 4662421, at *1 (E.D. Cal. Aug. 5, 2015) (while the plaintiff affirmatively demonstrate that no reasonable trier of fact could find other than for him, the defendant, who does not bear the burden of proof at trial, "need only prove an absence of evidence to support" the plaintiff's case).

Here, Plaintiffs Ryan Dodson and Kiyoko Dodson ("Plaintiffs") have neither acknowledged this heightened burden of proof nor have they come close to satisfying it in seeking partial summary judgment as to their Fourth Amendment claim based on the alleged unconstitutional delay between their requests for the return of their property and the issuance of the October 13, 2020 search warrant. Without citing any controlling law, Plaintiffs' central argument is that once they asked for their property back on or about September 27, 2020, either the immediate

1    return of their property or the immediate obtaining of a warrant was constitutionally

2    required as a matter of law.[1]

3        Plaintiffs' theory of relief, however, is based on a starkly incomplete and

4    inaccurate description of the applicable law.  Contrary to Plaintiffs' assertions, their

5    Fourth Amendment claim is ***not*** dictated by any such purported bright-line rule.

6    Where the issue is whether the Fourth Amendment has been violated by an

7    unconstitutional "delay" between an arrestee's request for the subject property and

8    the obtaining of the warrant, courts have consistently held that the facts

9    surrounding each case must necessarily be examined, while declaring that this

10   determination is not bound by any bright-line rule.  Plaintiffs do not address any of

11   these cases, instead relying on the entirely erroneous assertion that some bright-line

12   rule must be applied.

13       Moreover, Plaintiffs' own evidence underscores the fact that the examination

14   of the pertinent circumstances, including the undisputed fact that Plaintiffs' request

15   was made as to property that had been ***designated as evidence related to an***

16   ***ongoing criminal investigation***, does not illustrate any constitutional infirmity

17

18   _____

19   [1] A search warrant was issued by Superior Court Judge Deborah L. Sanchez on

20   October 13, 2020, which indicated that "there is probable cause to believe that the
     property described herein … is lawfully seizable pursuant to Penal Code Section

21   1524", and that the search warrant was placed under seal.  (Plaintiffs' Exhibit "D"
     at pp. 20-21.)  The parties have been engaged in discovery proceedings before

22   Magistrate Judge Rosenberg who has recently ruled that Plaintiffs be provided with

23   the pertinent sealed warrant numbers and that Plaintiffs must proceed with the
     Superior Court first to have the warrants unsealed. (*See* Defendants' Exhibit "A"

24   [ECF 163 (in ruling that "Plaintiffs must first file a motion to unseal the warrants
     and warrant applications in the Superior Court", the Magistrate Judge in footnote 3

25   of the order, that on Plaintiffs' confusing three-pronged argument that (1)
     Defendants should produce the warrants and warrant applications; (2) Defendants

26   should not have the same warrants and warrant applications; and (3) Defendants
     should be sanctioned for not producing the warrants and warrant applications.  All

27   sanctions requests were denied.)].)

28

2

regarding the timing of the warrant.  Concomitantly, Plaintiffs have not come anywhere close to satisfying their heightened burden of proof necessary to prevail on this claim on summary judgment.

Finally, this motion should be denied because Plaintiffs do not allege, let alone prove, that they submitted verifiable proof of ownership as to their personal property items, and without any such allegation, Plaintiffs' Fourth Amendment claim fails as a matter of law.

Accordingly, on multiple, independent grounds, Plaintiffs' motion should be denied in its entirety.[2]

## II.  THERE IS NO *PER SE* OR BRIGHT-LINE RULE AS TO HOW SOON LAW ENFORCEMENT AGENCIES MUST OBTAIN A WARRANT FOR PROPERTY DESIGNATED AS EVIDENCE RELATED TO AN ONGOING CRIMINAL INVESTIGATION.

Plaintiffs' fundamental legal contention is that law enforcement agencies are constitutionally required to return an arrestee's property or obtain a warrant, *immediately* upon an arrestee's request for the subject property — regardless of whether or not the property is related to an ongoing criminal investigation, and with no regard to the pertinent surrounding circumstances in each given instance.

---

[2] The Court, in its discretion, may enter summary judgment in favor of Defendants on this claim.  *Gospel Missions of Am. v. City of Los Angeles,* 328 F.3d 548, 553 (9th Cir.2003) ("Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.' ") (quoting *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982)); *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) ("if the court finds that when viewing the evidence in the light most favorable to a moving party the movant has not shown a genuine dispute of fact on the issue of exhaustion, it may be appropriate for the district court to grant summary judgment *sua sponte* for the nonmovant on this issue").

Plaintiffs' argument that controlling case law imposes such a bright-line rule falls completely flat.  Indeed, Plaintiffs have not and cannot cite a single case, controlling or not, which held that such a per se or bright-line constitutional requirement exists.

## A.   Plaintiffs Completely Ignore Case Law Which Directly Refute Their Contention That Their Fourth Amendment Claim Is Subject To A Bright-Line Rule.

Plaintiffs do not address the fact that courts have repeatedly made clear that Fourth Amendment-related claims based on the amount of time between the seizure of property and the obtaining of warrants must necessarily take into account material facts specific to each incident — this determination necessitates the examination of the totality of circumstances.  In other words, the one-size-fits-all rule Plaintiffs allude to (without any supporting authority) does not exist. *See Lacy v. City of San Francisco*, 2020 WL 5893407, at *5 (N.D. Cal. Oct. 5, 2020) ("There is no bright line rule regarding what constitutes an unreasonable delay in obtaining a warrant.") (citing *United States v. Gabelman*, 2020 WL 2739616, at *5 (D. Nev. May 5, 2020), *report and recommendation adopted*, 2020 WL 2735382 (D. Nev. May 26, 2020)); *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015) ("An unreasonable delay between the seizure of a package and obtaining a search warrant may violate the defendant's Fourth Amendment rights.  *The touchstone is reasonableness*.") (emphasis added).  The Ninth Circuit has also explained, "Even if the government could have moved faster to obtain a search warrant, the government is not required to pursue 'the least intrusive course of action.'" *Sullivan*, 797 F.3d at 634 (quoting *United States v. Hernandez*, 313 F.3d 1206, 1213 (9th Cir. 2002)).

In *United States v. Gabelman*, 2020 WL 2739616, the criminal defendant consented to having his cell phone searched when interviewed by FBI agents. After his interview, he asked for the return of his phone and revoked his consent to

search it.  *Id.* at *2.  The agents "retained his cell phone in order to obtain a search warrant".  *Id.*  Later that day, the defendant called an agent and told him that he wanted his phone back as soon as possible.  The agent explained that "his phone was evidence and could not be returned during the investigation of the case."  *Id.*  The next day, the defendant sent the agent two e-mails, "in which he expressly revoked his consent to search his cell phone and demanded its return."  *Id.*  Two days later, the phone was entered into FBI evidence, and three days later, the United States applied for and obtained a search warrant.  *Id.*  A federal criminal complaint was issued three days later, upon which the defendant was arrested.  *Id.*

The defendant moved to suppress the evidence obtained from his cell phone, arguing that he had revoked his consent to search on several occasions after his interview.  *Id.* at *3.  The Court ruled that the agents acted properly in seizing the cell phone "to obtain a search warrant to continue the search", citing in part *Riley v. California*, 573 U.S. 373, 388 (2014) (cell phone may be seized "to prevent destruction of evidence while seeking a warrant"), and rejected the defendant's argument that the six-day delay between the seizure and obtaining of the warrant was unreasonable.  *Id.* at *5.  The Court explained, "[t]here is ***no bright line date past which a delay becomes unreasonable***."  *Id.* at (emphasis added).   In accordance with these standards, the Court examined the specific facts, and found "under the totality of the circumstances – that the government acted diligently in obtaining the search warrant.  Therefore, the Court also finds that the six-day delay was reasonable."  *Id.* at *6.

While the six-day period of time in *Gabelman* was held to be "reasonable" as a matter of law, resulting in the denial of the criminal defendant's motion to suppress, Plaintiffs, in the instant case, contend that the fact that the search warrant was obtained on October 13, 2020 was "unreasonable" as a matter of law.  Their argument is based on the erroneous legal assumption that their requests for the return of their property triggered an immediate obligation to either return the

property or obtain a warrant.  The fact that Plaintiffs' argument rests on this patently erroneous legal assumption renders their attendant argument for summary judgment invalid on its face.

A significantly longer delay was recently found to be reasonable in *United States v. Blanchard*, __ F.Supp.3d __, 2021 WL 2458200 (D. Mass. June 16, 2021), where a criminal defendant moved to suppress evidence obtained from the search of her cell phone, arguing that the search warrant application was made almost four months after the seizure of the phone.  The court ruled that the delay was not unreasonable even though law enforcement held the phone "for a time period longer than was necessary to secure a warrant", in part because the newly minted detective was "getting up to speed while working on a large caseload".  *Id.* at *4. While the court noted that the defendant had not asked for the return of the phone, the court took into account the totality of the circumstances in ruling that the four-month delay was not unreasonable.  *See also United States v. Wilkins*, __ F.Supp.3d __, 2021 WL 1894990, at *26 (D.D.C. May 11, 2021) (based on balancing of the factors, 15-month delay violated the Fourth Amendment due to "the Government's utter lack of justification for both the initial seizure and its lack of diligence in obtaining a warrant").

These cases clearly demonstrate the erroneousness of Plaintiffs' fundamental basis for seeking summary judgment on this Fourth Amendment claim.  Plaintiffs cannot rely on a bright-line rule that does not exist.  Furthermore, as discussed below, Plaintiffs' own evidence and account are inherently inconsistent with any finding that the timing of the warrant was objectively unreasonable under the Fourth Amendment.  And as in such cases as *Gabelman* and *Blanchard*, the appropriate finding is that Plaintiffs' property was constitutionally retained during

the subject time period, and if anything, summary judgment should be entered *against* Plaintiffs on this issue.[3]

**B.** **Plaintiffs' Own Factual Account And Evidence Demonstrate Ample Justification For The Retention Of Their Property Until The Warrant Was Obtained On October 13, 2020.**

Plaintiffs' factual account of their efforts to get their truck and other property back and their communications with LASD personnel — prior to October 13, 2020 — directly undermines their already fundamentally flawed argument for summary judgment.

Specifically, Plaintiffs assert that on September 27, 2020, they went to the West Hollywood Sheriff's Station, and "[w]hen they asked if they could get their truck back, Sheriff's personnel said they could not, *that the truck was evidence*", and that they were also told "their property … inside the truck … *was also evidence*." (Motion at p. 7:3-6; emphasis added.) Plaintiffs further assert that "[i]n the days following their Sunday trip to the West Hollywood Sheriff's station, Kiyoko called the station numerous times[4] to see if they were ever going to get their

---

[3] Plaintiffs' contention that Defendants bear the burden of proof with respect to Plaintiffs' motion is just as misplaced and unavailing. (Motion at pp. 2:12-28). Plaintiffs rely on *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001), where a criminal defendant moved to suppress evidence seized during a warrantless vehicle stop, which has no parallel to the instant case. Here, Plaintiffs do *not* challenge the lawfulness of the initial seizure of their property in this motion (Motion at p. 8:26-28), and are instead, making a wholly separate challenge as to what should have happened when they asked for the return of their property. Therefore, Plaintiffs' actual constitutional challenge is not governed by either *Hawkins* or *City of Los Angeles v. Patel*, 576 U.S. 409 (2015) (motel operators challenged municipal code requiring the provision of information about guests to police officers on demand), another case Plaintiffs cite for this unfounded legal assertion.

[4] Even if Plaintiff Kiyoko Dodson did call numerous times, Plaintiffs' submitted evidence addresses only two conversations with LASD personnel, and both times,

7

truck back, or at least their property that was inside the truck", and that Sergeant Michael Yokum informed her "that *the truck, and all the property items that were inside the truck, was evidence*" and that "*the truck nor any of the property would be released until the major crimes bureau authorizes the release*".  (Motion at p. 7:13-19; emphasis added; *see also* Declaration of Kiyoko Dodson, ¶¶ 6-8 [explaining that they were advised that the truck and the personal property items inside the truck were designated as "evidence", and that Sergeant Yokum told her "that the truck, and all the property items that were inside the truck, was evidence. He said that neither the truck nor any of the property would be released until the major crimes bureau authorizes the release."]).

The direct implications of Plaintiffs' account are entirely consistent with the declaration of Captain Eduardo Hernandez filed in this action on January 6, 2021 (ECF 47; Defendants' Exhibit "B") which explained the broader criminal investigatory context to which Plaintiffs' items of personal property related:

● In conjunction with the arrests of individuals in conjunction with the protests of September 8, 2020 near the South Los Angeles LASD Station and September 25, 2020 in West Hollywood, various items of evidence were booked into custody (Exhibit "B", ¶¶ 3-4);

● Items which were not initially returned were held for evidentiary purposes in an ongoing criminal investigation (Exhibit "B", ¶ 4);

● Property and evidence coming into possession of LASD personnel are accounted for and processed, and items of possible evidentiary value are carefully handled and booked into evidence (Exhibit "B", ¶ 5);

● Property items, which were held as part of an ongoing criminal investigation, but which are no longer needed as evidence are released to the legal

---

Plaintiffs were informed that their property could not be released because of their evidentiary status.

owner provided doing so does not violate the law or LASD policy (Exhibit "B", ¶¶ 6, 12); and

●    Property items which were not immediately released to Plaintiffs were held due to an ongoing criminal investigation (Exhibit "B", ¶¶ 8-11).

Furthermore, in the now under-seal declaration of Captain Hernandez (ECF 52), the Court was provided with additional factual information relevant to Plaintiffs' arguments relating to the criminal investigation and their personal property.  (Choi Decl., ¶ 4.)[5]

Thus, based on Plaintiffs' own account, the reason that their property was not immediately returned was that the LASD's Major Crimes Bureau had determined that their property was classified as potential evidence of criminal activity — which is entirely consistent with the finding of probable cause made in conjunction with the issuance of the search warrant on October 13, and the information set forth in Captain Hernandez's declarations.  Therefore, if Plaintiffs' assertions and evidence are taken at face value — and examined along with the other pertinent evidence, Plaintiffs cannot dispute that there were legitimate law enforcement reasons for why their property was not immediately returned.

Even more importantly, Plaintiffs have made no showing whatsoever of any constitutionally actionable indifference or neglect in connection to the subject time period up to October 13, 2020.  In the absence of any such showing, Plaintiffs have

---

[5] On October 30, 2020, a letter signed by Captain Edward C. Ramirez of the West Hollywood Station informed Plaintiff Dodson that on September 25, 2020, a hold had been placed on his truck, that the investigation relating to his truck had been completed and that the truck was no longer needed, and enclosed with the letter was an "Authority for Release of Property" form with which he could pick up his truck.  (Plaintiffs' Exhibit "C" at p. 18.)  Plaintiffs picked up their truck on November 7, 2020.  (Motion at p. 7:21.)

not come close to establishing that they are entitled to summary judgment on this Fourth Amendment claim.

### III.   PLAINTIFFS RELY ON READILY DISTINGUISHABLE AND ENTIRELY INAPPOSITE FOURTH AMENDMENT CASES THAT ALSO DO NOT ANNOUNCE ANY OF THE PURPORTED BRIGHT-LINE RULES UPON WHICH THEIR ARGUMENTS ARE BASED.

Plaintiffs rely on self-serving pronouncements about purported bright-line rules untethered to any controlling legal authority.  For example, Plaintiffs declare, "once Plaintiffs made their initial demand on September 27, 2020 that defendants return to Plaintiffs their truck and the property contained therein, defendants either had to accede to Plaintiffs' request *or* have secured judicial authorization for the ongoing seizures", and because "defendants did neither, the ongoing seizures of [their] property violated the Fourth Amendment."  (Motion at p. 9:19-23).[6] Plaintiffs cite three cases in support of this purported, blanket rule of law: (1) *United States v. Place*, 462 U.S. 696, 699 & 710 (1983); (2) *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988); and (3) *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017).[7]  These cases, however, did not come close to announcing any such purported blanket rule of law.

In *United States v. Place*, 462 U.S. 696 (1983), the Supreme Court held that while the investigative detention of a traveler's luggage on less than probable cause

---

[6] Plaintiffs further explain that the instant motion seeks a ruling "that as to the *ongoing* seizures, the delay or refusal to seek a warrant was unlawful."  (Motion at p. 9:27-28; original emphasis.)

[7] Citing these three cases, Plaintiffs state later, "given the absence of any judicial authorization as of *September 27*, defendants' constitutional duty on that date was to return to Plaintiffs their [] truck and its contents."  (Motion at p. 10:8-10 [original emphasis]).  Yet, these cases did not establish any such "constitutional duty"; otherwise, Plaintiffs would and should have cited at least one controlling case with analogous facts where such a bright-line rule was applied.

was permissible, and that exposure of the luggage to a trained narcotics detection dog was not a search under the Fourth Amendment, the 90-minute detention of the luggage was unreasonable. *Place* is readily distinguishable from the instant case since the subject property — the traveler's luggage — was not seized pursuant to the arrest of the traveler. The Supreme Court's analysis, therefore, was rooted in *Terry*-based law related to temporary investigative detentions in the absence of arrests based on probable cause. Within this particular context, the Supreme Court explained, "we have never approved a seizure of the person for the prolonged 90-minute period involved here and cannot do so on the facts presented by this case." *Id.* at 709-10. Thus, *Place* involved a factual scenario entirely distinguishable from the instant case, and did not announce any bright-line rules regarding how soon after an arrestee makes a request for the return of property that a law enforcement agency must either release the property or obtain judicial authorization.[8] Plaintiffs' contention that *Place* announced any such rule is categorically wrong.

In *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988), four criminal defendants' packages were collected at post offices for narcotics dog sniffs, and then detained because the dog sniffs suggested the presence of marijuana. Search warrants were subsequently obtained for the packages, within seven to twenty-three days after the packages were detained. The district court ruled that "the delays could have been much shorter (36 hours) if the police had acted diligently", and in affirming the district court's ruling, the Ninth Circuit relied on the Supreme Court's holding in *United States v. Van Leeuwen*, 397 U.S. 240 (1970), where the Supreme Court "expressly avoided validating the proposition that authorities can detain mailed packages until they can obtain a search warrant *even though the delay lasted only 29 hours.*" *Dass*, 849 F.2d at 415 (original emphasis). Significantly, in *Dass*,

---

[8] Even in the investigate detention context, the Supreme Court explained that it "decline[s] to adopt any outside time limitation for a permissible *Terry* stop." *Id.* at 709.

the government did not make any showing to explain why the search warrants were not more quickly obtained, and even argued for a Fourth Amendment exception to contraband. *Id.* at 415.

Thus, Plaintiffs' reliance on *Dass* is entirely misplaced: the Ninth Circuit did not announce any bright-line rule as to when search warrants for property seized incident to arrest must be sought or that such property must be immediately released upon the arrestee's request; *Dass* also did not involve the seizures of property incident to arrest in conjunction with an ongoing criminal investigation.

Finally, Plaintiffs rely on *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017), where the plaintiff's vehicle was impounded under California Vehicle Code § 14602.6(a)(1), because it was driven by the plaintiff's brother-in-law whose driver's license had been suspended. The statute authorizes vehicles driven by unlicensed individuals to be impounded for 30 days. *Id.* at 1195. Three days after the impoundment of her vehicle, the plaintiff appeared at a hearing with the LAPD with proof that she is a licensed driver and the registered owner of the vehicle, and offered to pay all accrued towing and storage fees. The LAPD, however, refused to release her vehicle before the expiration of the 30-day period. *Id.* The plaintiff brought a § 1983 class action claiming that the 30-day impound was a warrantless seizure that violated the Fourth Amendment. *Id.* The Ninth Circuit explained that the vehicle had been seized pursuant to the community caretaking exception to the Fourth Amendment but "[t]he ***exigency that justified the seizure vanished once the vehicle arrived in impound*** and [the plaintiff] showed up with proof of ownership and a valid driver's license", and the pertinent Fourth Amendment question was whether the LAPD could continue to hold the vehicle for 30 days under those circumstances. *Id.* at 1196 (emphasis added). The Ninth Circuit then held that the 30-day impound implicated the Fourth Amendment, and that the LAPD had failed to justify the full 30-day impoundment: "A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force.

1    Thereafter, the government must cease the seizure or secure a new justification."

2    *Id.* at 1197.

3           *Brewster* is inapposite for several reasons.  The vehicle was not seized

4    incident to an arrest.  The LAPD sought to justify the 30-day impound by simply

5    relying on the statutory authorization without offering any specific justification for

6    the continued impoundment.  The LAPD never intended to seek a search warrant

7    for the vehicle.  The vehicle was not seized for purposes of a criminal investigation.

8    Under these particular circumstances, the Ninth Circuit held that the impoundment

9    violated the Fourth Amendment.  The Ninth Circuit, therefore, did not address any

10   questions related to how long the LAPD could have maintained custody of the

11   vehicle before seeking any form of judicial authorization, and neither did it have to

12   address what kind of justification would have passed constitutional muster.

13          Thus, the facts and constitutional analysis in *Brewster* have no relevance to

14   the instant case, let alone the kind of controlling effect that purportedly warrants

15   summary judgment on Plaintiffs' Fourth Amendment claim.  In fact, *Brewster* has

16   no such effect whatsoever.

17          Not only do Plaintiffs rely on these unquestionably inapposite and unavailing

18   cases in seeking partial summary judgment, they completely ignore the absence of

19   any bright-line rule as to when a law enforcement agency must seek judicial

20   authorization for property seized incident to arrest, and the corresponding absence

21   of any bright-line rule as to whether such property must be immediately released

22   upon the request made by the arrestee.  Because Plaintiffs' arguments are premised

23   on these fundamentally erroneous legal propositions, Plaintiffs have not and cannot

24   show that they are entitled to summary judgment on any basis.

25

26   ///

27   ///

28   ///

## IV. __PLAINTIFFS' FOURTH AMENDMENT CLAIM FAILS BECAUSE IT IS NOT SUPPORTED BY ANY ALLEGATION OR PROOF THAT THEY SUBMITTED VERIFIABLE PROOF OF OWNERSHIP AS TO THE PROPERTY WHICH THEY CLAIM SHOULD HAVE BEEN IMMEDIATELY RELEASED TO THEM.__

Plaintiffs have made clear that in this motion, they "do not contest defendants' justification for the initial seizures" of their property.  (Motion at p. 8:28.)  The fact that Plaintiffs are not challenging the initial seizures of property is significant because under these circumstances, Plaintiff's contention that the refusal to return their personal property (which was lawfully seized) does not implicate the Fourth Amendment.

In *Lewis v. City of Culver City*, 2018 WL 1406609 (C.D. Cal. March 19, 2018), the Court granted the defendants' motion to dismiss the plaintiff's Fourth Amendment claim — based on the alleged continued seizure of her property ($240,000 in cash) which had been seized upon the arrest of a burglar who had stolen the cash from the plaintiff's public storage locker.  *Id.* at *1-2.  The Court explained that "there is no question that Defendants' initial seizure of the property was lawful as it was conducted in connection with a lawful arrest", and that "the only complained-of-harm at issue is Defendants' retention and refusal to return the property to Plaintiff."  *Id.* at *2.  The Court noted that "other circuits have held that a police officer's retention of lawfully seized property alone does not violate the Fourth Amendment", citing *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) (where property was lawfully seized, the continued retention of the property raises an issue of procedural due process under the Fourteenth Amendment).  *Lewis*, 2018 WL 1406609 at *2; *see also Fox v. Van Oosterum*, 176 F.3d 342, 351-52 (6th Cir. 1999) (where the plaintiff alleged that the defendants refused to return his driver's license, there was no Fourth Amendment seizure where there was "an initial, lawful seizure of a piece of property followed by a refusal to return that property").

The *Lewis* Court held that the "continued possession and refusal to return the property to Plaintiff" does not implicate a Fourth Amendment interest, and even it did, the plaintiff had not alleged that she had provided sufficient "proof of ownership", since "a written demand letter does not amount to proof of ownership." *Lewis*, 2018 WL 1406609 at *3.  As such, the plaintiff had not alleged a "plausible claim for relief under the Fourth Amendment."  *Id.*

Similarly, in the instant case, there is no allegation that the initial seizure of Plaintiffs' property was unlawful, and even if it is assumed that Plaintiffs could pursue a Fourth Amendment claim at all based on the instant theory of relief, their Fourth Amendment claim is not supported by any allegation, let alone evidence, of Plaintiffs' having submitted sufficient proof of ownership as to their items of personal property.  (*See* Declaration of Ryan Dodson, ¶¶ 9, 11; Declaration of Kiyoko Dodson, ¶¶ 6-8.)  Plaintiffs' purported calls to the towing company and to the West Hollywood Sheriff's Station, during which they made verbal requests for the return of all of their property, simply do not implicate an actionable Fourth Amendment claim, let alone justify summary judgment in their favor on this claim. The instant motion, therefore, should be denied on this additional ground.

## V.   CONCLUSION.

For the foregoing reasons, Defendants respectfully submit that the instant motion for partial summary judgment be denied in its entirety.

Dated: October 8, 2021        LAWRENCE BEACH ALLEN & CHOI, PC


By _____/s/  Jin S. Choi_____
        Jin S. Choi
        Attorneys for Defendants
        County of Los Angeles, Los Angeles County
        Sheriff's Department and
        Sheriff Alex Villanueva

**DECLARATION OF JIN S. CHOI**

I, Jin S. Choi, declare and state follows:

1.       I am an attorney at law, duly authorized to practice before this Court and a shareholder of the law firm of Lawrence Beach Allen & Choi, PC, attorneys of record for Defendants County of Los Angeles, Los Angeles County Sheriff's Department and Sheriff Alex Villanueva in the above-entitled action.  I have personal knowledge of the facts stated herein, except those stated upon information and belief and as to those matters, I believe them to be true.  If called to testify to the matters herein, I could and would competently do so.

2.       Attached hereto as Exhibit "A" is a true and correct copy of the Magistrate Judge's Order on Defendants' Motion for Protective Order entered on September 24, 2021 (ECF 163).

3.       Attached hereto as Exhibit "B" is a true and correct copy of the Declaration of LASD Captain Eduardo Hernandez, which was previously filed in this action on January 6, 2021 (ECF 47).

4.       In the now under-seal declaration of Captain Eduardo Hernandez (ECF 52), the Court was provided with additional factual information relevant to Plaintiffs' arguments relating to the criminal investigation and their personal property.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 8, 2021, at Glendale, California.


_____/s/ Jin S. Choi_____
                Jin S. Choi

16

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 20-09805-AB (AGRx) | Date | September 24, 2021 |
|---|---|---|---|
| Title | Christina Astorga v. County of Los Angeles, et al. | | |

| Present: The Honorable | Alicia G. Rosenberg, United States Magistrate Judge | |
|---|---|---|
| K. Lozada | AT&T 09/24/2021 | n/a |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| Colleen Flynn | Raymond W Sakai |
| Donald Webster Cook | |

**Proceedings:**      **ORDER ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER (Dkt. No. 151)**

Case is called.  Counsel state their appearances.

Defendants filed a motion for protective order.  (Dkt. No. 151.)  Plaintiffs filed an opposition.  (Dkt. No. 153.)  Defendants filed a reply.  (Dkt. No. 156.)  The matter came on for hearing on September 14 and 24, 2021.

I.      Defendants seek a protective order forbidding the production of (1) search warrants covering property owned by Plaintiffs and (2) affidavits and other materials in support of the applications for those search warrants.  Defendants represent that both the search warrants and the application materials are under seal by orders of the Los Angeles County Superior Court.  At the hearing, Plaintiffs explained that they may challenge the validity of the warrant.

Under California law, an executed search warrant generally "shall be open to the public as a judicial record."[1]  Cal. Penal Code § 1534(a).  Based on the record before the court, it is unknown whether the search warrants at issue have been executed completely.  At oral argument, it appeared that the warrants have been executed as to property that the Plaintiffs have identified as belonging to them.

In response to the court's inquiry, defense counsel represents that the search warrants at issue in the motion have been sealed by the Superior Court.  (*See also* Hernandez Decl. ¶ 6, Dkt.

---

[1]  The search warrant and supporting application materials are judicial records regardless of whether the original documents remain in the custody of the court or law enforcement agency. *See People v. Galland*, 45 Cal. 4th 354, 369-70 (2008) (describing legal standard).

**Exhibit A**
**18**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 20-09805-AB (AGRx) | Date | September 24, 2021 |
|---|---|---|---|
| Title | Christina Astorga v. County of Los Angeles, et al. | | |

No. 52.)

In addition, and in response to the court's inquiry, defense counsel represents that the affidavits and other materials in support of the search warrant applications at issue in the motion are subject to *Hobbs* sealing by the Superior Court. (*See also id.*) "[C]odified privileges and decisional rules together comprise an exception to the statutory requirement that the contents of a search warrant, including any supporting affidavits setting forth the facts establishing probable cause for the search, become a public record once the warrant is executed." *People v. Hobbs*, 7 Cal. 4th 948, 962 (1994). The *Hobbs* procedures apply to a request to seal portions of the affidavit(s) and materials filed in support of the application for a search warrant. *Id.* at 962-63, 971-75; *see also Galland*, 45 Cal. 4th at 369-70.

This court is persuaded that Plaintiffs must first file a motion to unseal the warrants and warrant applications in the Superior Court. This procedure would apply had the warrants been issued in federal criminal proceedings. In *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003), the Ninth Circuit ruled that the court that issued a protective order decides whether the documents should be unsealed or, if the documents are properly under seal, whether the protective order should be modified to permit access by a third party subject to the terms of the protective order. *Id.* at 1130-31. That court does not determine whether the party is actually entitled to discovery of the documents. The district court where the civil action is pending would make the decision under Rule 26(b)(1). The *Foltz* court stated that these procedures "preserve the proper role of each of the courts involved: the court responsible for the original protective order decides whether modifying the order will eliminate the potential for duplicative discovery. If the protective order is modified, the collateral courts may freely control the discovery processes in the controversies before them without running up against the protective order of another court." *Id.* at 1133. This court sees no reason to depart from the *Foltz* procedure when a search warrant and warrant application is sealed in the Superior Court.

In *Goldstein v. Long Beach*, 603 F. Supp. 1242 (C.D. Cal. 2009), the federal district court concluded that a party seeking state grand jury material was required first to petition the state court before seeking a federal ruling. *Id.* at 1252. In *United States v. Olson*, 2015 U.S. Dist. LEXIS 97136 (D. Nev. July 24, 2015), the issue was whether the district court could compel the Nevada Attorney General's office to produce documents sealed by the Nevada state court. *Id.* at *1. The magistrate judge refused to compel production under principles of federalism, comity, and abstention. *Id.* at *13-*14. The district court denied the motion to reconsider the magistrate judge's ruling and reasoned as follows:

> The issue here raises the competing concerns of the Supremacy
> Clause on the one hand, and federalism, comity, and the Full Faith

Exhibit A
19

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-09805-AB (AGRx) | Date | September 24, 2021 |
|---|---|---|---|
| Title | Christina Astorga v. County of Los Angeles, et al. | | |

and Credit Clause on the other.  There is no controlling authority directly on point.  However, the weight of the authorities generally supports requiring the requesting party to first ask the state court to unseal the documents.  The Ninth Circuit would likely adopt the same rule.  In *United States v. Henson*, the Ninth Circuit held that the federal district court was within its discretion to require the defendant to request the state court to unseal a probation report.  Additionally, in the unpublished case *Casler v. Bressler*, the Ninth Circuit held that the federal district court did not err in refusing to order an *in camera* review of a sealed state search warrant affidavit because the appellant failed to first ask the state court to unseal the affidavit.

*Id.* at *6 & nn. 23-25.[2]

Here, requiring Plaintiffs to first request that the Superior Court permit access to the warrants and warrant applications under seal makes sense for an additional reason.  It is not clear that the underlying criminal investigation focuses on Plaintiffs as opposed to third parties who are not before this court.  Requiring Plaintiffs to approach the state court first may create a more complete record even assuming Plaintiffs later return to this court for further relief after the state court's ruling.  Plaintiffs' reliance on case law involving the official information privilege or other privileges is inapposite.

Defendants agree to disclose the state search warrant numbers for the executed search warrants that are the subject of their motion so that Plaintiffs may seek relief in state court.  Otherwise, Defendants' motion for protective order will be granted without prejudice.[3]

---

[2] This does not mean that a party may refuse to produce an otherwise discoverable document merely because it was attached to a filing that was sealed by the state court.  *See Blight v. City of Manteca*, 240 F. Supp. 3d 1047, 1052 (E.D. Cal. 2016).  Here, however, Plaintiffs seek the search warrant affidavits themselves.  Moreover, *Blight* represents a minority view and is distinguishable in any event.  The state criminal investigation in this case may not be limited to plaintiffs and may involve third parties not currently before this court.

[3] Plaintiffs' arguments are difficult to follow.  On the one hand, Plaintiffs argue that Defendants should produce the warrants and warrant applications in their possession, custody and control.  On the other hand, Plaintiffs contended, at oral argument, that Defendants should not have the warrants or warrant applications in their possession, custody or control (in which case there would be nothing for the court to compel).  On yet another hand, Plaintiffs seek evidentiary sanctions for failure to produce the

Exhibit A
20

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-09805-AB (AGRx) | Date | September 24, 2021 |
|---|---|---|---|
| Title | Christina Astorga v. County of Los Angeles, et al. | | |

II.      Defendants have designated as confidential under the protective order videos of the protest on September 8, 2020 taken by the Los Angeles County Sheriff's Department ("LASD").  Plaintiffs object to the designation.

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted."  *Phillips v. GMC*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).  "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary."  *Id.* at 1211.  The Ninth Circuit has directed the courts to consider the *Glenmede* factors.  *In re Roman Catholic Archbishop*, 661 F.3d 417, 424 & n.5 (9th Cir. 2011) (quoting *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).  The factors are: "(1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public."  *Id.*  Finally, the court must consider the possibility of redacting sensitive material.  *Id.* at 425.

Plaintiffs cite a decision from this district that denied protection for a video that depicted only the plaintiff and already-identified officers.  That court pointed out, however, that the "disclosure of some law enforcement videos may well result in 'specific prejudice or harm,' as where disclosure would compromise an ongoing criminal investigation, betray some secret law enforcement strategy or technique, reveal the identity of a confidential informant or an undercover officer, unduly invade the privacy of bystanders or other unidentified third parties or expose the inside of a police station or detention facility in a manner so as to jeopardize security therein."  *Chinaryan v. City of Los Angeles*, CV 19-9302 DMG (Ex), Dkt. No. 36 at 2 (C.D. Cal. June 11, 2020).

Defendants argue that good cause is shown because the videos depict private persons who are third parties.  This showing alone is insufficient.  *See In Re Roman Catholic*, 661 F.3d at 425-26 (rejecting presumption of good cause for third parties).  Unlike *In Re Roman Catholic*,

warrants and warrant applications.  All such requests for sanctions are denied at this stage of the proceedings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-09805-AB (AGRx) | Date | September 24, 2021 |
|---|---|---|---|
| Title | Christina Astorga v. County of Los Angeles, et al. | | |

the third parties are not before the court. The court has reviewed the two videos. They depict an incident that occurred in public, and for the most part it is difficult to discern the identities of any private third persons with the exception of one or two persons who are themselves taking photos or filming the incident. The *Glenmede* factors do not favor designation as confidential. Defendants make no showing that producing the videos without a confidential designation would compromise any ongoing criminal investigation. Defendants' motion for protective order is denied.

III. Defendants have designated as confidential under the protective order arrest reports of third parties. Plaintiffs object to the designation.

Although Plaintiff argues that the LASD has publicly disclosed these arrest reports, counsel's declaration states that he obtained two reports from a unidentified "third party" who claimed that she obtained them directly from the LASD under circumstances that are not disclosed. At oral argument, Plaintiffs' counsel explained that the third party represented herself as an attorney for a person who was attempting to retrieve his property. Disclosure to an attorney in such a situation is hardly the equivalent of public disclosure.

Plaintiffs acknowledge that some information on the arrest reports should be redacted pursuant to Fed. R. Civ. P. 5.2(a)(2) and Local Rule 5.2-1. (Cook Decl. ¶ 4.) *See also Glazier v. Cnty. of Los Angeles*, 2021 U.S. Dist. LEXIS 117487 (C.D. Cal. June 22, 2021) (authorizing redaction of sensitive information of third parties in arrest reports). Defendants may designate as confidential pages of the arrest reports that contain information not otherwise made public consistent with Cal. Gov't Code § 6254(f)(1). A confidential designation for sensitive third party information in the arrest reports appropriately balances a third party's privacy interest and Plaintiffs' need for the production of the arrest reports for purposes of his class certification motion.

IV. ORDER

IT IS ORDERED that Defendants' motion for protective order is GRANTED IN PART AND DENIED IN PART as follows:

1. Within seven days after entry of this order, Defendants shall disclose the state search warrant numbers for the executed search warrants that are the subject of their motion for protective order. Except as provided herein, Defendants' motion for protective order is granted without prejudice.

2. Defendants' confidential designation of the two videos is removed.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-09805-AB (AGRx) | Date | September 24, 2021 |
|----------|------------------------|------|--------------------|
| Title | Christina Astorga v. County of Los Angeles, et al. | | |

3.  Defendants may retain the confidential designation on pages of the arrest reports that contain sensitive information about third parties that have not been made public.

4.  All requests for sanctions are denied.

IT IS SO ORDERED.

cc: District Judge Andre Birotte Jr.

|  | 0 | : | 40 |
|--|---|---|-----|
| Initials of Preparer | kl | | |

# EXHIBIT B

## DECLARATION OF EDUARDO HERNANDEZ

I, Eduardo Hernandez, declare as follows:

1.      If called upon as a witness, I could and would competently testify to the following facts as personally known to me or upon information and belief.

2.      I am employed by the Los Angeles County Sheriff's Department ("LASD") as a Captain, currently assigned to the Major Crimes Bureau.

3.      I am informed and believe that the four Plaintiffs in this action (Christina Astorga, Ryan Dodson, Kiyoko Dodson and Hugo Padilla) allege that the LASD has unlawfully failed to return to them certain items of personal property that were allegedly booked into custody in conjunction with arrests related to the South Los Angeles Station protest on September 8, 2020 and the West Hollywood Station protest on September 25, 2020.  Based on my review of pertinent LASD incident reports, I have determined there were 17 arrests at the September 8 protest and seven arrests at the September 25 protest.

4.      Various items of evidence were booked into custody related to these arrests.  Many items have been returned, while some are being held for evidentiary purposes in an ongoing criminal investigation.

5.      Property and evidence coming into possession of LASD personnel are accounted for and processed.  Items of possible evidentiary value are carefully handled and booked into evidence.  All such items are stored in a secure manner in a secure facility.

6.      Generally, property not held originally as evidence or no longer needed as evidence is to be released to the legal owner provided doing so does not violate the law or LASD policy.  When appropriate, property shall be physically released by the watch commander or the property custodian. Investigating LASD personnel having case responsibility for the seized property may be designated to physically release the property to the owner.  The owner

1  shall present satisfactory evidence of identification prior to the release of the

2  property.

3       7.    I am informed and believe that Plaintiff Hugo Padilla alleges his

4  bicycle was booked into evidence and not returned to him.  On or about

5  December 8, 2020, Padilla's bicycle was released to him.

6       8.    I am informed and believe that Plaintiffs Christina Astorga, Ryan

7  Dodson and Padilla allege their cellphones were booked into evidence and not

8  returned to them.  Cellphones booked into evidence related to the September 8

9  and 25 arrests, that are currently being held, are part of an ongoing criminal

10  investigation.

11       9.    I am informed and believe that Plaintiffs Astorga, Kiyoko Dodson

12  and Padilla alleges that various items such as military grade googles, a bicycle

13  helmet and a gas mask were booked into evidence and not returned to them.

14  Such category of items, that are currently being held, are part of an ongoing

15  criminal investigation.

16       10.   I am informed and believe that Plaintiff Kiyoko Dodson alleges that

17  her camera, video camera and accessories have been booked into evidence and

18  not returned.  Such category of items, that are currently being held, are part of an

19  ongoing criminal investigation.

20       11.   I am informed and believe that Plaintiff Ryan Dodson alleges that

21  various tools, including an industrial leaf blower, were booked into evidence and

22  not returned.  Such category of items, that are currently being held, are part of an

23  ongoing criminal investigation.

24       12.   Items currently being held as part of an ongoing criminal

25  investigation will be released to their owners when it is determined the items do

26  not have any evidentiary value.

27       13.   I am informed and believe that Plaintiffs Ryan Dodson and Kiyoko

28  Dodson allege that they each had $500 in cash in Ryan Dodson's vehicle when it

**Exhibit B**

26

1   was impounded after his September 25 arrest that was not returned to them.

2   When currency is recovered, it is counted and recorded.  There is no record of

3   such amounts of cash having been recovered from Ryan Dodson's vehicle.

4          14.    The statement in my November 19, 2020 declaration that Kiyoko

5   Dodson was amongst those individuals arrested on September 25, 2020 (Dkt No.

6   26 at p.10:8-10) was mistaken.  Based on my further review of the pertinent

7   LASD reports, I have determined that she was not arrested on that day and

8   therefore would not have had her personal property released to her upon her

9   release from custody; however, I am informed and believe that she alleges that

10  various items belonging to her were in Ryan Dodson's vehicle, which was

11  impounded after his September 25, 2020 arrest.

12

13         I declare under penalty of perjury under the laws of the State of California

14  that the foregoing is true and correct.

15         Executed on January 6, 2021, at Whittidy, Cahfoijjnia.

16

17                          Eduardo Herriandez

18

19

20

21

22

23

24

25

26

27

28

**Exhibit B**
**27**