**COLLEEN FLYNN**, CSB 234281
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA  90010
(213) 252-9444 / (213) 252-0091 facsimile
E-mail: cflynnlaw@yahoo.com

**PEDRAM ESFANDIARY**, CSB 312569
**MONIQUE ALARCON**, CSB 311560
BAUM HEDLUND, ARISTEL, & GOLDMAN, P.C.
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
(310) 207-3233 / (310) 820-7444 facsimile
Email: pesfandiary@baumhedlundlaw.com
Email: malarcon@baumhedlundlaw.com

**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Ste. 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
Email: manncooklaw@gmail.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ASTORGA, an individual, on behalf of herself and as class representative; HUGO PADILLA, an individual, on behalf of himself and class representative; RYAN MICHAEL DODSON, an individual, and KIYOKO DODSON, an individual, on behalf of themselves and as class representatives, | Case No. 2:20-cv-9805 AB (AGRx) |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS** |
| vs. | Date: Oct. 29, 2021<br>Time: 10:00 a.m.<br>Ctrm: 7B |
| COUNTY OF LOS ANGELES, a municipal corporation; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity; SHERIFF ALEX VILLANUEVA, an individual; ALL CITY TOW GIRL LLC, a California corporation; and Does 1 through 10, all sued in their individual capacities, | |
| Defendants. | |

00147224.WPD

1
2

# TABLE OF CONTENTS

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.     Overview and Why Defendants' Motion Should Be Denied.  . . . . . . . . . . . . . . 6

II.    Defendants' Argument LASD Is Not A Proper Defendant Should Subject Them To
       Sanctions.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.   Plaintiffs' Official Capacity Claims Against Villanueva Are Proper.  . . . . . . . 10

IV.    Defendants' Argument For Dismissal of Plaintiffs' Claims Under the California
       Constitution Is Disingenuous and Without Merit.  . . . . . . . . . . . . . . . . . . . . . 11

V.     Plaintiffs' §52.1 Claim Should Stand.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI.    Conclusion.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

00147224.WPD

Table of Authorities

Page(s)

***Cases***

*Brandon v. Holt*,
　　469 U.S. 464 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brown v. State of New York*,
　　89 N.Y.2d 172 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Caldwell v. Porch*,
　　2012 WL 4356204 (C.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Degrassi v. Cook*,
　　29 Cal.4th 333 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Entick v. Carrington*,
　　19 Howell's State Trials 1029 (1765) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Garcia v. County of Los Angeles*,
　　2014 WL 6896037 (C.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Hervey v. Estes*,
　　65 F.3d 784 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Karim-Panahi v. Los Angeles Police Dept.*,
　　839 F.2d 621 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 10

*Katzberg v. Regents of the University of California*,
　　29 Cal.4th 300 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-16

*Kelley Property Development, Inc. v. Town of Lebanon*,
　　226 Conn. 314 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kentucky v. Graham*,
　　473 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*MHC Financing Limited Partnership Two v. City of Santee*,
　　182 Cal.App.4th 1169 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Morales v. City of Delano*,
　　2010 WL 2942645 (E.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Oakland Paving Co. v. Hilton*,
　　69 Cal. 479 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Reese v. County of Sacramento*,
　　888 F.3d 1030 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 24

00147224.WPD

*Silva v. City of San Pablo,*
    2020 WL 1137946 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Smith v. L.A. County,*
    2008 WL 5210688 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Streit v. County of Los Angeles,*
    236 F.3d 552 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-10

*Sullivan v. County of Los Angeles,*
    12 Cal.3d 710 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Thompson v. County of Riverside,*
    2020 WL 8028607 (C.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Kama,*
    394 F.3d 1236 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Reese,*
    2 F.3d 870 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Vance v. County of Santa Clara,*
    928 F.Supp.993 (N.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Venegas v. County of Los Angeles,*
    32 Cal.4th 820 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

*Widgeon v. Eastern Shore Hosp. Center,*
    300 Md. 520, 479 A.2d 921 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wigfall v. City and County of San Francisco,*
    2007 WL 174434 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16


***Constitutions / Statutes / Rules of Court***

Cal. Civ. Code § 52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 16, 25

Cal. Const. (1849) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cal. Const., Art. I § 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 15, 16, 19

Cal. Const., Art. I § 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cal. Const., Art. I § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cal. Const., Art. I § 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

00147224.WPD

Cal. Const., Art. I § 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Const., Art. I § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cal. Const., Art. I § 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Cal. Gov't Code § 815.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Federal Rules of Civil Procedure 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Title 42, United States Code § 1983 . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 10, 14-16

U.S. Const., Amend. XI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

00147224.WPD

## I.      Overview and Why Defendants' Motion Should Be Denied.

Under 42 U.S.C. § 1983, Plaintiffs Christina Astorga, Hugo Padilla, Ryan and Kiyoko Dodson (husband and wife) sue for declaratory and injunctive relief, and damages for both property seizures (initial and continuing), unlawful arrests and the use of excessive force (against Astorga and Padilla). Their claims arise from Plaintiffs' participation in two demonstrations, carried out to protest police shootings of unarmed civilians, including shootings by Los Angeles County Sheriff's deputies. Defendants are the County of Los Angeles ("County"), the Los Angeles County Sheriff's Department ("LASD") and its Sheriff Alex Villanueva.

Plaintiffs' Second Amended Complaint ("SAC") (ECF 105) adequately states their claims against the defendants. It is proper for plaintiffs to have named Sheriff Villanueva as a defendant in his official capacity, as well as to name the LASD as a defendant separate from the County. Plaintiffs' state law claims under the California Constitution and Cal. Civil Code § 52.1 are also properly pleaded and cognizable as a matter of law. As such, defendants' motion must be denied.

## II.      Defendants' Argument LASD Is Not A Proper Defendant Should Subject Them To Sanctions.

Defendants argue that the LASD should be dismissed because it is not a proper defendant. ECF 166 @ 10:7-11:9.  In support, defendants cite non-binding district court decisions, none of which should be followed as plaintiffs discuss below.

Defendants' argument is frivolous. This issue was decided by the Ninth Circuit in *Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001) and controls here. In *Streit*, defendants included both the County of Los Angeles and the LASD, each sued separately. LASD argued it should be dismissed because it was not a proper defendant. 236 F.3d at 565. The Ninth Circuit rejected the argument, holding that "the LASD is a separately

suable entity," properly named as a defendant. 236 F.3d at 565-66.[1] *See also Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988).

Defendants and their counsel know about *Streit*. The County and LASD were defendants in *Streit*. The defense law firm that represents defendants here, also represented them in *Streit* (under the firm's former name). So defense counsel had no excuse not to have at least mentioned *Streit* in their motion, let alone their failing to tell the Court why it should not follow that decision. The Court may want to consider imposing an appropriate sanction for counsel's violations of his duty owed to the Court.

Moreover, given Ninth Circuit law, it is unsurprising that last year the Ninth Circuit reversed a district court for doing what defendants here urge this Court do. *Silva v. City of San Pablo,* 2020 WL 1137946 (9th Cir. 2020) @ *2: "The Ninth Circuit has squarely held that, depending on state law, a local law enforcement agency can be a separately suable entity [*citing Streit*]."

The cases upon which defendants rely do not trump *Streit* and should not be followed.

● *Garcia v. County of Los Angeles*, 2014 WL 6896037 (C.D. Cal. 2014),[2] is an unreported trial court ruling. *Garcia* dismissed the complaint without prejudice because the plaintiff had alleged only conclusory allegations about the underlying incident, and because plaintiff had relied on the wrong authority for his cause of action (as an inmate, the Court found his excessive force claim was governed by the Eighth Amendment, not the Fourth Amendment as alleged in the complaint). *Id.* at *7. The court dismissed with prejudice any cause of action against the Los Angeles County Sheriff's Department relying on a 1996 district court case which held "departments and bureaus within those municipalities (e.g. police or sheriff's departments) are not considered 'persons' within

---

[1] As Plaintiffs explained in their SAC, there are specific reasons for separately naming the LASD as a defendant. See ECF 105 @ 2:25-3:18.

[2] Defendants mis-cited the case as 2014 WL 696037 (ECF 166 @ 10:17).

00147224.WPD

the meaning of [§1983].  *Id.* at *9 (*citing Vance v. County of Santa Clara*, 928 F.Supp.993, 996 (N.D. Cal. 1996)). *Vance* is a district court decision and it *pre-dates* the Ninth Circuit's *Streit* decision. It is also unclear from the *Garcia* ruling if the plaintiff brought the *Streit* case to the court's attention. Moreover, though *Kentucky v. Graham*, 473 U.S. 159 (1985) (also cited in *Garcia*) states "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" (473 U.S. at 166), as plaintiffs set forth in their SAC, there is sound reason to name the LASD as a separate defendant. See ECF 105 @ 2:25-3:18. Further, *Kentucky v. Graham* does not bar the naming of a sheriff's department as a defendant (for if it did, *Streit* would have to have been overturned).

● *Thompson v. County of Riverside*, 2020 WL 8028607 (C.D. Cal. 2020) is the report and recommendation by the magistrate judge. Like *Garcia*, it is unclear if the *Thompson* plaintiff, who was in *pro per,* brought the holding of *Streit* to the court's attention. Further, the court there found there were no specific allegations against the Department, what allegations there were, were insufficient for purposes of Rule 8, and that the plaintiff had really only pleaded vicarious liability. *Id.* at *13-14.

● *United States v. Kama*, 394 F.3d 1236, 1239 (9th Cir. 2005) (also mis-cited by defendants as United States v. *Karma*). This was an appeal of the district court's decision to deny the appellant's motion to return property. The appellant failed to address the threshold issue of whether the district court abused its discretion in declining to exercise its equitable jurisdiction which made his arguments on the merits moot, so the Ninth Circuit affirmed. *Id.* at 1237. The concurrence (relied upon by the other cases defendants herein cite) states the Portland Police Bureau "is not a 'person' within the meaning of the federal Controlled Substances Act ("CSA"), 21 U.S.C. §801 et seq." *Id.* at 1239. Under the CSA the DEA could enforce penalties against "persons," so the issue was whether the Bureau from whom the DEA was taking property, was a person under the statute. *Id.* at 1239. There was no issue in the case concerning the suing a police department under § 1983 (or suing a police department at all, for that matter). Judge Pregerson only wrote

00147224.WPD

the concurrence "to underscore the District Court's disruption of state judicial administration in this case" because it granted a seizure warrant to the DEA allowing it to seize marijuana from the Police Bureau and thereby preventing the Bureau from enforcing a valid state court order. *Id.* The quotation that *Kama* states – "[M]unicipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983" (394 F.3d at 1239-1240) – is actually attributed to *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995) which pre-dates both *Streit* and *Karim-Panahi*. Thus, any claim that *Kama* stands for the proposition that the sheriff's department cannot be sued as a separate entity is just wrong.

- *Smith v. L.A. County*, 2008 WL 5210688 (C.D. Cal. 2008) is also mis-cited by defendants as 2008 U.S. Dist. LEXIS 110059 (C.D. Cal. 2008). This case, also an unpublished decision with a pro per plaintiff, includes no mention of *Streit*. Therein the sheriff's department was dismissed because of the failure to allege any "allegations setting forth a policy or practice that was a moving force of the alleged constitutional violation." *Id.* at *7. It improperly relies on the *Kama* case and confusingly makes inconsistent points about the department's sue-ability by first stating the department is not a proper defendant because it is "duplicative" of a case against the County, but then also states, "the Sheriff's Department *is* a proper defendant in this action only if the Court considers the claims against it to be claims against the County." *Id.* at *9.

- *Morales v. City of Delano*, 2010 WL 2942645 (E.D. Cal. 2010) is another unpublished trial court ruling. This was a police shooting case where the court stated "The Ninth Circuit's last word on the subject [whether a municipal agency is amenable to suit] was in [*Kama*]" and characterizes the Ninth Circuit's statements on the issue as a "holding." *Id.* at *3. What was stated in *Kama* was *not* a holding and as discussed above should not have been relied on for the proposition that a policy agency cannot be sued as a defendant under §1983. Also, *Morales* further claims *Kama* is "on point" which that could not be further from reality. *Kama* had nothing at all to do with whether or not a sheriff's department or other police agency could be named as a separate suable entity in

a § 1983 action. Further, though the district court in *Morales* acknowledges *Streit* and *Karim-Panahi* (calling it "Karim-Panachi") in a footnote, it misconstrues the *Streit* holding. It claims *Streit*'s holding that LASD was a separate, suable entity had only to do with its actions in managing the jail. *Id.* at *3, fn1. That is incorrect. *Streit*'s holding that LASD was a separate suable entity had to do with its reliance on California law stating a public entity may be sued, and defining a police agency as a public entity. *Streit*, 236 F.3d at 565. *Streit*'s reference to "managing of the jails" had to do with the claim by the County in that case that it was entitled to 11th Amendment immunity because it was supposedly acting for the State in that capacity. *Streit* rejected that claim. 236 F.3d at 561-64. Thus, *Streit's* holding that the Sheriff's Department is a separate suable entity from the County itself, was not reliant on any determination of the conduct at issue in the case.

● *Caldwell v. Porch*, 2012 WL 4356204 (C.D. Cal. 2012) is another unpublished decision concerning a prisoner plaintiff in pro per. It should not be followed because it wrongly relies on *Morales* and *Kama*, and includes no mention of *Streit* or *Karim-Panahi*.

The LASD should therefore remain a defendant in the case.

**III.    Plaintiffs' Official Capacity Claims Against Villanueva Are Proper.**

Naming the Sheriff in his official capacity is necessary for two reasons. First, officials sued in their official capacities do not have a qualified immunity defense. *Brandon v. Holt*, 469 US 464, 472-73 (1985). So while the Sheriff might be entitled to qualified immunity as an individual defendant, he would not as an official of the County. The second reason ties in with the reason for naming the Sheriff's Department as a separate defendant from the County (as explained in the SAC, ECF 105 @ 3:10-18). The California Supreme Court, in *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 828-39 (2004), disagreed with the Ninth Circuit's holding in *Streit, supra* that California sheriffs are agents of their employing county for § 1983 purposes, holding instead that a California sheriff is not an agent of his employing county for purposes of § 1983 liability. Should it ultimately be determined that *Venegas* correctly states the law on this point,

00147224.WPD

Villanueva will nevertheless remain a policymaker for his own department, defendant LASD. Since defendant LASD is *not* an arm of the state for purposes of immunity under the Eleventh Amendment (see *Streit*, 236 F.3d at 556-57), Plaintiffs can still prevail against Villanueva in his official capacity and defendant LASD notwithstanding *Venegas*.

That said, inclusion of the Sheriff in his official capacity is unnecessary *if* defendants do not contest the entity defendants (County of Los Angeles and Los Angeles Sheriff's Department) as proper parties on the injunctive relief claim. Plaintiffs sued the Sheriff only on the injunctive relief claim in order to ensure there is a proper party against whom to seek injunctive relief. If the entity defendants do not dispute that an injunction could be issued against them, then the Sheriff as a defendant in his official capacity, is unnecessary.

## IV.    Defendants' Argument For Dismissal of Plaintiffs' Claims Under the California Constitution Is Disingenuous and Without Merit.

Plaintiffs bring claims under the California Constitution, Article 1, §§ 2[3], 3[4], 7[5], and 13[6] (ECF 105 @ 23:2-16). As is *clearly* stated therein:

> Defendants' above-described conduct violates Plaintiffs' rights under the California Constitution, Article I, §§2, 3, 7, 13 for which Plaintiffs are entitled to damages where available, and violates class members' rights

---

[3]  "Every person may freely speak, write and publish his or her sentiments on all subjects."

[4]  "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good."

[5] "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws."

[6]  "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized..."

under the California Constitution, Article I, §§2, 3, 7 and 13 for which class members are entitled to declaratory and injunctive relief.

SAC @ ¶99.

Though the complaint states unequivocally that these claims seek "declaratory and injunctive relief" and "damages where available," defendants' entire argument claims (falsely) that the claims – in their entirety – should be dismissed because money damages are not available, and because the "cause of action is not cognizable as a matter of law." See ECF 166 @ 11:16 ("Not cognizable as a matter of law"), 11:21 ("right to seek damages" re §2), 11:28 ("money damages is not an appropriate remedy" re §3), 12:4 ("money damages" re §7), and 12:9 ("no basis for fashioning a new tort remedy" re §13).

Defendants' argument is wrong on several counts. First, there is no basis to claim that a claim of a California Constitutional law violation is not cognizable as a matter of law. Such a claim may be made. All provisions of the California Constitution are self-executing. Cal. Const., Art. I § 26; *Katzberg v. Regents of the University of California*, 29 Cal.4th 300, 306 (2002); *Oakland Paving Co. v. Hilton*, 69 Cal. 479, 484 (1886). Therefore, Art. I §§ 2, 3, 7 and 13 at the very least support claims "for declaratory relief or for injunction."

Second, even if some courts have held money damages are not available for some state constitutional rights violations, injunctive relief is available. Even the cases upon which defendants rely say as much. "Furthermore, it is also clear that, like many other constitutional provisions, this section supports an action, brought by a private plaintiff against a proper defendant, for declaratory relief or for injunction." *Degrassi v. Cook*, 29 Cal.4th 333, 338 (2002) (regarding Article I, §2). "MHC [the plaintiff] had available to it the remedy of declaratory and injunctive relief." *MHC Financing Limited Partnership Two v. City of Santee*, 182 Cal.App.4th 1169, 1187 (2010) (regarding Art. I, §3). Plaintiff concedes that per *Katzberg*, only declaratory and injunctive relief are available on the § 7 claim.

Lastly, damages most certainly are available for the §13 violation.

00147224.WPD

*Katzberg* sets forth the analytical framework. 29 Cal.4th at 317. The first question is what the "available drafting history of the provision at issue and materials that were before the voters when they adopted the measure" reveal. *Katzberg*, 29 Cal.4th at 318.

The language of present Article I, § 13 appears identical to Article I, § 19 of the Constitution of 1849,[7] California's first Constitution, overwhelmingly ratified by the people of the State on November 13, 1849, by a vote of 12,872 to 811.[8] In 1974, as part of Proposition 7, section 19 was repealed and replaced by section 13, without changing the language.[9] The ballot arguments said nothing about section 13.[10] Counsel has not located any further history regarding section 13 or its antecedents. Defendants offer nothing at all.

The next source one should turn to is "any pertinent common law history." 29 Cal.4th at 317.  According to *Katzberg*, 29 Cal.4th at 310 fn.9, the large majority of those courts which have considered the question have concluded that " '[t]he prohibition against unlawful searches and seizures originated in the Magna Carta . . . . The civil cause of action was fully developed in England and provided a damage remedy for the victims of unlawful searches at common law.' " *Katzberg*, 29 Cal.4th at 322, quoting *Brown v. State of New York*, 89 N.Y.2d 172, 188 (1996). Apparently, the damage remedy may be traced to the well-known case of *Entick v. Carrington*, 19 State Tr. 1029, 1558-1774, All ER Rep. 41 (1765), "an Action of Trespass by JOHN ENTICK, clerk, against NATHAN

---

[7]  "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches, shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized."

[8]  See http://www.ss.ca.gov/archives/level3_const1849txt.html   and   http://www.ucop.edu/cprc/caconst.pdf.

[9]  http://library.uchastings.edu/ballot_pdf/1974g.pdf

[10]  *Id.* at pp. 28-29.

CARRINGTON and three other Messengers in Ordinary to the King."[11] " 'Legal scholars also have long taken the position that an unlawful search and seizure gives rise to a damages action against both the officer executing an illegal warrant and the official causing it to issue.... Fraenkel, *Concerning Searches and Seizures*, 34 Harv. L. Rev. 361, 363-364 (1921).' " *Katzberg*, 29 Cal.4th at 324 fn.20, quoting *Widgeon v. Eastern Shore Hosp. Center*, 300 Md. 520, 479 A.2d 921, 925 (1984).

In light of this history, the "pertinent common law" would seem quite clearly to support a damages remedy.

If necessary to go further, the next question is "the adequacy of existing remedies." *Katzberg*, 29 Cal.4th at 325. Unlike in *Katzberg*, remedial injunctive relief would not help these plaintiffs as they cannot request that the arrests, excessive force and property seizures be un-done, nor can they seek a Writ of Mandate to undo the facts they were unlawfully arrested, were victims of excessive force and their property was wrongfully held, both of which were available to the *Katzberg* plaintiff. 29 Cal.4th at 326-27.

While plaintiffs bring causes of action under 42 U.S.C. § 1983 and Cal. Civ. Code § 52.1, defendants argue the § 52.1 claim should be dismissed, and the § 1983 claim requires proof of *Monell* liability for the County and Department, and allows for the qualified immunity defense for the Sheriff sued as an individual.

There also would not appear to be any "special factors" counseling against providing a damages remedy to the victims of unlawful seizures and searches. *Katzberg*, at 329.

There would be no "adverse policy consequences," *id.*, at least not those identified in *Katzberg*, 29 Cal.4th at 329, fn.32; the defendants are not, for example, "laypersons with little or no technical expertise." *Kelley Property Development, Inc. v. Town of Lebanon*, 226 Conn. 314, 341-342 (1993).

There should not be any adverse effect on "governmental fiscal policy." *Katzberg*,

---

[11] http://www.constitution.org/trials/entick/entick_v_carrington.htm

00147224.WPD

29 Cal.4th at 329. The cost of compensating those whose property was unlawfully seized and who have been unlawfully arrested should not be great and easily should be avoidable.

There are no "practical issues of proof," and the courts have a proven "competence" to assess the "particular types of damages" occasioned by wrongful seizures.

Under the *Katzberg* analysis therefore, it appears that California's Constitution does provide a monetary damages remedy for unreasonable seizures and searches under Article I, §13.

Defendants' reliance on *Wigfall v. City and County of San Francisco*, 2007 WL 174434 (N.D. Cal. 2007) is misplaced because *Wigfall's* analysis is faulty. *Wigfall* involved two jail inmates who claimed a sheriff's deputy sexually harassed and assaulted them. The court first found that the plaintiffs therein had not presented any "dispositive evidence concerning intent" concerning whether it was originally intended that § 13 provided a damages remedy. *Id.* at *5. That was unsurprising since the *Wigfall* plaintiffs only presented the court with legislative history for § 7, not § 13. The *Wigfall* court thus did not discuss the legislative history Plaintiff presents at length here.

In the absence of legislative history for Art. I § 13, the *Wigfall* court looked to other remedies. The conduct, sexual harassment and assault, the court found, "triggers a panoply of criminal and civil actions under California law, many of which permit plaintiffs to recover money damages. Indeed, among Deputy Neu's many alleged violations of law, the "unreasonable seizure" of plaintiffs seems the least applicable." *Id.* at *5. The same cannot be said for the false arrests of and excessive force against plaintiffs and seizures of their property (which is the epitome of an unreasonable seizure claim). Nor is the conclusion that the *Wigfall* plaintiffs had "an equally effective monetary remedy under 42 U.S.C. § 1983" (*id.* at *6) applicable here, since 42 U.S.C. § 1983 requires a plaintiff to prove a *Monell* claim to hold the entity liable and allows for the qualified immunity defense, while Article I, section 13 can rely on *respondeat*

*superior* liability, and qualified immunity is not available. The rejection of a damages remedy under Art. I § 13 in *Wigfall* is clearly inconsistent with steps outlined in *Katzberg*. Therefore, *Wigfall* should not be followed.

Plaintiffs again inform the Court of the numerous district courts which have upheld similar damages claims under Art. I § 13. (**Exhibit A** hereto (*Smith v. County of Riverside*, EDCV05-0512 VAP); **Exhibit B** hereto (*Dorame v. County of Los Angeles*, CV05-4676 AHM); **Exhibit C** hereto (*Camarillo v. City of Maywood*, CV07-3469 ODW)); **Exhibit D** hereto (*Millender v. County of Los Angeles*, CV05-2298 DDP)); **Exhibit E** hereto (*Trujillo v. City of Maywood*, case no. CV06-2738 PA (VBKx)).

**V.  Plaintiffs' §52.1 Claim Should Stand.**

Like § 1983, Civ. Code § 52.1(c) requires a violation of an underlying right. But unlike § 1983, a violation of *any* state or federal right (statutory or constitutional) gives rise to damages provided the violation is accompanied by "threats, intimidation or coercion." *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (2004); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018). Thus a violation of Article I, §2, 3, 7 and/or 13 would be actionable through the §52.1 claim.

Defendants claim the allegations in the SAC are insufficient to demonstrate specific intent (ECF 166 @ 13:4). Plaintiffs urge the Court to consider the SAC as a whole and specifically these allegations:

[Astorga] saw LASD deputies shooting what she believes were rubber bullets and pepper balls at Plaintiff Astorga and others. The LASD fired these rounds without warnings.

SAC ¶19.

A nearby resident who saw what was happening opened the door to an apartment complex driveway and parking area which allowed Plaintiff and others to enter. Along with others Plaintiff Astorga entered, seeking refuge. [That is, plaintiff was "dispersing" and was trying to leave the area.] As she ran into the complex, without any warnings one or more deputies fired

projectiles at Plaintiff Astorga. Projectiles struck her on her left flank rear and left knee, inflicting significant injuries. . . .When the deputy(ies) fired the rounds, Plaintiff Astorga had not committed any crime and was not threatening harm to anyone.

SAC ¶20.

Plaintiff asked that they not bend her arm upwards because of a pre-existing injury, also telling the deputies she was a veteran. The male deputy said Plaintiff wasn't a veteran and added, sarcastically mocking Plaintiff, that "[She] like[s] to be arrested and like[s] to be handcuffed."

SAC ¶21.

Plaintiff Astorga saw a woman whose hands were bleeding; she was very upset. Plaintiff Astorga and others pleaded with the deputies, asking them to provide care to the woman. The deputies did nothing. Instead, deputies laughed, and took photos of the arrestees with what appeared to be the deputies' personal cell phones.

SAC ¶24.

A deputy, Deputy Luna, refused Plaintiff's request for face mask, responding sarcastically "sure, you'll get a mask."  Plaintiff Astorga was never provided a face mask.

SAC ¶25.

When Plaintiff Astorga was being processed for release . . . Missing from Plaintiff's backpack, however, were her military grade goggles that were in the backpack when she was arrested. . . . Plaintiff asked a deputy for her smartphone taken at the time of Plaintiff Astorga's arrest. The deputy stated Plaintiff would not get her smartphone until her court date.

SAC ¶27.

. . .someone with the LASD [accessed plaintiff's cell phone]. After Plaintiff's release and when she was unable to retrieve her smartphone, she

obtained a replacement. Upon logging onto her social media accounts, including the Instagram account she operates for "Wall of Vets – Los Angeles," Plaintiff saw that the profile description had been changed to "Blue Lives Matter #supportbluelives." Plaintiff is informed that LASD personnel made the change as they were the last ones in possession of Plaintiff's smartphone.

SAC ¶30.

Since Plaintiff's September 8, 2020 arrest, Plaintiff has not received any notice for anyone, including the LASD or the County, that her smartphone was being held or how or whom Plaintiff might contact to retrieve her smartphone.

SAC ¶32.

When the LASD broke up the protest at the corner of Imperial Highway and Normandie Avenue, LASD personnel shot hard projectiles, including pepper balls (small, hard balls covered in a peppery substance similar to pepper spray) and flash bang grenades at the crowd. The crowd dispersed, mostly fleeing into the neighborhood northeast of Imperial and Normandie.

SAC ¶33.

Plaintiff Padilla also left, riding his bicycle north on a street parallel to Normandie. Near Normandie and 110th Street as Plaintiff was riding his bicycle, livestreaming and providing a narrative on what he was observing, without any warning LASD personnel shot Plaintiff with a hard projectile. The projectile struck Plaintiff's knee, knocking him off his bicycle and onto the ground. (This was captured on video.) Deputies then jumped on Plaintiff, with one of them striking him in the face. The punch busted Plaintiff's lip open and it began to bleed. Deputies handcuffed Plaintiff while nearby, LASD personnel arrested other people. The deputies put handcuffs on Plaintiff far too tightly, causing Plaintiff pain and injury. For weeks after

00147224.WPD

Plaintiff's arrest, there were still marks on his wrists from the handcuffs. SAC ¶34.

Deputies were laughing and making fun of Plaintiff Padilla and others in the truck. It also appeared to Plaintiff that the deputies, using their personal cell phones, were taking photos of those in the truck.

SAC ¶37.

Plaintiff asked the deputies if they had not yet picked up his phone, to retrieve it. They responded by laughing.

SAC ¶38.

LASD did not return to Plaintiff Padilla the rest of his property, or inform him how to retrieve the property. Plaintiff's property not returned was: iPhone X cell phone (the phone in Plaintiff's pocket); one Samsung S8 cell phone (the phone Plaintiff was using to livestream); one white Diamondback bicycle with basket; one bicycle helmet; and other miscellaneous items in Plaintiff's backpack. Plaintiffs are informed and believe and based thereon alleges that LASD personnel seized and held these property items without a warrant or other judicial review.

SAC ¶44

Plaintiff Padilla is informed and believes and based thereon alleges that LASD officials issued him the citation even though officials knew, in fact, there was not probable cause for Plaintiff's arrest, as confirmed by the LASD notifying the California Department of Justice that Plaintiff's arrest was a "detention only" which is police-speak for no probable cause.

SAC ¶46.

When he went to the LASD Central Property building on December 9 to pick up his property the LASD only returned his bicycle.

Upon his arrest and booking, Plaintiff Padilla provided the LASD personnel a valid mailing address. To this day, Plaintiff has not received any notice for

anyone, including the LASD or the County, that his smart phones are being held or how Plaintiff might retrieve his property.

SAC ¶¶48-49.

An LASD armored transport then pulled up and stopped in front of Mr. Dodson's Truck. Deputies ordered Mr. Dodson out of his Truck; Mr. Dodson peacefully and promptly complied. The deputies rushed Mr. Dodson, seizing him as they roughly slammed him up against his Truck. Deputies searched and handcuffed him, before placing him in a patrol car. LASD deputies transported Ryan Dodson to the West Hollywood station where he was booked and jailed (booking number 6019287). Deputies also directed that his Truck be seized. Without a warrant or other judicial review, LASD deputies directed that All City Tow, the LASD's contract towing and vehicle storage agent, seize and store the Truck.

SAC ¶¶51-52.

Upon his release LASD did not return to Ryan Dodson any of his personal property, including his smartphone, that was inside the Truck when LASD seized it the day before. Moreover, during his booking Ryan Dodson provided a valid mailing address. Except for the Dodsons' Truck, at no time since Ryan Dodson's arrest has the LASD or anyone else provided any notice to the Dodson Plaintiffs of the property the LASD seized when the LASD arrested Ryan Dodson, or how they might reclaim their property.

SAC ¶56.

Personnel from All City Tow and the Entity defendants told Plaintiffs that neither the Truck nor the items of personal property would be released; that they were supposedly subject to an "evidence hold." For what crime or crime, defendants refused to say.

SAC ¶58.

A few days after the impound, Ms. Dodson was able to leave LASD Sgt.

00147224.WPD

Yokum a voice mail mentioning that there was no need for the LASD to keep these items, which included her clothes and underwear.

. . .a few days after leaving the voice mail for Sgt. Yokum, Ms. Dodson walked out her front door to find a pair of her unwashed underwear, which had been in a Deery Lou bag in the Truck, in the custody of the LASD, on a chair on her front porch.

SAC ¶¶57-58.

Plaintiffs contacted defendants, repeatedly seeking the release of Plaintiffs' property. Defendants refused to do so, claiming that the property was supposedly "evidence." Even though the Dodson Plaintiffs' attorneys informed the Entity defendants and Villanueva that the continuing withholding of Plaintiffs' property without a warrant or an exception to the warrant requirement violates Plaintiffs' Fourth and Fourteenth Amendment rights, defendants (Plaintiffs are informed) ignored their constitutional obligation to seek any judicial review, refuse and continue to refuse to provide Plaintiffs any means by which they can contest defendants' ongoing refusal to release Plaintiffs' property, and refusal to seek judicial review.

SAC ¶59.

Plaintiffs are informed and believe and based thereon allege that on or before September 8, 2020, one or more policy makers for LA County and/or LASD, decided that LASD personnel could and should arrest individuals present at demonstrations that LASD had declared unlawful, without regard to evidence showing that the individuals had failed to disperse or had committed unlawful acts that justify arrest.

SAC ¶63.

Plaintiffs are informed and believe and based thereon allege that on or before September 8, 2020, one or more policy makers for LA County and/or LASD, also decided that for persons as described above, those persons could

and should be subjected to serious injuring force like that directed against the person without any warning, even though (a) the person had not committed a crime, (b) was not fleeing, and (c) was not threatening harm to anyone.

SAC ¶64.

Plaintiffs are further informed and believe and based thereon allege that beginning on or before September 8, 2020 and continuing up through the present, one or more policy makers for LA County and/or LASD, decided that for persons arrested as described above, the LASD should take and withhold the person's personal property – particularly smartphones – and not release or return the property to the owners upon their release from custody. Plaintiffs are informed and believe that the pretextual reason LASD decided upon to refuse to return persons' property, was that the property would be held as potential "evidence" for a purported "ongoing criminal investigation."

SAC ¶65.

In fact, Plaintiffs are informed and believe that LASD personnel know that the property the LASD is withholding is not evidence of crime, nor is there any "ongoing criminal investigation" concerning any Plaintiff or class member. Instead, the true reason for LASD's refusal to return to persons their property the LASD seized -- Plaintiffs Dodson's Truck and its contents, all Plaintiffs' and class members' smartphones and other items of personal property, is to punish Plaintiffs and class members for having exercised their free speech rights in protest of police violence, including LASD shooting deaths of Los Angeles residents. Plaintiffs are informed and believe and based thereon allege that LASD supervisory personnel were and are retaliating against Plaintiffs and class members because these supervisors, aware that the Los Angeles County District Attorney office

00147224.WPD

would not file criminal charges against Plaintiffs and class members, in order to punish Plaintiffs and class members for having exercised free speech rights.

SAC ¶66.

Plaintiffs are informed and believe that LASD personnel decided upon a course of conduct to inflict summary punishment on protesters by (a) subjecting protesters to serious injuring force without justification; (b) arresting and booking protesters on charges for which LASD officials knew they did not have probable cause; (c) refusing to promptly release the protesters on "cite and release" citations ordinarily required by LASD policy, choosing instead to deliberately prolong their incarcerations; and (d) refusing to return to the protesters upon their release their property the LASD had seized without a warrant or other judicial review.

SAC ¶67.

Further evidence of defendants' intent to retaliate against Plaintiffs and other protesters are defendants' actions taken after Plaintiffs commenced the present lawsuit. Rather than promptly return to Plaintiffs their property that LASD seized and continues to hold without warrant or other judicial review, defendants (with the connivance of their attorneys) falsely claimed that the LASD was and is holding the property for a purported "ongoing criminal investigation." In fact, there was and is no ongoing criminal investigation as to any of the Plaintiffs. Furthermore, as to any of the class members whose property the LASD continues to hold, there is no ongoing criminal investigation because the LASD, in fact, does not know to whom the property belongs.

SAC ¶68.

Thus, defendants' claim of "ongoing criminal investigation" is a pretext defendants (and their attorneys) offered to coverup the true reason for the

00147224.WPD

ongoing refusal to return to Plaintiffs and class members their property --
defendants deliberately failed and refused to track to whom the property
items LASD seized belong. But rather than acknowledge the LASD's
failures or refusals to properly book protesters' property, defendants (and
their attorneys) have fabricated a claim of "ongoing criminal investigation."

SAC ¶69.

Plaintiffs are informed and believe that the LASD's ongoing refusal to (a)
return to persons their property the LASD seized -- in particular
smartphones -- (b) seek judicial review for justification for continuing to
withhold the property from the owners, and (c) provide notice and
opportunity for the property owners to contest the continued withholding of
their property, has been approved and/or ratified by one or more policy
makers for LA County and/or LASD.

Plaintiffs informed and believe and based thereon allege that one of the
policy makers referenced above, is defendant Villanueva.

SAC ¶¶70-71.

On defendants' motion the Court assume these allegations are true. *General
Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congressional
Church*, 887 F.2d 228, 230 (9th Cir. 1989). Taken as true, the allegations satisfy the
"specific intent" element for "it is not necessary for the defendants to have been 'thinking
in constitutional or *legal terms* at the time of the incidents, because a reckless disregard
for a person's constitutional rights is evidence of a specific intent to deprive that person
of those rights.' " *Reese*, 888 F.3d at 1045 (quoting *United States v. Reese*, 2 F.3d 870,
885 (9th Cir. 1993) (emphasis in original)).

For these acts the County is liable under respondeat superior. Cal. Gov't Code
§ 815.2(a); *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 717-19 (1974) (Under §
815.2(a), county is liable for overdetaining the plaintiff).

00147224.WPD

1  **VI.    Conclusion.**

2          The SAC adequately pleads all its causes of action, including those pursuant to Cal.

3  Civil Code § 52.1 and the California Constitution. Moreover, the LASD and Sheriff

4  Villanueva in his individual capacity, are both proper defendants. Defendants' motion

5  should therefore be denied in its entirety.

6  DATED: October 8, 2021

7                        **COLLEEN FLYNN**
                         **PEDRAM ESFANDIARY**
8                        **MONIQUE ALARCON**
                         **DONALD W. COOK**
9                        Attorneys for Plaintiffs

10

11  By

                         Donald W. Cook

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00147224.WPD





THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DONETTE MARIE SMITH, an ) Case No. EDCV 05-512-
individual, ) VAP(SGLx)
                    )
          Plaintiff, ) [Motions filed on April 7,
                    ) 2006, and April 21, 2006.]
     v.             )
                    ) ORDER (1) GRANTING IN PART
COUNTY OF RIVERSIDE, a ) AND DENYING IN PART
local public entity, et ) DEFENDANTS CITY OF
al.                 ) RIVERSIDE'S, RIVERSIDE
                    ) POLICE DEPARTMENT'S, AND
          Defendants. ) DAVID JOHANSON'S MOTION TO
                    ) DISMISS; (2) GRANTING
                      SUPERIOR COURT OF
                      CALIFORNIA, COUNTY OF
                      RIVERSIDE'S MOTION TO
                      DISMISS

     Defendants City of Riverside's, Riverside Police

Department's, and David Johanson's Motion to Dismiss and

Defendant Superior Court of California, County of

Riverside's separate Motion to Dismiss came before the

Court for hearing on May 15, 2006.  After reviewing and

considering all papers filed in support of, and in

opposition to, the Motions, as well as the arguments

advanced by counsel at the hearing, the Court GRANTS IN

1  create a new cause of action, thus altering established
2  tort law in California.   Accordingly, the Court grants
3  City Defendants' Motion to Dismiss Plaintiff's Claim
4  under Article I, section One of the state Constitution.
5  The Claim is dismissed without leave to amend, as
6  amendment would be futile.
7
8      **2.    Article I, section Thirteen (Illegal Search and**
9            **Seizure)**
10     The section of the state Constitution states, in
11  relevant part:
12     The right of the people to be secure in their
13     persons, houses, papers, and effects against
14     unreasonable seizures and searches may not be
15     violated . . .
16  Cal. Const. art 1, § 13.
17
18     Plaintiff points out that the Katzberg court
19  suggested that there should be a damages remedy for
20  unlawful searches and seizures under Article I, section
21  thirteen.   [Opp'n to City at 8.]   Indeed, in Katzberg the
22  court specifically contrasted the rights flowing to a
23  victim of an illegal search and seizure with the remedies
24  available for a victim of the constitutional section at
25  issue in its case, Article I, Section 7(a) (due process
26  liberty rights).   29 Cal. 4th at 321-24.
27  ///
28

18

1   The court cited from an opinion from the New York
2   Court of Appeals, <u>Brown v. New York</u>, 674 N.E. 2d 1129,
3   1139 (1996), that found "historical support for an
4   implied remedy in damages" for unlawful searches and
5   seizures.  <u>Katzberg</u>, 29 Cal. 4th at 323.   The California
6   Supreme Court noted that the New York court found that
7   the prohibition of unlawful searches and seizures
8   originated in England in the Magna Carta, and that
9   English law "'provided a damage remedy for the victims of
10  unlawful searches at common law.'"  <u>Id.</u> at 322 (quoting
11  <u>Brown</u>, 674 N.E. 2d at 1139).

12

13  The California Supreme court noted that, in addition
14  to the New York high court, the high courts of Maryland
15  and Louisiana had used "[s]imilar reasoning" to support
16  "an action for damages to remedy a search and seizure
17  violation . . . ." <u>Katzberg</u>, 29 Cal. 4th at 323.   The
18  court then wrote that its holding that there was no
19  damages remedy to a violation of the constitutional
20  section at issue in its case (Article I, section 7(a))
21  was based in part on the fact that "[t]he parties have
22  not cited, nor have we found, any similar history with
23  respect to the liberty interest set out in article I,
24  section 7(a)."

25

26  This Court must "must apply the law as we believe the
27  California Supreme Court would apply it." <u>Astaire v.</u>
28

19

1 <u>Best Film & Video Corp.</u>, 116 F.3d 1297, 1300 (1997).

2 Additionally, "[i]n the absence of a California Supreme

3 Court decision, we must predict how the California

4 Supreme Court would decide the issue . . . ."  <u>Id.</u>  Here,

5 the California Supreme Court's implied endorsement of a

6 damages action for a violation of the prohibition against

7 unlawful searches and seizures in <u>Katzberg</u> leads the

8 Court to believe that the California Supreme Court would

9 permit such an action.  Accordingly, the Court denies

10 City Defendants' Motion to Dismiss Plaintiff's Claim for

11 damages under Article I, section Thirteen of the

12 California Constitution.

13

14     **3.**    **Article I, section Seventeen (Cruel or Unusual**

15            **Punishment)**

16     The section of the state Constitution at issue for

17 this Claim states:

18     Cruel or unusual punishment may not be inflicted or

19     excessive fines imposed.

20 Cal. Const. art 1, § 17.

21

22     Plaintiff provides no argument that Article I,

23 section Seventeen of the state Constitution allows for an

24 action for money damages.  Because Plaintiff has given no

25 reason why the Court should allow for money damages, she

26 has alternative remedies available, and the Court is

27 hesitant to alter California tort law, City Defendants'

28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Case No.: CV 05-4676 AHM (CTx) | Date   July 27, 2006 |
| Title   DORAME v. COUNTY OF LOS ANGELES, *et al.* | |

Present: The Honorable   A. Howard Matz

DOCKETED ON CM
JUL 27 2006
BY _____  077

| Stephen Montes | N/A | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

No Appearance                                          No Appearance

**Proceedings:**        In Chambers

## I.    INTRODUCTION

Juvenile Plaintiff Andrew Dorame claims that he was overdetained by Defendants Los Angeles County ("the County"), the County Probation Department, William Mendenhall Juvenile Camp ("Camp Mendenhall"), Deputy Probation Officers Richard Madero, Mary Booker, and Linda Negrete, Supervising Deputy Probation Officer Lynne Duke, and Camp Mendenhall Director Donald Long.  Collectively, this Order refers to these defendants as the "County Defendants."  Dorame also asserts a claim against Defendant Timothy Kimbrough, a court clerk at the Lancaster Juvenile Court.

This case arises from an unfortunate clerical error that Dorame alleges caused him to spend an additional three months in confinement at Camp Mendenhall.  Dorame's First Amended Class Action Complaint (FAC) asserts four causes of action on behalf of himself and similarly situated individuals:

1.    First Cause of Action for False Imprisonment (against the County, the Probation Department, and Camp Mendenhall);

2.    Second Cause of Action pursuant to Cal. Civ. Code § 52.1  (against the County, the Probation Department, and Camp Mendenhall);

3.    Third Cause of Action pursuant to California Constitution Article I, §§ 1, 7, and 13  (against the County, the Probation Department, and Camp Mendenhall); and

CV-90 Dorame Order              CIVIL MINUTES - GENERAL              Page 1 of 25

-30-

**EXHIBIT B**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4676 AHM (CTx) | Date | July   , 2006 |
|---|---|---|---|
| Title | DORAME v. COUNTY OF LOS ANGELES, *et al.* | | |

beings, but bodies politic or corporate." *Id.*

Second, California state courts recognize that counties qualify as "persons" in other contexts. *See Hoyt v. Bd. of Civil Serv. Comm'rs of City of Los Angeles*, 21 Cal.2d 399, 404 (1942) ("From an early date our statutes have provided that counties are to be treated as corporate bodies having power to sue and be sued."); *Hassan v. Mercy American River Hosp.*, 31 Cal.4th 709, 716 (2003) ("court[s] long ago recognized that 'person' in the Civil Code may include 'public or private corporations, or natural person[s].'") (quoting *City of Pasadena v. Stimson* 91 Cal. 238 (1891)); *Flournoy v. State*, 57 Cal.2d 497, 498 (1962) ("where no impairment of sovereign powers would result," the word "person" includes "the state [and] its political subdivisions").

Finally, although there was no explicit discussion regarding whether counties qualify as "persons" under CCC § 52.1, at least two courts, including the California Supreme Court, clearly assume that they do. *See Venegas v. County of Los Angeles*, 32 Cal.4th 820, 827 (2004) (concluding that plaintiffs had stated a valid cause of action under CCC § 52.1 against the County of Los Angeles and its sheriff's department); *Gatto v. County of Sonoma*, 98 Cal.App.4th 744, 752 (2002) (alleged violations of California Constitution are enforceable against counties under CCC § 52.1).

## D.   Third Cause of Action Pursuant to the California Constitution, Article I §§ 1, 7, and 13

Dorame's Third Cause of Action is virtually identical to his second. *Compare* FAC ¶¶ 38-40 *with* FAC ¶¶ 41-43. Indeed, both allege violations of the same provisions of the California Constitution—namely, Article I §§ 1,[6] 7,[7] and 13.[8] The only difference is that whereas Dorame brings his Second Cause of Action under CCC § 52.1

---

[6] "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const., art. I, § 1.

[7] "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws . . . ." Cal. Const., art. I, § 7(a).

[8] "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated . . . ." Cal. Const., art. I, § 13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-4676 AHM (CTx) | Date | July   , 2006 |
|---|---|---|---|
| Title | DORAME v. COUNTY OF LOS ANGELES, *et al.* | | |

(predicated on violations of the California Constitution), he brings his Third Cause of Action under the California Constitution *directly*.

The County Defendants contend that Dorame may not sue for monetary damages directly under Article I §§ 1, 7, and 13 of the California Constitution. They are correct with respect to claims brought directly under Article I §§ 1 and 7. *Katzberg v. Regents of Univ. of California*, 29 Cal.4th 300, 303 (2002) (Cal. Const., art. I, § 7); *Reinhardt v. Santa Clara County*, No. C05-05143 HRL, 2006 WL 662741, at *7-8 (N.D. Cal. Mar. 15, 2006) (same); *Smith v. County of Riverside*, No. EDCV 05-00512 VAP, at *16-18 (C.D. Cal. May 16, 2006) (Cal. Const., art. I, § 1). That is not the case, however, with respect to Article I § 13. *See Smith, supra,* at *18-20 (citing *Katzberg*, 29 Cal.4th at 321-24).

Accordingly, Dorame may sue for damages directly under Article I § 13 of the California Constitution, but not under Article I §§ 1 or 7. To the extent he brings his Third Cause of Action directly under Article I §§ 1 and 7, that cause of action fails as a matter of law.

## E.   Fourth Cause of Action under 42 U.S.C. § 1983

Dorame asserts his Fourth Cause of Action under 42 U.S.C. § 1983 against all Defendants.

### 1.   Eleventh Amendment

The County contends that the Eleventh Amendment precludes Dorame from establishing municipal liability under *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658 (1978), because the individual probation officers acted on behalf of the state, not the county. I reject this contention.

A municipality may be held liable under § 1983 only for acts "for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Merely because an officer was employed by the County is not enough; *respondeat superior* liability is not permissible. In *McMillian v. Monroe County*, 520 U.S. 781 (1997), the Supreme Court noted that the question of municipal liability under

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-3469 ODW (SHx) | Date | August 27, 2008 |
|---|---|---|---|
| Title | *Pablo Camarillo  v. City of Maywood, et al.* | | |

Present:   The Honorable Otis D. Wright II, United States District Judge

| Raymond Neal | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):          Attorneys Present for Defendant(s):

Not Present                                   Not Present

**Proceedings (In Chambers):     Defendants' Motions to Dismiss [66] [68]**

## I.     INTRODUCTION

Plaintiff Pablo Camarillo ("Plaintiff") brings this RICO and Civil Rights Complaint against Defendants City of Maywood ("City"), the Maywood-Cudahy Police Department ("Police Department"), Bruce Leflar ("Leflar"), in his individual and official capacity, Paul Pine ("Pine"), in his individual and official capacity, Officers Cunningham, West Florez, Vizcarra and Does 1-10 (collectively, "Defendants").[1] [2]

For the most part, Plaintiff's Corrected Second Amended Complaint ("CSAC")[3] contains sprawling, boilerplate and, in many cases, irrelevant allegations.  Indeed, the factual allegations giving rise to Plaintiff's claims are culled from one paragraph within

---

[1] Initially, Plaintiff was one of 22 plaintiffs who alleged RICO and Civil Rights violations against the named Defendants herein.  Pursuant to Fed. R. Civ. P. 20 and 21, the Court severed each individual party and their respective claims, thereby creating 9 separate lawsuits.  *See Gonzalez, et al. v. City of Maywood, et al.*, CV 07-03469 ODW (SHx), Docket #43.  Following the Court's order, Plaintiff, individually, filed the instant lawsuit on May 12, 2008.

[2] Although Plaintiff has named 30 Doe defendants, Local Rule 19-1 allows for no more than 10 Doe or fictitiously named parties.

[3] Pursuant to the parties' stipulation, Plaintiff has filed a "corrected" version of his previously filed second amended complaint.

**Camarillo 8/27/2008 Order**          **-33-**          **EXHIBIT C**

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3469 ODW (SHx) | Date | August 27, 2008 |
|----------|----------------------|------|-----------------|
| Title | *Pablo Camarillo  v. City of Maywood, et al.* | | |

E.      *Sixth Cause of Action - Cal. Const. Article I, §§ 1, 7 and 13*

Plaintiff brings his Sixth Cause of Action under the California Constitution directly–namely, Article I §§ 1,[6] 7,[7] and 13.[8]  Defendants argue that Plaintiff may not sue for monetary damages directly under Article I §§ 1, 7 and 13.  With respect to claims brought under §§ 1 and 7, they are correct.  *See Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 303 (Cal. 2002) (Cal. Const. art I, § 7); *accord Reinhardt v. Santa Clara County*, 2006 WL 662741 at *7-8 (N.D. Cal. Mar. 15, 2006) (same); *Smith v. County of Riverside*, No. EDCV 05-00512 VAP (SGLx) at *16-18 (C.D. Cal. May 16, 2006) (Cal. Const. art I, § 1); *accord Dorame v. County of Los Angeles, et al.*, No. CV 05-04676 AHM (Ctx) at *11-12 (C.D. Cal. July 27, 2006) (same).  Accordingly, Plaintiff's claims under Cal. Const. art I, §§ 1 and 7 are DISMISSED as to all Defendants.  Because amendment would be futile, dismissal is *with prejudice*.

As to Plaintiff's claim under Article I, § 13, however, Plaintiff's claim survives. *See Smith*, EDCV 05-00512 VAP (SGLx) at *20 ("the California Supreme Court's implied endorsement of a damages action for a violation of the prohibition against unlawful searches and seizures in *Katzberg* leads the Court to believe that the California Supreme Court would permit such an action.").  Defendants attempt to refute this established finding by citing to *Clemmons v. City of Long Beach*, 2008 WL 2483915 at *2 (9th Cir. June 19, 2008).  The unpublished nature of this opinion notwithstanding, *Clemmons* does not stand for the proposition that a claim for damages cannot proceed under § 13. *Clemmons*  merely recognized what this District has already considered; i.e.

---

[6] "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."  Cal. Const. art. I, § 1.

[7] "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws. . . ."  Cal. Const. art. I, § 7(a).

[8] "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated . . . ."  Cal. Const. art. I, § 13.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-3469 ODW (SHx) | Date | August 27, 2008 |
|---|---|---|---|
| Title | *Pablo Camarillo  v. City of Maywood, et al.* | | |

the California Supreme Court's failure to *expressly* decide whether there are tort claims founded under the state's constitution alone. *See Clemmons*, 2008 WL 2483915 at *2 ("Whether the California Supreme Court will ultimately decide that there are tort claims founded on the California Constitution alone is problematic.") (citation omitted). As discussed above, further analysis of *Katzberg* demonstrates the California Supreme Court's implied recognition of a damages claim under Article I, § 13. *See Smith, supra,* at *18-20. What *Clemmons* makes clear is that even if California expressly states what has already been implied, "that is far from saying that the statutory immunities would not apply." *Clemmons, supra,* at *2. In other words, *Clemmons* implicates only the applicability of statutory immunities to torts based upon the California Constitution. Thus, Plaintiff's § 13 claim survives.

   F.  *Cal. Civ. Code § 1714 - Plaintiff's Eleventh and Twelfth Causes of Action*

  California's Tort Claims Act provides that public entities are not liable for injuries "[e]xcept as otherwise provided by statute." Cal. Gov. Code § 815(a). As such, a claim of *direct* liability against a public entity for negligence must be based on a specific statute creating a duty of care rather than on the general tort provisions embodied in Civil Code § 1714. *See Eastburn v. Reg'l Fire Protection Auth.*, 80 P.3d 656, 660 (Cal. 2003).

  Public entities, however, are "liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment." Cal. Gov. Code § 815.2(a). The court also recognizes that a public employee is liable for injury to the same extent as a private person, "except as otherwise provided by statute." Cal. Gov. Code. § 820(a). Therefore, § 812.2(a) provides for *respondeat superior* liability against public entities where their employees acted negligently within the scope of their employment.

  Plaintiffs's CSAC makes clear that the City, the Police Department, and the supervisor defendants are being sued both directly and under a theory of *respondeat superior*. The individual officer defendants are being sued directly for general negligence.



FILED
CLERK, U.S. DISTRICT COURT

MAR 15 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

✓ **Priority**
✓ **Send**
  **Clsd**
✓ **Enter**
N/O **JS-5/JS-6**
  **JS-2/JS-3**
  **Scan Only**

ENTERED
CLERK, U.S. DISTRICT COURT

MAR 19 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AUGUSTA MILLENDER, BRENDA       )   Case No. CV 05-2298 DDP (RZx)
MILLENDER, WILLIAM JOHNSON,     )
                                )   **ORDER (1) GRANTING IN PART AND**
            Plaintiffs,          )   **DENYING IN PART PLAINTIFFS'**
                                )   **NOTICE OF MOTION AND MOTION FOR**
                                )   **SUMMARY ADJUDICATION; (2)**
                                )   **GRANTING IN PART AND DENYING IN**
       v.                       )   **PART INDIVIDUAL DEFENDANTS'**
                                )   **NOTICE OF MOTION AND MOTION FOR**
                                )   **SUMMARY JUDGMENT AND/OR SUMMARY**
                                )   **ADJUDICATION OF ISSUES; and (3)**
COUNTY OF LOS ANGELES, ET       )   **GRANTING IN PART AND DENYING IN**
AL.,                            )   **PART MUNICIPAL DEFENDANTS' NOTICE**
                                )   **OF MOTION FOR SUMMARY JUDGMENT**
            Defendants.          )   **OR, IN THE ALTERNATIVE, FOR**
                                )   **SUMMARY ADJUDICATION OF ISSUES**
                                )
                                )   [Motions filed on September 18,
                                )   2006]
_____)


     This matter comes before the Court on: (1) Plaintiffs' Notice

of Motion and Motion for Summary Adjudication ("P's MSJ"); (2)

Individual Defendants' Notice of Motion and Motion for Summary

Judgment and/or Summary Adjudication of Issues ("ID's MSJ"); and

(3) Municipal Defendants' Notice of Motion and Motion for Summary

Judgment or, in the Alternative, for Summary Adjudication of Issues

("MD's MSJ").   After reviewing and considering the materials

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

1 | 42 U.S.C. § 1986 (West 2003). A conspiracy under 42 U.S.C. § 1985
2 | is a prerequisite to a valid claim under Section 1986. <u>See</u> <u>Karim-</u>
3 | <u>Panahi</u>, 839 F.2d at 625.

4 |    Defendants move for summary judgment on the ground that
5 | Plaintiffs cannot establish a claim for conspiracy under Section
6 | 1985. This Court has considered Plaintiffs' arguments and evidence
7 | in support of their Section 1985 claim and found them unconvincing.
8 | Because this Court has granted Defendants' Motion for Summary
9 | Judgment on the Section 1985(3) conspiracy claim, Plaintiffs cannot
10 | maintain their Section 1986 claim. Accordingly, Defendants' Motion
11 | for Summary Judgment on such claim is granted.

12 |    **I.   Count Four - Violation of California Constitution,**

13 |           **Article I, §§ 1, 7 and 13**

14 |    Plaintiffs bring a claim for violation of California
15 | Constitution Article I, §§ 1, 7 and 13[14] against the County of Los

16

---

17 |    [14]   Article I, § 1 of the California Constitution reads:
18 | "All people are by nature free and independent and have inalienable
rights. Among these are enjoying and defending life and liberty,
19 | acquiring, possessing, and protecting property, and pursuing and
obtaining safety, happiness and privacy.

20 |    Article I, § 7 of the California Constitution states in
21 | pertinent part that:

22 |        (a) A person may not be deprived of life,
liberty, or property without due process of
23 |        law or denied equal protection of the laws . . .

24 |        (b) A citizen or class of citizens may not be
granted privileges or immunities not granted on
25 |        the same terms to all citizens . . . .

26 |    Article I, § 13 provides that: "The right of the people to be
secure in their persons, houses, papers, and effects against
27 | unreasonable seizures and searches may not be violated; and a
warrant may not issue except on probable cause, supported by oath
28 | or affirmation, articularly describing the place to be searched and
the persons and things to be seized.

Millender 3/15/2007 Order      **-37-**      **EXHIBIT D**

1 | Angeles only.  Municipal Defendants move for summary judgment on

2 | this claim on two grounds.

3 |     First, Municipal Defendants argue that, to the extent

4 | Plaintiffs seek to maintain their claims for damages directly under

5 | the California Constitution rather than an enabling statute, such

6 | as Civil Code section 52.1, such claims must fail, because an

7 | action for monetary damages is not available. Plaintiffs respond

8 | that all provisions of the California Constitution are self-

9 | executing and, therefore, support claims for declaratory relief or

10 | injunction.  <u>Katzberg v. Regents of the University of California</u>,

11 | 29 Cal. 4th 300, 306 (2002).  Thus, <u>Katzberg</u> establishes a

12 | framework for determining the relevant question - whether money

13 | damages are available under the specific constitutional provision

14 | at issue for the specific wrong alleged. Under such framework, a

15 | court considering this question must first "look at the language

16 | and history of the provision for an affirmative intent to authorize

17 | a claim for damages." <u>Reinhardt v. Santa Clara County</u>, 2006 WL

18 | 662741, *8 (N.D. Cal.) (applying <u>Katzberg</u>, 29 cal. 4th at 317).

19 | Where there is no such affirmative intent, the court must consider

20 | whether an adequate remedy exists, the extent to which a

21 | constitutional tort action would change established tort law, and

22 | the nature and significance of the constitutional provision." <u>Id.</u>

23 | Finally, "if these factors weigh against the recognition of a right

24 | to damages, the inquiry ends.  If, however, the factors weigh in

25 | favor of recognizing such a right, the court should also consider

26 | any special factors counseling hesitation in recognizing a damages

27 | action." <u>Id.</u>

28 |

Millender 3/15/2007 Order     -38-          EXHIBIT D

1      As to Article I, § 7, the <u>Katzberg</u> court found that this

2 section did not manifest an intent to create an independent damages

3 remedy, and that alternative remedies were available under Cal.

4 Civ. Code § 52.1 and 42 U.S.C. § 1983. 29 Cal. 4th at 318-24.

5 Likewise, this Court finds that such alternative remedies are

6 available and that Plaintiffs have, in fact, brought claims under §

7 1983 and California Civil Code § 52.1.  Therefore, Municipal

8 Defendants are entitled to summary judgment on Plaintiffs' claim

9 under California Constitution Article I, § 7.

10      Plaintiffs' Count Four, however, also alleges violations of

11 California Constitution Article I, §§ 1 & 13.  The California

12 Supreme Court has held that a plaintiff can bring a private action

13 for injunctions under Article I, Section 1 for alleged violations

14 of privacy.  <u>Hill v. Nat'l Collegiate Athletic Assoc.</u>, 7 Cal. 4th

15 1, 8, 20 (1994).  However, no California state court has ruled on

16 this issue and neither has the Ninth Circuit.  This Court notes,

17 however, that Judge Phillips of the Central District of California

18 has addressed this question, and the question as it relates to

19 Article I, § 13.  <u>Smith v. County of Riverside</u>, No. EDCV 05-00512

20 VAP, at *16-18 (C.D. Cal. May 16 2006). While the <u>Smith</u> opinion is

21 not binding on this Court, Judge Phillips reasoning is persuasive

22 and applies to the facts of this case.

23      As to Article I, § 1, Plaintiffs have provided no reason as to

24 why this Court should allow an action for monetary damages.[15]

25 Furthermore, as with Plaintiffs Article I, § 7 claim, alternative

26

27      [15]   Plaintiffs contend that, in <u>Porten v. Univ. of San</u>
<u>Francisco</u>, the court held that Article I, Section 1, supported an
28 action for money damages.  However, this Court does not agree.

82

1 │ remedies are available to Plaintiffs under Cal. Civil Code § 52.1
2 │ and 42 U.S.C. § 1983. Allowing Plaintiffs to sue for money damages
3 │ for an alleged state constitutional privacy violation would create
4 │ a new cause of action, altering established tort law in California.
5 │ Therefore, the Court grants Defendants' Motion for Summary Judgment
6 │ in regard to Plaintiffs' claims for violation of the California
7 │ Constitution, Article I, § 1.

8 │ Finally, the Court must consider Plaintiffs' claims under
9 │ Article I, § 13. As Plaintiffs point out, the Katzberg court
10 │ specifically differentiated the rights flowing to a victim of an
11 │ illegal search and seizure from the remedies available under a due
12 │ process liberty rights violation. 29 Cal. 4th at 321-24. Relying
13 │ on an opinion from the New York Court of Appeals, the California
14 │ Supreme Court in Katzberg stated that there was "historical support
15 │ for an implied remedy in damages" in the English common law. Id.
16 │ at 322 (quoting Brown v. New York, 674 N.E. 2d 1129, 1139 (1996)).
17 │ Thus, the Katzberg court noted that its holding that no damages
18 │ remedy was available under Article I, § 7 was based in part on the
19 │ lack of evidence as to any "similar history with respect to the
20 │ liberty interest," indicating that he would have found a damages
21 │ remedy under Article I, § 13. 29 Cal. 4th at 323. In the absence
22 │ of an actual California Supreme Court decision, this Court Must
23 │ apply the law as we believe the California Supreme Court would
24 │ apply it." Astaire v. Best Film & Video Corp., 116 F.3d 1297, 1300
25 │ (9th Cir. 1997).

26 │ Therefore, this Court finds that Plaintiffs are entitled to
27 │ assert a claim for monetary damages under Article I, § 13 of the
28 │ California Constitution. Accordingly, Defendants' Motion for

83

1 Summary Judgment on Plaintiffs' Count Four is denied as it relates

2 to Article I, § 13.

3    Because Plaintiffs' claim for violation of California

4 Constitution, Article I, § 13, remains, this Court must address

5 Defendants' second argument.  Municipal Defendants argue that

6 Plaintiffs' claim under the California Constitution is based on the

7 very same allegations as are Counts One and Two under the Federal

8 Constitution and Section 1983.  Specifically, the common

9 allegations are that Defendants allegedly "interfere[d] with

10 Plaintiffs' rights to be free from unreasonable invasions of their

11 privacy and unreasonable search and seizure and to be accorded due

12 process."  (Complaint ¶¶ 24, 25 & 27).  Thus, Municipal Defendants

13 argue that, because the claims are the same, the analysis is the

14 same and "[j]ust as defendants did not violate plaintiffs' federal

15 constitutional rights, so too was there no violation of state

16 constitutional rights."

17    Plaintiffs generally agree with Defendants, but make the

18 opposite argument - that because Plaintiffs have stated

19 constitutional violations under the Fourth and Fourteenth

20 Amendments, so to have they stated claims under the California

21 Constitution.  Additionally, Plaintiffs assert that the protections

22 of the California Constitution are broader than the United States

23 Constitution.  People v. Brisendine, 13 Cal. 3d 528 (1975).

24 However, they make no argument as to how, if true, this should

25 impact the Court's analysis.  Therefore, this Court interprets this

26 as an agreement by the Parties' that the Court's findings on the

27 probable cause and unreasonable search and seizure claims in regard

28

Millender 3/15/2007 Order          · -41-                    EXHIBIT D

1 to the federal constitutional claims should apply equally to the
2 state claims.

3     **J.    Count Five - Violation of Civil Code Section 52.1(b)**

4     In Count Five of their Complaint, Plaintiffs assert a claim
5 for violation of Civil Code Section 52.1(b) against the County of
6 Los Angeles only.  Section 52.1(b) provides in pertinent part:

7     Any individual whose exercise or enjoyment of

8         rights secured by the Constitution or laws of

9         the United states, or of rights secured by the

10         Constitution or laws of this state, has been

11         interfered with, as described in subdivision(a),

12         may institute and prosecute in his or her own

13         name and on his or her own behalf a civil

14         action for damages . . . .

15 Cal. Civil Code § 52.1(b) (West Supp. 2007).  Thus, when read in
16 conjunction with Section 52.1(a), Plaintiffs constitutional rights
17 must have been interfered with "by threats, intimidation, or
18 coercion."  See Cal. Civil Code § 52.1(a). (West Supp. 2007).

19     Defendants move for summary judgment on this claim.  In
20 support of their Motion, Defendants argue that none of Plaintiffs'
21 constitutional rights were interfered with by the County of Los
22 Angeles.  Similarly, Plaintiffs move for summary adjudication on
23 the issue of whether Defendants are liable under *respondeat*
24 *superior.*

25     Plaintiffs argue that Individual Defendants violated their
26 constitutional rights.  Thus, Plaintiffs claim that the County is
27 liable for such violations under the doctrine of *respondeat*
28 *superior.*  Plaintiffs are correct that, under California law, the

**SEND**

DOCKETED ON CM

AUG 31 2006

BY _____ 021

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2738 PA (VBKx) | Date | August 25, 2006 |
|---|---|---|---|

| Title | Jose Gilberto Trujillo v. City of Maywood, *et al.* | | |

Present: The Honorable    PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| C. Kevin Reddick | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**        IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) or in the Alternative Motion for More Definite Statement (F.R.C.P. 12(e)) filed by defendants the City of Maywood, Maywood Police Department, Bruce Leflar, A. Villegas, and J. Salgado (collectively, "Defendants"). (Docket No. 11.) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for August 28, 2006 is vacated, and the matter taken off calendar.

## I.    FACTUAL ALLEGATIONS & PROCEDURAL BACKGROUND

According to the Complaint filed by plaintiff Jose Gilberto Trujillo ("Plaintiff"), City of Maywood police officers arrested him on September 24, 2003 without a warrant and in the absence of probable cause. During the arrest, defendants A. Villegas and J. Salgado and other officers are alleged to have used excessive force.

Plaintiff contends the officers then made false reports which led prosecuting authorities to charge him with violations of Cal. Penal Code §§ 148 and 243(b), resisting arrest and battery on a police officer. The criminal charges were all dismissed in May 2004.

Plaintiff then initiated this action under 42 U.S.C. § 1983 and the California Constitution for false arrest, excessive force, and malicious prosecution. The Complaint asserts claims against the individual arresting officers as well as Police Chief Bruce Leflar, the City of Maywood, and the Maywood Police Department (collectively, the "Municipal and Supervisory Defendants"). The claims against the Municipal and Supervisory Defendants are under <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and <u>City of Canton v. Harris</u>, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Defendants have moved to dismiss Plaintiff's malicious prosecution, <u>Monell-Canton</u>, and California Constitution claims.

Trujillo 8/25/2006 Order    **-43-**    **EXHIBIT E**

SEND

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2738 PA (VBKx) | Date | August 25, 2006 |
|---|---|---|---|
| Title | Jose Gilberto Trujillo v. City of Maywood, *et al.* | | |

Finally, Defendants contend that Plaintiff's claim under Cal. Const. art. I, § 13 should be dismissed because actions for money damages based on violations of the California Constitution are not permitted. Though Defendants cite Katzberg v. Regents of University of California, 29 Cal. 4th 300, 127 Cal. Rptr. 2d 482 (2002), and other cases which have held that there is no action for money damages under art. I, §§ 2 and 7, they refer the Court to no authority indicating that an action under § 13 is likewise impermissible.[1] Instead, the California Supreme Court has implicitly approved of damages actions under § 13, noting that the common law history of the search and seizure provision provides grounds for a damage remedy for its violation. Id. at 322-23, 127 Cal. Rptr. 2d at 353-54. Further, that court noted that New York, Maryland, and Louisiana courts have all concluded that an action for damages is available to remedy a search and seizure violation. Id. at 322-23, 127 Cal. Rptr. 2d at 353-54. Accordingly, the Court finds that dismissal of Plaintiff's California Constitution claim is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is denied in its entirety.

IT IS SO ORDERED.

---

[1]      Similarly, Defendants set forth the three-part test established in Katzberg for determining whether a damages action is appropriate for any given provision of the California Constitution, but provide none of the detailed analysis required by that test.

**Trujillo 8/25/2006 Order**                    -44-                    **EXHIBIT E**