UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ASTORGA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, et al.,<br><br>Defendants. | Case No. 2:20-CV-09805-AB (AGRx)<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Before the Court is Plaintiffs Christina Astorga, Hugo Padilla, Ryan Michael Dodson, and Kiyoko Dodson's (collectively "Plaintiffs") Motion for Partial Summary Judgment Regarding the Seizure of the Dodsons' Property. ("Motion," ECF No. 162.) Defendants County of Los Angeles, Los Angeles County Sheriff's Department, and Sheriff Alex Villanueva's (collectively "Defendants") filed an opposition. ("Opp'n," ECF No. 169.) Plaintiffs filed a reply. ("Reply," ECF No. 176.) The Court heard oral argument on Plaintiffs' Motion on November 12, 2021. For the reasons stated below, the Court **DENIES** Plaintiffs' Motion.

## I. FACTUAL BACKGROUND

Unless otherwise specified, the following material facts are either expressly undisputed by the parties or have been determined by the Court, upon a full review of the record, to be undisputed by competent evidence.

On September 25, 2020, Plaintiffs Ryan Dodson and Kiyoko Dodson (collectively the "Dodsons"), who are husband and wife, participated in a West Hollywood protest against police violence, including the death of Breonna Taylor by Louisville officers. (Undisputed Material Fact ("UMF") No. 1.) While participating in the protest, Mr. Dodson was driving a 2005 white Chevrolet Silverado pickup truck (hereinafter the "truck") while Mrs. Dodson was walking and marching with other demonstrators, generally behind the truck. (UMF No. 2.) Mr. Dodson is the registered owner of the truck. (UMF No. 3.)

At some point before 10:00 p.m., and while the Dodsons were still participating in the protest, a Los Angeles County Sheriff's Department ("LASD") armored transport vehicle stopped in front of Mr. Dodson's truck and LASD deputies ordered Mr. Dodson out of the truck. (UMF Nos. 6-7.) Mr. Dodson complied and exited the truck with his arms raised and holding his smartphone. (*Id.*) An LASD deputy told Mr. Dodson to put his cell phone on top of the large, oversized toolbox that sits behind the truck cab, which he did. (UMF Nos. 8, 15.) Mr. Dodson was then arrested, handcuffed, and placed into the back of a patrol car. (UMF No. 9.)

Once Mr. Dodson was placed in the patrol car, he noticed that LASD deputies were going to have his truck towed. (UMF No. 10.) Inside the truck were Mr. Dodson's work tools, which are valued at about $7,000, and Mrs. Dodson's knapsack containing her personal items. (UMF Nos. 13-14. )

Thereafter, LASD deputies transported Mr. Dodson to the West Hollywood Sheriff's station where he was booked and jailed. (UMF No. 16.) At the station, Mr. Dodson asked numerous LASD deputies if someone had retrieved his smartphone, but he never received a clear or definitive answer from anyone; rather he was informed that they did not know if his smartphone had been retrieved or that "someone must have gotten it." (UMF No. 17.) Mr. Dodson was booked on two misdemeanor charges for failure to disperse in violation of California Penal Code § 407 and reckless driving in violation of California Vehicle Code § 23103(a). (UMF No. 18.)

Defendants state that various items of evidence were booking into custody in conjunction with the arrests made at the protests on September 8, 2020 and September 25, 2020. (UMF No. 34.[1]) Property and evidence coming into possession of LASD personnel was accounted for and processed, and items of possible evidentiary value were carefully handled and booked into evidence. (UMF No. 36.)

On September 26, 2020, Mr. Dodson was issued a citation and released from custody. (UMF No. 18.) Mr. Dodson has not been charged with any crime arising from his arrest. (UMF No. 19.) Upon Mr. Dodson's release, LASD did not return any of his personal property that was inside the truck, including his smartphone. (UMF No. 21.) Property items that were not immediately released to Plaintiffs were held by Defendants because of an ongoing criminal investigation. (UMF No. 38.)

On September 26, 2020, Mrs. Dodson called All City Tow, the towing company that had towed the truck, to determine how to retrieve the truck. (UMF No. 25.) All City Tow personnel informed Mrs. Dodson that neither the truck nor the personal property inside the truck could not be released without permission from the Sheriff's Department. (*Id.*)

On September 27, 2020, the Dodsons went to the West Hollywood Sheriff's station to ask that their truck and the personal property within the truck, including Mr. Dodson's smartphone, be released. (UMF Nos. 24-26.) They were informed by station personnel that their truck and the personal property inside would not be released and that they did not know where Mr. Dodson's smartphone was located. (*Id.*) However, the Dodsons were able to confirm that LASD had Mr. Dodson's smartphone via a GPS tracker program installed on the phone, which showed that on

---

[1] In their Statement of Genuine Issues and Additional Material Facts, Defendants restart the numbering for the additional material facts they present, rather than continuing from the numbering in Plaintiffs' Separate Statement of Uncontroverted Facts. For sake of clarity, the Court has renumbered Defendants' additional material facts to continue from Plaintiffs' Separate Statement. For example, Defendants' first additional material fact is now renumbered 34.

September 25, 2020, LASD deputies had taken the smartphone to the West Hollywood Sheriff's station. (UMF No. 27.)

After September 27, 2020, Mrs. Dodson called the West Hollywood Sheriff's station numerous times to determine if the Dodsons were going to get their truck and the personal property inside the truck back. (UMF No. 28.) In one instance, Mrs. Dodson spoke with Sheriff Sergeant Michael Yokum, who informed her that the truck and the personal property inside the truck would not be released. (UMF No. 29.)

On October 13, 2020 at about 11:16 a.m., Defendants obtained judicial authorization (*i.e.*, a warrant) for the ongoing seizure of the Dodsons' truck. (UMF No. 30.) The warrant stated, "there is probable cause to believe that the property . . . is lawfully seizable pursuant to Penal Code Section 1524" because it "was used as a mean to committing a felony" and "tends to show that a felony has been committed or that a particular person has committed a felony." (*Id.*)

On November 4, 2020, LASD mailed a letter to the Dodsons dated October 30, 2020 informing them they could retrieve their truck because "[t]he investigation relating to [the truck] ha[d] been completed and the [truck] was no longer needed." (UMF No. 33.)

On November 11, 2020, the Dodsons retrieved their trunk along with some of the personal property inside the truck. (*Id.*) LASD releases property items that are initially held as part of an ongoing criminal investigation, but are subsequently no longer needed as evidence to the legal owner provided doing so does not violate the law or LASD policy. (UMF No. 37.)

## II. PROCEDURAL HISTORY

On May 24, 2021, Plaintiffs filed their Second Amended Complaint, the operative complaint, against Defendants. ("SAC," ECF No. 105.) Plaintiffs assert the following seven claims under 42 U.S.C. § 1983: (1) injunctive relief on a class-wide basis; (2) deprivation of property in violation of the Fourth and Fourteenth Amendments; (3) unlawful takings in violation of the Fifth Amendment; (4)

unreasonable seizures in violation of the Fourth Amendment; (5) violation of the First Amendment; (6) violations of the California Constitution, Article I §§ 2, 3, 7, 13; and (7) Bane Act violations. (*Id.*)

On October 21, 2021, the Court denied Plaintiffs' Second Amended Motion for Class Certification. (ECF No. 179.) On February 9, 2022, the Court dismissed with prejudice Plaintiffs' claims against Defendant Sheriff Villanueva in his official capacity and Plaintiffs' request for monetary damages in the sixth cause of action. (ECF No. 205.)

## III. LEGAL STANDARD

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that affect the outcome of the case. *Id.* at 248; *see also Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekum v. Thrifty Payless, Inc.*, 509 F3d 978, 984 (9th Cir. 2007.) Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 323. If the moving party meets this initial burden, the nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. A plaintiff alleging

a § 1983 claim based on an unreasonable search in violation of the Fourth Amendment has the burden of proving at trial that an asserted exception to the warrant requirement did not apply. *Larez v. Holcomb*, 16 F.3d 1513, 1517-18 (9th Cir. 1994); *see also Pavao v. Pagay*, 307 F.3d 915, 919 (9th Cir. 2002) (reaffirming that plaintiff in § 1983 action "carries the ultimate burden of establishing each element of his or her claim, including lack of consent [to search]").

The Court must draw all reasonable inferences in the nonmoving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson,* 477 U.S. at 255). Nevertheless, inferences are not drawn out of thin air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd,* 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984.

## IV. EVIDENTIARY OBJECTIONTS

The majority of the parties' objections to each other's undisputed facts are meritless. (*See* ECF Nos. 169-1, 176-1.) For example, several of Defendants' objections to Plaintiffs' undisputed facts, including facts numbered 23, 24, 25, and 29, are simply argument, which is improper. (*See* ECF Nos. 169-1, SUF Nos. 23-25, 29.) Because the proffered facts are supported by the cited evidence, those proffered facts are therefore undisputed. *See Travis v. Nationstar Mortgage LLC*, No. 2:15-cv-06516-AB (KS), 2019 WL 7188573, *1 (C.D. Cal. Nov. 27, 2019); L-R 56-3.

Similarly, Plaintiffs' objections to the Declaration of Captain Eduardo Hernandez are non-responsive. (*See* ECF No. 176-1.) Specifically, Plaintiffs object on the basis that the declaration is irrelevant and contains hearsay statements. However, as the Ninth Circuit has held, "to survive summary judgment, a party does

not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir.2003) (citing *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir.2001)). In other words, when evidence is not presented in an admissible form in the context of a motion for summary judgment, *but it may be presented in an admissible form at trial*, a court may still consider that evidence. *Id.* at 1037 (considering evidence from a diary, notwithstanding the defendant's hearsay objections, in the context of a motion for summary judgment because the contents of the diary were "mere recitations of events within the [plaintiff's] personal knowledge and, depending on the circumstances, could be admitted into evidence at trial in a variety of ways"). Moreover, objections to evidence on the ground that it is irrelevant is duplicative of the summary judgment standard itself because courts cannot rely on irrelevant facts, and thus relevance objections are redundant.

To the extent any of the objected-to evidence is relied on in this Order, those objections are overruled. Any remaining objections are also overruled as moot. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118, 1122 (E.D. Cal. 2006) (concluding that "the court will [only] proceed with any necessary rulings on defendants' evidentiary objections").

## V. DISCUSSION

Plaintiffs move for partial summary judgment on their fourth cause of action for unreasonable seizures in violation of the Fourth Amendment. Specifically, Plaintiffs argue Defendants failure to return the Dodsons' property or secure judicial authorization immediately after the Dodsons' initial demand for their property on September 27, 2020, violated the Fourth Amendment. For purposes of this motion, Plaintiffs do not contest Defendants' justification for the initial seizure of the Dodsons' property, although they have not abandoned their claim that the initial

seizure was unlawful as well.[2] (Motion at 8 fn. 2.)

Drawing all reasonable inferences in Defendants' favor, the Court finds genuine issues of material fact exist as to whether the sixteen-day warrantless seizure of the Dodsons' truck and personal property was reasonable under the totality of circumstances.

**A. <u>Fourth Amendment</u>**

The Fourth Amendment protects against unreasonable searches and seizures. *See* U.S. Const. amend. IV. A seizure is a "meaningful interference with an individual's possessory interests in [their] property." *Soldal* v. *Cook County*, 506 U.S. 56, 61 (1992) (internal quotation marks and citation omitted). The Supreme Court has held that "in the ordinary case, seizures of personal property are unreasonable within the meaning of the Fourth Amendment, without more, unless . . . accomplished pursuant to a judicial warrant issued by a neutral and detached magistrate after finding probable cause." *Illinois v. McArthur,* 531 U.S. 326, 330 (2001) (internal quotation marks omitted). However, when faced with "special law enforcement needs," the Supreme Court "has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." *Id.* Exceptions to the warrant requirement, include searches incident to arrest, *see United States v. Edwards*, 415 U.S. 800, 802–03 (1974), and exigent circumstances, *see United States v. Place*, 462 U.S. 696, 701 (1983).

A seizure lawful at its inception can nevertheless violate the Fourth Amendment if its manner of execution unreasonably infringes possessory interests. *See Brewster*,

[2] Defendants argue that because Plaintiffs "are not challenging the initial seizure of property . . . Plaintiff's contention that the refusal to return their personal property (which was lawfully seized) does not implicate the Fourth Amendment." (Opp'n at 14:6-11.) The Court is unpersuaded by this argument for two reasons. First, Ninth Circuit precedent establishes that an initial lawful seizure can violate the Fourth Amendment if its manner of execution is unreasonable. *Brewster v. Beck*, 859 F.3d 1194, 1196-97 (9th Cir. 2017). Second, the Court understands Plaintiffs' statement to simply mean that they are not seeking summary judgment on the claim that the initial seizure of the property violated the Fourth Amendment.

859 F.3d at 1196-97. For example, "[a]n unreasonable delay between the seizure of [the property] and obtaining a search warrant may violate the [individual's] Fourth Amendment rights." *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015) (concluding that 21-day warrantless seizure was reasonable under the totality of the circumstances); *see also United States v. Dass*, 849 F.2d 414, 415-16 (9th Cir. 1988) (analyzing the reasonableness of detaining packages for seven to twenty-three days before securing search warrants); *Sandoval v. County of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018) (noting the prolonged seizure of property may be reasonable if "a ***justification*** for continuing to seize" the property exists "after the initial justification dissipates") (internal citation omitted) (emphasis added). To determine whether the delay was reasonable, the totality of the circumstances are examined, "not whether the Government pursued the least intrusive course of action." *Sullivan*, 797 F.3d at 633 (international citations omitted). Such determinations are made on a case-by-case basis. *Id.* (international citations omitted).

Here, Defendants argue that the warrantless seizure of the Dodsons' property was reasonable because the property at issue was seized incident to the arrest of Mr. Dodson, and given the circumstances in which the arrest occurred, *i.e.*, a protest, the property was kept in evidence because of an ongoing criminal investigation. In response, Plaintiffs argue that an ongoing criminal investigation is not a recognized exception to the warrant requirement, and thus, the sixteen-day seizure was unreasonable. To determine whether the prolonged warrantless seizure of the Dodsons' property violated the Fourth Amendment, the analysis is whether the delay between the initial seizure and the seeking of a warrant was reasonable based on the totality of the circumstances, which is a case-by-case analysis.[3] *See Place*, 462 U.S. at

---

[3] Indeed, as previously noted, for purposes of this motion, Plaintiffs do not contest Defendants' justification for the initial warrantless seizure of the Dodson's property, which during oral argument, Defendants confirmed was the incident after arrest exception. The issue here is whether the delay between the initial seizure and obtaining a warrant violated the Fourth Amendment.

703 ("We must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."); *see also Sullivan*, 797 F.3d at 633 ("An unreasonable delay between [the initial seizure] and obtaining a search warrant may violate [the Fourth Amendment, but] the touchstone is reasonableness.").

The Court finds that genuine issues of material fact exist as to whether the sixteen-day seizure of the Dodsons' property was reasonable based on the totality of the circumstances, including that the property was seized incident to Mr. Dodson's arrest, which occurred at a protest. Specifically, the search warrant obtained by Defendants on October 13, 2020 creates a genuine issue of material fact as to whether there was a legitimate law enforcement reason for why the Dodsons' property was not immediately returned since a finding of probable cause was made in conjunction with the issuance of the warrant. (*See* UMF No. 30.)

Furthermore, it is undisputed that the LASD's Major Crimes Bureau had determined that the Dodsons' property was classified as evidence in an ongoing criminal investigation. (*See* Opp'n at 9:9-17; *see also* UMF Nos. 37-38.) Because these facts must be considered in the light most favorable to Defendants, the Court finds there is genuine issues of material fact as to whether based on this classification, the delay in returning the Dodsons' property was reasonable.

As such, the Court finds genuine disputes exists as to whether the totality of the circumstances excuse Defendants' delay in securing a warrant for the seized property.

## VI. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiffs' Motion for Partial Summary Judgment.

**IT IS SO ORDERED.**

Dated: February 16, 2022



HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT JUDGE