PAUL B. BEACH, State Bar No. 166265
pbeach@lbaclaw.com
JIN S. CHOI, State Bar No. 180270
jchoi@lbaclaw.com
RAYMOND W. SAKAI, State Bar No. 193507
rsakai@lbaclaw.com
HRACH E. AGAZARYAN, State Bar No. 339758
hagazaryan@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
150 South Los Robles Ave., Suite 660
Pasadena, California 91101
Telephone No. (818) 545-1925

Attorneys for Defendants
County of Los Angeles, Los Angeles County
Sheriff's Department, and Sheriff Alex Villanueva

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ASTORGA, etc., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES, etc., et al.,<br><br>Defendants. | Case No. 2:20-cv-09805-AB-AGR<br><br>Honorable André Birotte Jr.<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      October 28, 2022<br>Time:      10:00 a.m.<br>Crtm:      7B |

TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR

ATTORNEYS OF RECORD:

Defendants County of Los Angeles and Los Angeles County Sheriff's

Department, and Sheriff Alex Villanueva ("Defendants") hereby submit the

1

following Reply Memorandum of Points and Authorities in support of their Motion for Summary Judgment, or Alternatively, Summary Adjudication (ECF 281). Defendants' response to Plaintiffs' Separate Statement of Uncontroverted Facts (ECF 299-1) and evidentiary objections are filed concurrently herewith.

Dated: October 14, 2022                    LAWRENCE BEACH ALLEN & CHOI, PC


By ____ /s/ Jin S. Choi _____
      Jin S. Choi
      Raymond W. Sakai
      Hrach E. Agazaryan
      Attorneys for Defendants
      County of Los Angeles, Los Angeles
      County Sheriff's Department and
      Sheriff Alex Villanueva

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.   PLAINTIFFS OFFER NO RELEVANT ARGUMENT REGARDING COUNT TWO — THEIR CLAIM THAT LASD POLICY OR CUSTOM PURPORTEDLY CAUSED THEIR PROPERTY TO BE SEIZED AND RETAINED WITHOUT A WARRANT. ........................................................... 1

II.   PLAINTIFFS' *MONELL* ARGUMENTS RELATE TO THEIR EXCESSIVE FORCE CLAIM FOR WHICH THERE IS INSUFFICIENT EVIDENCE AS A MATTER OF LAW. ........................................................... 3

A.   Plaintiffs Make No Effort To Establish The Causal Connection Required For Their *Monell* Claims, Ignoring Their Own Boilerplate Allegations Of Proximate Cause. ...................................................................................3

B.    Plaintiffs' Attempt To Create, *Ipso Facto*, *Monell* Liability Based On An Order In *Another* Matter Involving *Other* Plaintiffs Should Be Rejected. .........4

C.   Plaintiffs Erroneously Rely On Expert Witness Statements Which Are Not Part Of This Record ............................................................................6

D.   Plaintiffs' Reliance On A Single After-Action Report Does Not Come Close To Satisfying Their Evidentiary Burden............................................................8

E.    Plaintiffs' Self-Serving Declaration That Their *Monell* Allegations Were Sufficiently Pled Should Be Rejected...................................................9

F.    Plaintiffs' Reference To Sheriff Villanueva's "Statements On Television" Does Not Satisfy Their Burden On Their *Monell* Claims. ...................................9

III. PLAINTIFFS' TAKINGS CLAUSE ARGUMENT IS ENTIRELY WITHOUT MERIT............................................................................ 10

i

IV.    PLAINTIFFS' FIRST AMENDMENT ARGUMENT IGNORES THE ABSENCE OF ANY EVIDENCE OF PROXIMATE CAUSE AND RETALIATORY MOTIVE. ................................................................ 11

V.    PLAINTIFFS' ARGUMENT THAT SHERIFF VILLANUEVA SHOULD BE HELD PERSONALLY LIABLE IS ENTIRELY WITHOUT MERIT................................................................................................ 11

VI.    PLAINTIFFS' FLAWED ARGUMENTS REGARDING THEIR CLAIMS FOR FALSE ARREST AND EXCESSIVE FORCE HAVE NO EFFECT ON THE MERITLESS NATURE OF THEIR *MONELL* CLAIMS. 13

VII.    PLAINTIFFS' CIVIL CODE § 52.1 ARGUMENT IS LIMITED THE ALLEGED USE OF FORCE AND IS WITHOUT MERIT ........................... 15

VIII.    CONCLUSION .................................................................... 15

1

# **TABLE OF AUTHORITIES**

2

**Cases**                                                           **Page(s)**

*Aguilar v. City of L.A.*

2018 U.S. Dist. LEXIS 225655 (C.D. Cal. Sept. 10, 2018)...................................8

*Berg v. Cty. of L.A.*

2021 U.S. Dist. LEXIS 195521 (C.D. Cal. May 28, 2021) ...........................4, 5, 6

*Cedar Point Nursery v. Hassid*

594 U.S. __, 141 S.Ct. 2063 (2021) .......................................................................10

*Cortez v. McCauley*

478 F.3d 1108 (10th Cir. 2007)...............................................................................14

*Dew v. City of Seaside*

2021 U.S. Dist. LEXIS 85305 (N.D. Cal. May 4, 2021) .........................................8

*Estate of Ramirez v. City of Billings*

2019 U.S. Dist. LEXIS 14896 (D. Mont. Jan. 30, 2019)..........................................8

*Fernandez v. Cty. of L.A.*

2008 U.S. Dist. LEXIS 4543 (C.D. Cal. Jan. 7, 2008) ..........................................14

*Forrester v. City of San Diego*

25 F.3d 804 (9th Cir. 1994)......................................................................................5

*Fractus, S.A. v. AT&T Mobility LLC*

2019 U.S. Dist. LEXIS 169610 (E.D. Tex. Sept. 30, 2019) ...................................7

*Gant v. County of Los Angeles*

772 F.3d 608 (9th Cir. 2014)....................................................................................3

*German v. Roberts*

2017 U.S. Dist. LEXIS 211095, at *5 (W.D. Wash. Dec. 22. 2017)…………….9

*Gillette v. Delmore*

979 F.2d 1342 (9th Cir. 1992)..................................................................................8

*Glendale Fed. Bank, FSB v. United States*

39 Fed.Cl. 422 (1997) ..............................................................................................7

*Graff v. Corr. Corp. of Am.*

   2016 U.S. Dist. LEXIS 38895 (D. Idaho Mar. 23, 2016) .......................................4

*Hanford Nuclear Reservation Litig. v. E.I. DuPont de Nemours & Co. (In re*

   *Hanford Nuclear Reservation Litig.)*

   534 F.3d 986 (9th Cir. 2008) ...............................................................................7

*Haugen v. Brosseau*

   351 F.3d 372 (9th Cir. 2003).................................................................................8

*Hermosillo v. Cty. of San Bernardino*

   2016 U.S. Dist. LEXIS 192706 (C.D. Cal. Dec. 22, 2016) ................................8

*Jackson v. City of Bremerton*

   268 F.3d 646 (9th Cir. 2001)...............................................................................14

*Jurkowski v. City of Seattle*

   2017 U.S. Dist. LEXIS 166292 (W.D. Wash. Oct. 5, 2017) ...............................11

*Munoz v. McGrath*

   2005 U.S. Dist. LEXIS 30859 (N.D. Cal. Sept. 8, 2005) ....................................6

*Parker v. City of L.A.*

   No. 2016 U.S. Dist. LEXIS 189030 (C.D. Cal. June 22, 2016) ..........................14

*Puente v. City of Phoenix*

   2022 U.S. Dist. LEXIS 21489 (D. Ariz. Feb. 7, 2022)....................................11, 14

*R.A. v. City of La Habra*

   2022 U.S. Dist. LEXIS 85433 (C.D. Cal. Jan. 28, 2022) ....................................8

*Stuart Mills Props, LLC v. City of Burbank*

   2022 U.S. Dist. LEXIS 180191 (C.D. Cal. Sept. 19, 2022)................................10

*Sullivan v. City of Buena Park*

   2022 U.S. Dist. LEXIS 12310(C.D. Cal. Jan. 13, 2022) ....................................8

*Thompson v. Cty. of Riverside*

   2020 U.S. Dist. LEXIS 247367 (C.D. Cal. Sept. 28, 2020)................................9

*Thunderbird Downtown LLC v. City of Phoenix*

   2021 U.S. Dist. LEXIS 172524 (Ariz. D.C. Sept. 10, 2021) ...................................2

*Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*

   609 F.3d 975 (9th Cir. 2010)....................................................................................4

*Tsao v. Desert Place, Inc.*,

   698 F.3d 1128 (9th Cir. 2012)..................................................................................1

*Winter v. Nat. Res. Def. Council, Inc.*

   555 U.S. 7 (2008)......................................................................................................5

*Yee v. City of Escondido*

   503 U.S. 519 (1992) ...............................................................................................10

**Rules**

Federal Rules of Evidence 801(d)(2)(D) ....................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.**  **PLAINTIFFS OFFER NO RELEVANT ARGUMENT REGARDING COUNT TWO — THEIR CLAIM THAT LASD POLICY OR CUSTOM PURPORTEDLY CAUSED THEIR PROPERTY TO BE SEIZED AND RETAINED WITHOUT A WARRANT.**

Plaintiffs' Count Two (Fourth Amendment claim) alleged that the "initial and continuing seizures of Plaintiffs' items of property **without a warrant** or judicial review of any kind" violated the Fourth Amendment, and that these acts were "the product of a policy or custom of the Entity defendants and personally approved by defendant Villanueva." (SAC, ¶¶ 86-87; emphasis added.)  Therefore, Plaintiffs' *Monell* claim against the Entity Defendants **must** necessarily be that a **LASD policy or custom proximately caused their property to have been initially and continued to be seized without a warrant**.  *See, e.g. Tsao v. Desert Place, Inc.*, 698 F.3d 1128, 1146 (9th Cir. 2012) ("a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which *requires showing both but-for and proximate causation*") (emphasis added).

But **nowhere** in their Opposition do Plaintiffs make any effort to establish any showing as to this dispositive issue.  (*See* Opp. at pp. 20:2-26:3.)  Indeed, Plaintiffs do not offer any argument whatsoever as to whether the alleged seizing and retention of their property without a warrant was proximately caused by any LASD policy or custom.  Plaintiffs also have not and cannot offer any argument as to how these alleged acts (which never occurred) were approved by Sheriff Villanueva.[1]

///

---

[1] Plaintiffs also do **not** dispute that their personal property has either been returned to them or was designated for release by July 1, 2021.  Any claim based on the alleged "continuing" seizure of personal property, therefore, fails as a matter of law.

1

1   Instead, Plaintiffs raise a purely peripheral and irrelevant argument that the

2   search warrants lacked probable cause.[2]  (Opp. at 20:2-21:19.)  Essentially,

3   Plaintiffs assert that they are entitled to relief under Count Two because the two

4   search warrants did not establish probable cause, and were therefore unlawfully

5   issued by two different Superior Court Judges.[3]  But Count Two has nothing to do

6   with whether the search warrant affidavits did or did not establish probable cause.

7   Count Two hinges upon whether property was retained without a warrant or judicial

8   review, and whether this alleged misconduct was proximately caused by LASD

9   policy or custom.  Because Plaintiffs do not dispute that search warrants were

10  sought and obtained, Plaintiffs' claim fails, regardless of their unrelated contention

11  that the warrants were not based on probable cause.

12  Plaintiffs' reference to their renewed motion for reconsideration with respect

13  to the "delay in obtaining the warrant the Dodson's property" (Opp. at 20:3-6), is

14  just as irrelevant.  First, there no unreasonable delay with respect to the timing of the

15  October 13, 2020 warrant (*see* Defendants' argument Sections III, IV in ECF 295

16  [Opposition to Plaintiffs' Renewed Motion for Reconsideration]).  Second, possibly

---

[2] This allegation is made in *Padilla v. County of Los Angeles*, Case No. 2:22-cv-6224 (AB) (MARx), filed on August 31, 2022, in which four of the five plaintiffs are also Plaintiffs in this action.  In *Padilla*, the "judicial deception" claim is alleged in Counts Five and Six (*Padilla* ECF 1 at pp. 23:10-24:19).  The assertion of this claim in *Padilla* further demonstrates the inapplicability of this argument here.

[3] Plaintiffs discuss how such probable cause determinations are "issues of law" for this Court's determination, while offering no authority for this Court to second-guess these prior judicial rulings.  Plaintiffs' contention cannot be reconciled with well-established principles of judicial comity and abstention.  *See Thunderbird Downtown LLC v. City of Phoenix*, 2021 U.S. Dist. LEXIS 172524, at *21-22 (Ariz. D.C. Sept. 10, 2021) (applying *Younger* abstention where the plaintiff's allegations in support of his Fourth Amendment claim focused "on the veracity of the search warrant and are inextricably intertwined with the Second Municipal Court Action").

even more importantly, this purported issue is another red herring in light of the fundamental nature of Plaintiffs' actual *Monell* claim.  Whether or not any warrant was obtained "too late" has no material effect on Count Two, which has nothing to do with "delayed" warrants.  Moreover, ***any such delay in one isolated incident is insufficient as a matter of law to form the basis for a Monell claim premised on a policy or custom of seizing and retaining property without ever obtaining a warrant***.  *See Gant v. County of Los Angeles,* 772 F.3d 608, 618 (9th Cir. 2014) (*Monell* claim dismissed where the plaintiff's evidence related to a single incident).

To repeat, Plaintiffs must prove that their property was seized and retained without a warrant or judicial review (a factual predicate which indisputably did not occur) and that any such absence of a warrant or judicial review was proximately caused by a LASD policy or custom (a factual predicate which Plaintiffs do not address, let alone attempt to establish in their opposition papers).  Simply put, Plaintiffs have not and cannot present any facts or argument in support of Count Two which, therefore, cannot survive summary judgment.

## II. PLAINTIFFS' *MONELL* ARGUMENTS RELATE TO THEIR EXCESSIVE FORCE CLAIM FOR WHICH THERE IS INSUFFICIENT EVIDENCE AS A MATTER OF LAW.

### A. Plaintiffs Make No Effort To Establish The Causal Connection Required For Their *Monell* Claims.

Plaintiffs argue that the Entity Defendants are liable under section 1983, focusing this argument on the alleged use of excessive force.  (Opp. at 21:20-26:2.) Plaintiffs, however, have raised no argument as to how any of their alleged constitutional violations (their Counts Two through Five) was proximately caused by any LASD policy or custom, despite the assertion of boilerplate allegations in the SAC regarding such causation.  Without this required showing, Plaintiffs' *Monell* claims fail as a matter of law.[4]

---

[4] Plaintiffs do not argue against the dismissal of Count One, their section 1983 claim for injunctive relief.

**B.     Plaintiffs' Attempt To Create, *Ipso Facto*, *Monell* Liability Based On An Order In *Another* Matter Involving *Other* Plaintiffs Should Be Rejected.**

Without citing to any applicable law, Plaintiffs seek to piggyback on a ruling on a motion for preliminary injunction, issued by District Court Judge Dolly Gee, in a separate action brought by different plaintiffs.  *See Berg v. Cty. of L.A.*, 2021 U.S. Dist. LEXIS 195521 (C.D. Cal. May 28, 2021).  (Opp. at 22:20-23:15, 25:6-26:2.) Plaintiffs' reliance on the preliminary injunction ruling in *Berg* is misplaced for a multitude of reasons.

First, the *Berg* ruling did **not** address the arrests of individuals, seizures of property upon arrest, the seeking of warrants related to such property, and the return of such property, and the *Berg* plaintiffs' First Amendment retaliation claim.  *See id.* at *32 n. 10 ("Because the TRO Application and [Motion for Preliminary Injunction] do **not** argue likelihood of success on the merits of Plaintiffs' First Amendment retaliation claim, the Court does **not** address it.") (emphasis added).  Thus, on its face, the *Berg* ruling has no relevance to most of the claims in the instant action.

Second, alleged constitutional violations in other cases involving other plaintiffs with facts unique to them do not ipso facto create *Monell* liability in the case at issue.  *See*, *Graff v. Corr. Corp. of Am.*, 2016 U.S. Dist. LEXIS 38895 (D. Idaho Mar. 23, 2016) ("Given the fact-intensive nature of *Monell* claims, what may have happened (or was alleged to have happened) in either [two other cases] does not mean ipso facto that the same scheduling problems and delays (or reasons contributing to such problems and delays) happened here.").

Third, Judge Gee's ruling was a ruling on a motion for preliminary injunction, with the standard for relief being whether the plaintiffs had demonstrated a likelihood of success on their force-based claims; they are likely to suffer irreparable harm in the absence of preliminary relief; the balance of equities tips in their favor; and an injunction is in the public interest. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Nat. Res. Def.*

4

*Council, Inc.*, 555 U.S. 7, 20 (2008)).  Plaintiffs' reliance on a ruling, from a different case involving different plaintiffs, on the basis of different facts and in accordance with different legal standards, underscores the absence of evidence in support of the claims actually asserted in this action.

Fourth, Plaintiffs ignore the significant distinctions drawn by Judge Gee between the September 8 and 25 protests and the three other protests at issue in *Berg*.  For example, Judge Gee noted, "**The government interest is different where protesters hear dispersal orders but defy them, such as at the September 8 and September 25 demonstrations.** … But the government interest in using force is stronger where protesters 'understood police had ordered them to disperse, ignored or dismissed those orders, and instead directly interfered with officers' attempt to enforce [the law].' *Felarca*, 891 F.3d at 818; *see also Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir. 1994) (finding 'pain compliance techniques' to be reasonable exercises of force where trespassing protesters were given multiple, escalating warnings to comply with dispersal orders). **Defendants thus had a stronger interest in using force at the September 8 and 25 demonstrations**…." *Berg*, 2021 U.S. Dist. LEXIS 195521 at *38 (emphasis added).

Judge Gee further distinguished these two groups of protests in explaining why the plaintiffs had established a likelihood of success on the merits:  "the low risk presented by Plaintiffs and their declarants combined with the availability of less intrusive alternatives renders the use of force described by Plaintiffs— **particularly at the August 25, September 5, and September 7 protests where no dispersal order was issued**—is unjustified by the government interest."  *Berg*, 2021 U.S. Dist. LEXIS 195521. at *40-41 (emphasis added).

Thus, Plaintiffs overstate the purported effect of Judge Gee's ruling since her *Monell* analysis was based on evidence submitted at the preliminary injunction stage, while ignoring entirely Judge Gee's analytical and factual distinctions between the two protests at issue here from the three protests on which her Fourth

Amendment analysis was based.  Here, Plaintiffs have submitted evidence relating to just the two subject protests (which also happen to be the two protests where Judge Gee found the *Berg* plaintiffs' evidence and claims to be the weakest), and therefore, the evidence in the instant record is far narrower in substance and scope than in *Berg*.  Plaintiffs' extensive reliance on the preliminary injunction ruling in *Berg*, therefore, does not satisfy their burden at summary judgment in this entirely separate action to demonstrate that the alleged use of force here was proximately caused by deliberately indifferent LASD policies or customs.

Indeed, Plaintiffs are essentially asking this Court to take judicial notice of Judge Gee's ruling and to adopt her factual findings.  However, it is well-established that courts "may not take judicial notice of the truth of the factual findings made by such other court".  *Munoz v. McGrath*, 2005 U.S. Dist. LEXIS 30859, at *9 (N.D. Cal. Sept. 8, 2005); *Raiser v. San Diego Cty*, 2019 U.S. Dist. LEXIS 185460, at *11-12 (S.D. Cal. Oct. 25, 2019) ("The Court does not take judicial notice of any factual findings or legal conclusions in the order.").  As such, on this additional ground, Plaintiffs' heavy reliance on the *Berg* ruling should be rejected.

### C. <u>Plaintiffs Erroneously Rely On Expert Witness Statements Which Are Not Part Of This Record.</u>

Plaintiffs' other primary argument as to their *Monell* force claim (Count Four) is that Defendants' expert witness opined that the alleged uses of excessive force were consistent with LASD policies.  (Opp. at 23:16-24:19.)  But Plaintiffs do not mention that Defendants did not cite or offer into evidence this expert witness's report or testimony in moving for summary judgment.  Plaintiffs, instead, argue that his "statements and evidence are admissions of a defendants [sic]" (Opp. at 23:18) and have identified his report and deposition testimony as Exhibits P and Q in support of their opposition.

However, "in general, the opinion of an expert who was not called as a witness should not constitute an admission of the part that sought the opinion." *McCormick on Evidence* § 261, at 303 n. 12 (7th ed. 2013) (quoted by *Fractus, S.A.*

*v. AT&T Mobility LLC*, 2019 U.S. Dist. LEXIS 169610, at *12 (E.D. Tex. Sept. 30, 2019) (ruling that the defendants' expert witnesses are not agents or employees under Federal Rules of Evidence 801(d)(2)(D) and distinguishing from instances where expert witnesses "conducted, in essence, internal investigations").

Here, Plaintiffs cite just one case in support of their "party admission" contention, *Hanford Nuclear Reservation Litig. v. E.I. DuPont de Nemours & Co. (In re Hanford Nuclear Reservation Litig.)*, 534 F.3d 986, 1016 (9th Cir. 2008), despite the fact that in *Hanford*, the court ruled that the expert witness's testimony at the first bellwether **trial** was an admission of a party opponent, and that the plaintiff could not exclude prior trial testimony that she had previously proffered. *Id.* Plaintiffs do not and cannot explain how the evidentiary ruling in *Hanford* in any way supports their reliance on Defendants' expert witness opinion, which has not been offered in support of summary judgment, in their attempt to avoid the fundamental elements of their *Monell* claims in this action.

Furthermore, Plaintiffs note that *Hanford* cited with approval *Glendale Fed. Bank, FSB v. United States*, 39 Fed.Cl. 422 (1997), without discussing its facts. In *Glendale Fed. Bank*, the plaintiff sought "to introduce deposition testimony of [the] government experts … as substantive evidence and for use in cross-examination of another government expert …." *Id.* at 422. The court explained that it must determine whether a party's expert witness's deposition testimony "is admissible as an admission by a part-opponent" under FRE 801(d)(2)(C). *Id.* The court noted that an expert witness, "testifying under oath, is expected to give his own honest, independent opinion" and "[e]ven at the time of his deposition he remains autonomous." *Id.* at 424. When an expert has been "**put forward for trial** it is reasonable and fair to presume they have been authorized." *Id.* at 425 (emphasis added).

Here, Defendants have not "put forward for trial" the expert witness's statements, let alone "put forward" in support of Defendants' motion for summary

judgment.  Plaintiffs' effort to misappropriate his statements does not transform his statements into "admissions", therefore, should be rejected.

### D.  Plaintiffs' Reliance On A Single After-Action Report Does Not Come Close To Satisfying Their Evidentiary Burden.

Plaintiffs' reliance on the "After-Action Report" (Opp. at 24:20-28) as a purported basis for *Monell* liability is misguided and unavailing.  "To establish *Monell* liability on a ratification theory, Plaintiffs must show that 'a policymaker approve[d] a subordinate's decision and the basis for it.'" *Estate of Ramirez v. City of Billings,* 2019 U.S. Dist. LEXIS 14896, at *35-38 (D. Mont. Jan. 30, 2019) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992)).  "[I]n order for there to be ratification, **there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures."** *Hermosillo v. Cty. of San Bernardino,* 2016 U.S. Dist. LEXIS 192706, at *38-39 (C.D. Cal. Dec. 22, 2016) (emphasis added; quoting *Garcia v. City of Imperial,* 2010 U.S. Dist. LEXIS 105399, at * 4 (S.D. Cal. Oct. 4, 2010)).  Furthermore, a plaintiff **"must show more than a finding from an after-the-fact investigation."** *Dew v. City of Seaside,* 2021 U.S. Dist. LEXIS 85305, at *26-29 (N.D. Cal. May 4, 2021) (police department's internal investigation which concluded that shooting was in compliance with department policies did not create a triable issue as to *Monell* ratification); *R.A. v. City of La Habra*, 2022 U.S. Dist. LEXIS 85433, at *29-30 (C.D. Cal. Jan. 28, 2022) ("In general, a 'single failure to discipline' does not rise to the level of ratification necessary to impose liability under *Monell.*") (quoting *Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003); *Sullivan v. City of Buena Park,* 2022 U.S. Dist. LEXIS 12310, at *41-42 (C.D. Cal. Jan. 13, 2022) (*Monell* claims summarily dismissed where the plaintiff failed to present any evidence that the investigation was flawed or any extreme facts to support ratification liability); *Aguilar v. City of L.A.,* 2018 U.S. Dist. LEXIS 225655, at *26 (C.D. Cal. Sept. 10, 2018) ("Chief of Police and Board of

Commissioners' findings that **Defendants' actions complied with policies** except with respect to the use of a taser during a single, after-the-fact, internal investigation . . . **cannot be the sole basis for a ratification claim**"); *German v. Roberts,* 2017 U.S. Dist. LEXIS 211095, at *5 (W.D. Wash. Dec. 22, 2017) ("[W]hen establishing *Monell* liability under a ratification theory, a plaintiff must present more than just a police investigation that concludes an officer applied reasonable force.").

Finally, the After-Action report generally addresses the "use of force on September 8, 2020" — and **<u>not</u>** to the specific incidents involving Plaintiffs Astorga and Padilla —  and does not address, much less "ratify" the LASD response to the activities during the September 25, 2020 protest.  For these many reasons, Plaintiffs' reliance on the single After Action Report does not come close to satisfying their evidentiary burden with respect to any ratification-based *Monell* claim, whether it be related to the alleged excessive force or any other alleged constitutional violation.

### E.   <u>Plaintiffs' Self-Serving Declaration That Their *Monell* Allegations Were Sufficiently Pled Should Be Rejected.</u>

Plaintiffs ignore the legal insufficiency of their *Monell* allegations by asserting, without any case law support, that this argument must have been made on a motion for judgment on the pleadings.  (Opp. at 22:7-15.)  Plaintiffs are wrong, and they do not address, let alone refute, the many cited cases in which similar insufficient allegations resulted in the dismissal of *Monell* claims.  *Thompson v. Cty. of Riverside*, 2020 U.S. Dist. LEXIS 247367, at *45-46 (C.D. Cal. Sept. 28, 2020) (*Monell* claims against the Riverside County Sheriff's Department and County of Los Angeles dismissed on summary judgment due to the plaintiff's insufficient allegations and absence of any probative evidence).

### F.   <u>Plaintiffs' Reference To Sheriff Villanueva's "Statements On Television" Does Not Satisfy Their Burden On Their *Monell* Claims.</u>

Finally, Plaintiffs' perfunctory argument that Sheriff Villanueva's "statements on television" are somehow "evidence of *Monell* liability" is entirely unfounded and

unavailing.  (Opp. at 25:1-5.)  Plaintiffs apparently refer to his "comment on television news that he 'expected deputies to defendant themselves … with less than lethal force", without any meaningful explanation.  (Opp. at 25:11-13.)  Plaintiffs do not and cannot explain how such a statement (that law enforcement personnel are expected to use less than lethal force in defending themselves) could form the basis of any *Monell* claim against any law enforcement agency.

Because Plaintiffs have failed to meet their well-established burden at summary judgment as to any of their *Monell* claims, regardless of whether they have been couched in the SAC or in their opposition arguments, Defendants respectfully submit that summary judgment should be granted as to all of Plaintiffs' claims.

## III.   PLAINTIFFS' TAKINGS CLAUSE ARGUMENT IS ENTIRELY WITHOUT MERIT.

In arguing against the dismissal of their Takings Clause claim (Count Four), Plaintiffs, again, rely on an inapposite case — this time *Cedar Point Nursery v. Hassid*, 594 U.S. __, 141 S.Ct. 2063 (2021).  Plaintiffs offer virtually no explanation, instead stringing a series of sentences from *Cedar Point Nursery*. (Opp. at 30:1-21.)  In *Cedar Point Nursery*, at issue was a California regulation granting labor organizations the right to take access to an agricultural employer's property in order to solicit support for solicitation efforts.  The Supreme Court held that the government had "appropriated a right of access to the growers' property, allowing union organizers to traverse it at will for three hours a day, 120 days a year. …  It is therefore a *per se* physical taking" for which the complaint stated a claim for an uncompensated taking."  *Id.* at 2074.  Not only does *Cedar Point Nursery* have no factual or legal applicability to this action, Plaintiffs have not demonstrate that the temporary seizures of personal property (for which warrants were obtained) constituted a physical taking within the meaning of the Fifth Amendment.  *See  Stuart Mills Props, LLC v. City of Burbank*, 2022 U.S. Dist. LEXIS 180191, at *4-5 (C.D. Cal. Sept. 19, 2022) (eviction moratorium did not implicate the Fifth Amendment because a "restraint on a landowner's use of

property is not a physical taking") (quoting *Yee v. City of Escondido*, 503 U.S. 519, 527 (1992)).  Plaintiffs' Fifth Amendment claim (Count Four), therefore, cannot survive summary judgment.

## IV.   PLAINTIFFS' FIRST AMENDMENT ARGUMENT IGNORES THE ABSENCE OF ANY EVIDENCE OF PROXIMATE CAUSE AND RETALIATORY MOTIVE.

Plaintiffs' First Amendment argument is limited to their contention that LASD actions chilled the First Amendment activities at the two subject protests, and that the fact that Plaintiffs "may have participated in subsequent protests, does not invalidate their claims under the First Amendment."  (Opp. at 28:27-29:12, 29:17-28.)  Plaintiffs' argument again misses the mark entirely.  As with their other *Monell* claims, Plaintiffs make no effort to establish any causal connection between the purported constitutional violation and any LASD policy or custom, despite their conclusory allegation of such causation in paragraph 97 of the SAC.  As such, Plaintiffs' (inconsequential) argument as to how their individual First Amendment rights were purportedly violated has no merit.

Moreover, Plaintiffs have offered no admissible evidence that the challenged use of force at the two protests was motivated by improper animus, that any retaliatory motive was the but-for cause for any challenged action, and Plaintiffs admit that they have not been deterred from engaging in similar speech activities.  *See Jurkowski v. City of Seattle*, 2017 U.S. Dist. LEXIS 166292, at *33, 37 (W.D. Wash. Oct. 5, 2017); *Puente v. City of Phoenix*, 2022 U.S. Dist. LEXIS 21489, at *39 (D. Ariz. Feb. 7, 2022).  Accordingly, on these additional grounds, Plaintiffs' First Amendment claim (Count Five) cannot survive summary judgment.

## V.   PLAINTIFFS' ARGUMENT THAT SHERIFF VILLANUEVA SHOULD BE HELD PERSONALLY LIABLE IS ENTIRELY WITHOUT MERIT.

Plaintiffs admit that Sheriff Villanueva played no personal part in the alleged constitutional violations but argue that he should be held personally liable nevertheless.  Plaintiffs' arguments are entirely without merit.

11

First, Plaintiffs rely on the expert witness's deposition testimony (which, again, is not part of this record), regarding an unrelated one-time meeting between the witness and Sheriff Villanueva.  (Opp at 26:9-27:18.)  Plaintiffs extrapolate from this "evidence" that Sheriff Villanueva "has no interest in ensuring his deputies act in accordance with the constitution".  (Opp. at 26:12-13.)  There is absolutely no factual or legal nexus between this "evidence" and the claims at issue in this case, and in no way does this "evidence" have any probative value with respect to Plaintiffs' burden on summary judgment.  If Plaintiffs' argument were given any weight, this "evidence" could be used in every civil rights lawsuit alleging LASD misconduct to preclude the dismissal of individual capacity claims against Sheriff Villanueva.  Plaintiffs do not cite any case law in support of this argument.

Plaintiffs then argue that Sheriff Villanueva must be held personally liable because he created "an environment wherein his deputies belief they act and in fact they do act, with impunity."  (Opp. at 28:9-10.)  Again, Plaintiffs do not rely on any probative or admissible evidence of this blanket accusation, which can be made in every civil rights action brought against any law enforcement or public agency.  Plaintiffs' allegation regarding the purported defacing of Plaintiff Astorga's Instagram account does not come close to establishing any evidentiary basis for their claims of personal liability against Sheriff Villanueva.

Finally, Plaintiffs' contention that the "law in this area" is clearly established ignores the fact that it is their burden to establish that Sheriff Villanueva violated clearly established law, beyond any debate.  Simply listing five cases in support of this contention, **without any explanation or description**, does not satisfy their burden.[5]  (Opp. at 28:19-23.)  Indeed, Plaintiffs have not presented any admissible

---

[5] In these five cases, there was no analysis or ruling that a Sheriff or Police Chief had violated clearly established law, beyond any debate, under circumstances analogous to those upon which Plaintiffs' section 1983 claims against Sheriff Villanueva are based.

or probative evidence with respect to any specific conduct taken by Sheriff Villanueva that could be deemed to have caused the constitutional violations alleged in this action, let alone that any such specific action violated clearly established law. Simply referring to Sheriff Villanueva's innocuous comments "on television" does not come close to satisfying Plaintiffs' burden of showing that Sheriff Villanueva must be denied qualified immunity for having violated clearly established law beyond any debate.

Therefore, Plaintiffs' section 1983 claims fail on a multitude of grounds as discussed above and in the moving papers, and Sheriff Villanueva is also entitled to qualified immunity.

## VI.   PLAINTIFFS' FLAWED ARGUMENTS REGARDING THEIR CLAIMS FOR FALSE ARREST AND EXCESSIVE FORCE HAVE NO EFFECT ON THE MERITLESS NATURE OF THEIR *MONELL* CLAIMS.

Plaintiffs devote the majority of their arguments to issues which have no helpful effect as to their primary claims in this action — their *Monell* claims against the "Entity Defendants" and the individual capacity claims against Sheriff Villanueva. (*See* Opp. at 9:13-20:1.) In these arguments, Plaintiffs argue at length that Plaintiffs Astorga, Padilla and Ryan Dodson were unlawfully arrested and subject to excessive force. In the absence of *respondeat superior* liability under section 1983, these arguments only relate to Defendants' argument that the *Monell* claims fail on the **alternative** ground that there were no unlawful arrests or excessive force. Plaintiffs' arguments have no bearing on the primary grounds for dismissing Plaintiffs' *Monell* claims and claims against Sheriff Villanueva, and Plaintiffs make no suggestion otherwise.

Moreover, Plaintiffs' arguments misconstrue the law and facts. For example, Plaintiffs contend that Defendants cannot rely on Plaintiff Ryan Dodson's testimony to establish probable cause for his arrest because Defendants must be limited to the information known to the arresting deputies. (Opp. at 19:16-22.) On the contrary,

1    the "[p]laintiff's admissions may be used to establish probable cause" for arrest.

2    *Fernandez v. Cty. of L.A.*, 2008 U.S. Dist. LEXIS 4543, at *11 n.7 (C.D. Cal. Jan. 7,

3    2008).  Implicitly, Plaintiffs admit that Plaintiff Dodson's testimony does establish

4    probable cause for his arrest.  (*See* SUMF Nos. 76, 78-82.)

5          Furthermore, with respect to his excessive force claim, Plaintiffs do not

6    address the case law which establishes that de minimis use of force does not violate

7    the Fourth Amendment, and Plaintiffs mischaracterize the facts by asserting that

8    Plaintiff Dodson was "slammed" against his truck.  *See* SUMF Nox. 85, 94; *Jackson*

9    *v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001) (no constitutional violation

10   where officer pushed the plaintiff to the ground to handcuff her and fractured her

11   finger); *Parker v. City of L.A.*, No. 2016 U.S. Dist. LEXIS 189030, at *19-20 (C.D.

12   Cal. June 22, 2016) ("little shove" of detainee in effectuating order for him to sit on

13   a curb is not objectively unreasonable).[6]

14         Their arguments for Plaintiffs Astorga and Padilla essentially ignore the

15   undisputed fact that multiple dispersal announcements were made at the subject

16   protest, and Plaintiffs had not left the area as ordered.  (SUMF Nos. 8, 11, 25-28,

17   39-49.)  Plaintiffs' admitted actions justified their arrests for failing to comply with

18   the dispersal orders and the use of force employed after the failures to disperse.  *See*

19   *Puente v. City of Phoenix*, 2022 U.S. Dist. LEXIS 21489, at *13-28 (D. Ariz. Feb. 7,

20   2022) (dismissing protester plaintiffs' excessive force claim, based on use of less

21   lethal munitions, for lack of any constitutional violation).

22

23

24

25

26   [6] Instead, Plaintiffs cite, without any explanation, a Tenth Circuit decision, *Cortez v.*

27   *McCauley*, 478 F.3d 1108 (10th Cir. 2007), which held that courts should consider

28   "both the justification the officers had for the arrest and the degree of force they
used to effect it."  How this holding applies to Plaintiff Dodson is unexplained.

## VII.   <u>PLAINTIFFS' CIVIL CODE § 52.1 ARGUMENT IS LIMITED THE ALLEGED USE OF FORCE AND IS WITHOUT MERIT.</u>

Plaintiffs limit their Civil Code § 52.1 argument exclusively to the alleged use of force — meaning that they necessarily admit that this claim has no merit with respect to the other alleged violations, i.e. the alleged seizure and retention of property without a warrant, and the alleged violation of the First and Fifth Amendments.  (*See* Opp. at 30:23-31:8.)  Furthermore, Plaintiffs' argument consists of a series of self-serving accusations without any citations to any evidence. Plaintiffs' listing of unsubstantiated grievances about what un-named LASD personnel did or did not do does not satisfy their burden of establishing any genuine issue as to whether the alleged constitutional violations were carried out with the requisite specific intent to violate their rights.  Plaintiffs' assertion that "all of this was done with the direction and blessing of Villanueva" (Opp. at 31:8) is just as self-serving and devoid of any evidentiary support.  Plaintiffs' subjective beliefs and unsubstantiated assertions are not nearly enough to avoid summary judgment on their Civil Code § 52.1 claim.

## VIII.   <u>CONCLUSION.</u>

For the foregoing reasons, Defendants respectfully submit that this motion should be granted and summary judgment be granted in their favor.

Dated: October 14, 2022          LAWRENCE BEACH ALLEN & CHOI, PC


By _____/s/ Jin. S. Choi_____
                    Jin S. Choi
                    Attorneys for Defendants